UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KG CORNWALL, LLC            :

           Plaintiff,            :

           :

      -against-            :

           :

           :

BEAZER HOMES CORP.            :

           :

           Defendant.            :

------------------------------------------------------------------X

Index No. 07 Civ. 2881 (CLB)

**NOTICE OF MOTION
FOR PARTIAL SUMMARY
JUDGMENT AND
DISQUALIFICATION**

PLEASE TAKE NOTICE, that upon the Complaint and the Answer in this action; Defendant's Statement Pursuant to Local Rule 56.1 of Undisputed Material Facts in Support of Motion for Partial Summary Judgment, dated December 27, 2007; the Affidavit of Robert Stout, sworn to December 27, 2007, and exhibits thereto; the Declaration of Luisa K. Hagemeier, dated December 27, 2007, and exhibits thereto; and the Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment and Disqualification of Counsel, dated December 28, 2007; and all of the proceedings heretofore had in this action, the undersigned will move this Court, in Room 218 of the United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601, on the 25th day of January, 2007, at 10:00 a.m., or as soon thereafter as counsel can be heard, for an order pursuant to Fed. R. Civ. P. 56 dismissing the Second, Third and Fourth Counts of Plaintiff's Complaint dated March 15, 2007 and Plaintiff's demand for damages in the amount of $5,000,000 and for an order disqualifying counsel for Plaintiff.

PLEASE TAKE FURTHER NOTICE, that pursuant to Local Civil Rule 6.1(b), answering papers, if any, shall be served within ten business days after service of these moving

papers, and reply papers, if any, shall be served within five business days after service of the

answering papers.


Dated: New York, New York
       December 28, 2007

                                 PRYOR CASHMAN LLP

                                 By: _____

                                     Eric D. Sherman
                                     Luisa K. Hagemeier
                                     lhagemeier@pryorcashman.com
                               410 Park Avenue
                               New York, New York  10022
                               (212) 421-4100
                               Attorneys for Defendant

TO:

Burton I. Dorfman, Esq.
b.dorfman@dkc.com
Dorfman Knoebel & Conway, L.L.P.
51 North Broadway
Nyack, New York 10960
(845) 353-3500
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

KG CORNWALL, LLC                               :

                          Plaintiff,           :        Index No. 07 Civ. 2881 (CLB)
                                               :
            -against-                          :
                                               :        **AFFIDAVIT OF ROBERT**
                                               :        **STOUT IN SUPPORT OF**
                                               :        **MOTION FOR SUMMARY**
BEAZER HOMES CORP.                             :        **JUDGMENT AND**
                                               :        **DISQUALIFICATION**
                          Defendant.           :
--------------------------------------------------------------------X

STATE OF NEW JERSEY    )
                       ) ss.:
COUNTY OF MERCER       )

        ROBERT STOUT, being duly sworn, deposes and says:

        1.      I am, and was at all times during the events at issue in this litigation, the

Executive Vice President/Operations Manager of defendant Beazer Homes Corporation (Beazer).

I worked directly on the matters at issue in this litigation, specifically, the contemplated purchase

by Beazer of a tract of land from KG in New Windsor, New York (the Property).  As such, I am

fully familiar with the facts and circumstances addressed herein, except where I indicate that a

statement is made upon information and belief.  Where a statement is made upon information

and belief, it is based upon my personal knowledge of the books and records of Beazer.

        2.      This affirmation is respectfully submitted in support of Beazer's motion for

partial summary judgment dismissing the claims of plaintiff KG Cornwall, LLC (KG) in its

Complaint, attached hereto as Ex. A, for conversion, misrepresentation and damages of $5

million and its motion for disqualification of counsel Burton Dorfman (Dorfman) and the law

firm of Dorfman Knoebel & Conway, LLP (the Firm).

3.        Attached hereto as Exhibit B is an Agreement of Sale dated as of May 31, 2005 (the Agreement) between Beazer as buyer and KG as seller of a tract of land in New Windsor, New York (the Property).

4.        Pursuant the Agreement, Beazer was required to, and did, deliver into escrow a deposit (the Deposit) in the form of a letter of credit in the amount of $150,000 (the LOC, attached hereto as Ex. C).  The Agreement provided that the LOC was to be held in escrow, and designated "Burton I. Dorfman, Esq., Dorfman, Knoebel & Conway, L.L.P." as escrow agent. See Ex. B §§ 2, 21(a).

5.        As Escrow Agent, Dorfman was charged under the Agreement with the following enumerated duties:

> (i) if Settlement is held, the Deposit shall be paid over to [KG] and credit to the Purchase Price.
>
> (ii) If the Settlement is not held by reason of [Beazer's] default, the Deposit shall be paid over to [KG] and be retained by [KG] as provided in Section 7 above.
>
> (iii)  If Settlement is not held by reason of [KG's] default, the Deposit shall be paid over to Buyer.
>
> (iv)  If Settlement is not held by reason of a failure of a condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to [Beazer], neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.
>
> (b)  Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section 21.

Id. § 21.

6.        The Agreement expressly provided that the Deposit would be KG's "sole and exclusive remedy" in the event Beazer defaulted.  Id. § 7.

2

7.      Beazer was not obligated to close on the purchase of the Property, and was entitled to terminate the Agreement without any further liability, unless KG was able to convey the Property "free and clear of all liens, encumbrances, restrictions, and easements" with title that is "good and marketable and insurable without exception by such title company that is selected by Buyer." Id. § 3(a).

8.      The Agreement provides that, if KG "is unable to give good and marketable title such as will be insured by the Title Company as set forth above, [Beazer] shall have the option (a) of taking such title as [KG] can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by [KG] with the Title Company whereupon [KG] shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if [KG's] contest is unsuccessful, *or (c) [Beazer] receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and v*oid." Id. § 3(b) (emphasis added).

9.      Section 15 of the Agreement sets forth "Conditions to Buyer's Obligations." One of the conditions upon which Beazer's obligations is "expressly conditioned," is "(a)(i) All representations and warranties of [KG] herein being true and correct at the time of Settlement [and] (ii) [KG] having performed all of its covenants and obligations hereunder." Id. § 15(a)(i).

10.     One of KG's representations was that the Property was "not subject to any lease, option, right of first refusal or agreement of sale other than Seller's Contract [to purchase the Property]." Id. § 13.

11.     In or about September 2005, Beazer discovered a Memorandum of Contract of Sale relating to the Property on record in Orange County. A copy of the Memorandum of

Contract and the underlying Contract is attached hereto as Ex. D and is referred to herein as the "Sungold Contract."

12.    Pursuant to the Sungold Contract, dated March 7, 2003, Benedict Pond of New Windsor, LLC, the purported seller of the Property to KG, agreed to sell the Property to Sungold Holding, Inc. See id.

13.    By letter dated September 7, 2005, Beazer alerted KG to this cloud on title. Letter from A. Frank, Esq. to B. Dorfman, Esq., dated Sept. 7, 2005, attached hereto as Ex. E.

14.    Specifically, Beazer informed KG that:

> a title search was ordered and one of the items listed as an exception under said report was a Memorandum of Contract from 2003 between the present fee owner of the property and an entity by the name of Sungold Holding, Inc. A copy of the Memorandum of Contract is provided for your benefit. We further note that the contract vendee under that Memorandum appears to be a different entity than KG Cornwall, LLC. I would appreciate your enlightening me as to the implications of this Memorandum which is of record. It would appear that unless said Memorandum is discharged, there is a third party with whom neither my client nor your client is in privity who has rights in the property which may be superior to those of your client and thus superior to those of mine.

Id.

15.    KG never responded to Beazer's inquiry or provided any elucidation regarding the Sungold Contract.

16.    On February 9, 2007, KG notified Beazer that it was scheduling a Time of the Essence closing to take place on February 21, 2007 at 11:00 a.m. See Letter from B. Dorfman, Esq. to P. Schneier & I. Israel, Esq., dated Feb. 9, 2007, attached hereto as Ex. F.

17.    Just prior to the scheduled closing, however, Beazer's title company discovered that the Sungold Contract remained on record in Orange County. Thus, not only had KG not

explained this cloud on title, though given more than ample time to do so, but it had not discharged it either.

18.      Accordingly, pursuant to its rights under the Agreement, Beazer advised KG that KG was in default and that Beazer was terminating the agreement and demanding release of the Deposit.  <u>See</u> Letter from A. Frank, Esq. to B. Dorfman, Esq. dated Feb. 21, 2007, attached hereto as Ex. G.

19.      The LOC, it turned out, had expired by its terms on October 1, 2006.  <u>See</u> Ex. C.

20.      Contrary to the allegations in ¶ 30 of the Complaint, KG never asked Beazer to replace, renew or extend it.

21.      By letter dated February 26, 2007, KG's counsel contended that Beazer had no right to terminate the Agreement, claiming that the Sungold Contract had been assigned to KG and thus did not constitute a cloud on title.  <u>See</u> Letter from B. Dorfman to A. Frank, dated Feb. 26, 2007, attached hereto as Ex. H.

22.      However, at no time has Beazer seen such an assignment or any other evidence to substantiate that allegation, despite the fact that document discovery is closed.

23.      It was my understanding at all times during the contemplated transaction with KG, that Dorfman and the Firm represented KG.

24.      Beazer never made any misrepresentations to KG or wrongfully took any property or funds rightfully belonging to KG.  Beazer's actions with respect to the Agreement and the Property were wholly proper.

25.      For all the foregoing reasons, I respectfully request that the Court grant Beazer's motion for summary judgment dismissing KG's claims for conversion, misrepresentation and $5

million in damages, and its motion to disqualify Dorfman and the Firm from representing KG in

this litigation, and that it grant such other and further relief as it deems just and proper.

DATED:    New York, New York
           December 26, 2007

ROBERT STOUT

Sworn to before me this
27th day of December, 2007

Notary Public

CHRISTINE MARIE PAYNE
Notary Public
State of New Jersey
My Commission Expires Oct 5, 2012

# Stout Affidavit

# Exhibit A

PAGE 2/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY2/17 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99    (212) - 326 - 0854    Fax

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

KG CORNWALL, LLC

## SUMMONS IN A CIVIL CASE

V.

BEAZER HOMES CORP.

CASE NUMBER:

# 07 CIV. 2881

# BRIEANT

TO: (Name and address of defendant)

BEAZER HOMES CORP.
275 Philips Boulevard
Trenton, NJ 08618

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

DORFMAN KNOEBEL & CONWAY, LLP
51 North Broadway
Nyack NY 10960

an answer to the complaint which is herewith served upon you, within _____30_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

APR 1 1 2007

March 15, 2007

CLERK

DATE

(BY) DEPUTY CLERK

PAGE 3/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:INY2/17 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

AO 440 (Rev. 10/93) Summons In a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant. Place where served: _____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐   Returned unexecuted: _____

☐   Other (specify): _____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
             Date                                 Signature of Server

_____
Address of Server

(1)     As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PAGE 4/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY21F * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

RECEIVED
APR 1 1 2007
USDC ___ SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KG CORNWALL, LLC.,
One Shinev Court
Monroe, New York 10950

            Plaintiff,

    - against -

BEAZER HOMES CORP.
275 Phillips Boulevard
Trenton, New Jersey 08618

            Defendant.

-------------------------------------------------------------X

Case No.:

**07 CIV. 2881**

**COMPLAINT**

**BRIEANT**

    Plaintiff KG CORNWALL, LLC., by and through its attorneys, DORFMAN KNOEBEL & CONWAY, LLP. , complaining of Defendant BEAZER HOMES CORP. , alleges as follows, upon personal knowledge as to their own acts and upon information and belief as to all other matters:

<u>**JURISDICTION**</u>

    1. The jurisdiction of this Court is invoked pursuant to 28 USC § 1332 (a) as there is diversity of citizenship between plaintiffs and defendants and the amount in controversy, exclusive of interest and costs, is in excess of the sum of Seventy Five Thousand Dollars ($75,000.00).

    2. Venue is proper pursuant to     28 USC § 1391 (a)(2) as a substantial part of the acts giving rise to the claim occurred in this judicial district and the property located in the Town of New Windsor, County of Orange, which was the subject matter of the written agreement is situated in this judicial district.

PAGE 5/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY217 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

## NATURE OF ACTION

3. Plaintiffs bring this action to recover damages sustained as a result of Defendant's breach of real estate contract and conversion of funds of sale to sell real property.

4. This is an action for monetary damages arising out of a breach of a written agreement executed by KG CORNWALL, LLC and BEAZER HOMES CORP. on May 31, 2005.

## THE PARTIES

5. Plaintiff KG CORNWALL, LLC. ("Plaintiff" or "KG CORNWALL") is a New York Limited Liability Company having its principal office located at One Shiney Court, Monroe, New York.

6. Defendant BEAZER HOMES CORP. ("BEAZER") is a Tennessee Corporation having its principal place of business located at 1000 Abanathy Road, Suite 1000, Atlanta, Georgia.

## PROPERTY

7. KG CORNWALL is the owner in fee simple of certain real property located in the Town of New Windsor, County of Orange, State of New York, known as Town of New Windsor Tax Map Section 65 Block 1 Lots 56.11 and 56.1 (the "property").

## FACTS

8. On May 31, 2005 KG CORNWALL and BEAZER entered into a written Agreement of Sale to sell the Property (the "Agreement").

9. That the Agreement required BEAZER to deliver to the escrow agent, a letter of credit in the sum of $150,000.00 to be held in escrow pending the closing.

10. That the Agreement initially provided for a ninety (90) day due diligence period.

11. That the agreement due diligence period was thereafter extended.

2

PAGE 6/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY12/7 * DNIS:6924 * CSID: * DURATION (mm-ss):02:34

12. That on September 26, 2005 BEAZER sent written notice that it waived due diligence.

13. That on or about September 30, 2005 BEAZER delivered a $150,000 letter of credit to the escrow agent that specifically provided:

> "THE AMOUNT DRAWN REPRESENTS FUNDS DUE AND OWING PURSUANT TO THE AGREEMENT BETWEEN KG CORNWALL, LLC AND BEAZER HOMES CORP. BEAZER HOMES CORP. HAS FAILED TO COMPLY WITH THE TERMS AND CONDITIONS OF THE CONTRACT/AGREEMENT DATED MAY 31,L 2005. WE HEREBY DEMAND THE AMOUNT OF USD _____ UNDER JPMORGAN CHASE BANK, N.A. LETTER OF CREDIT NUMBER CPCS-205054."

14. That in reliance of the representations of BEAZER contained in the Contract, KG CORNWALL has expended substantial funds in connection with obtaining required approvals.

15. That in reliance of the Agreement, KG CORNWALL acquired the Property, KG CORNWALL did not offer the Property for sale to other purchasers and KG CORNWALL refused offers from third parties to purchase the Property.

16. That BEAZER intentionally and willfully failed to maintain the letter of credit of $150,000.00 as required under the Agreement.

17. That KG CORNWALL complied with all terms and conditions of the Agreement.

18. That BEAZER failed to comply with its obligations under the Agreement despite repeated requests by KG CORNWALL and its representatives.

19. That KG CORNWALL by its attorney on February 9, 2007 sent a time of the essence letter scheduling the closing in accordance with the Agreement for February 21, 2007 at 11:00 a.m.

20. That at no time prior to the scheduled closing did BEAZER or its representatives contact KG CORNWALL.

21. That at the time of closing KG CORNWALL executed the deed and all necessary recording documents and was ready, willing and able to close in accordance with the Agreement.

3

PAGE 7/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY21/7 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

22.    That BEAZER failed to and willfully defaulted in closing.

23.    That after the scheduled closing representatives of BEAZER notified representatives off KG CORNWALL that BEAZER intended to violate the terms of the Agreement.

24.    That BEAZER disclosed to KG CORNWALL after the closing that it failed to maintain the $150,000 letter of credit in accordance with the Agreement and unlawfully received $150,000 from escrow.

### FIRST COUNT

25.    Plaintiff/KG CORNWALL repeats, reiterates and realleges each and every allegation contained in paragraphs denominated "1" through "24" as if fully set forth herein.

26.    That as a result of the breach of the Agreement BEAZER, KG CORNWALL has been damaged in the sum of $5,000,000.00 and continues to incur damages.

27.    That KG CORNWALL is entitled to reimbursement of the legal fees as a result of the Defendant's breach of the Agreement.

28.    That KG CORNWALL demands judgment against Defendant BEAZER in the sum of $5,000,000.00 and any and all damages, interest, costs and attorneys fees that accrue until the time of trial.

### SECOND COUNT

29.    Plaintiff/KC CORNWALL repeats, reiterates and realleges each and every allegation contained in paragraphs denominated "1" through "28" as if fully set forth herein.

30.    That after BEAZER disclosed it failed to extend the letter of credit and comply with the Agreement, KG CORNWALL demanded BEAZER replace the letter of credit.

31.    That BEAZER has failed to replace the $150,000 letter of credit its representations.

32.    That KG CORNWALL has been damaged in the sum of $150,000.

4

PAGE 8/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY21/7 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

33. That KG CORNWALL demands judgment against Defendant BEAZER in the sum of $5,000,000.00 and any and all damages, interest, costs and attorneys fees that accrue until the time of trial.

## THIRD COUNT

34. Plaintiff/KC CORNWALL repeats, reiterates and realleges each and every allegation contained in paragraphs denominated "1" through "33" as if fully set forth herein.

35. That BEAZER converted $150,000 by the removal of the letter of credit from escrow.

36. Plaintiff has been damaged in the sum of $150,000.

37. That KG CORNWALL demands judgment against Defendant BEAZER in the sum of $150,000.00 and any and all damages, interest, costs and attorneys fees that accrue until the time of trial.

## FOURTH COUNT

38. Plaintiff/KC CORNWALL repeats, reiterates and realleges each and every allegation contained in paragraphs denominated "1" through "35" as if fully set forth herein.

39. That BEAZER knowingly misrepresented its intention to maintain the letter of credit.

40. That KG CORNWALL relied on BEAZER's misrepresentations.

41. That KG CORNWALL has been damaged in the sum of $5,000,000.

42. That KG CORNWALL demands judgment against Defendant BEAZER in the sum of $5,000,000.00 and any and all damages, interest, costs and attorneys fees that accrue until the time of trial.

PAGE 9/9 * RCVD AT 4/30/2007 9:45:09 AM [Eastern Daylight Time] * SVR:NY217 * DNIS:6924 * CSID: * DURATION (mm-ss):02-34

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

### ON THE FIRST COUNT:

A.   against all Defendants, actual damages in an amount to be proven at trial but not less than

$5,000,000.00 plus interest, costs and attorneys;

B.   attorney's fees and costs; and

C.   such other, further and different relief as to this Court deems just, proper and equitable.

### ON THE SECOND COUNT:

A.   against all Defendants, actual damages in an amount to be proven at trial but not less than

$150,000.00 plus interest, costs and attorneys;

B.   attorney's fees and costs; and

C.   such other, further and different relief as to this Court deems just, proper and equitable.

### ON THE THIRD COUNT:

A.   against all Defendants, actual damages in an amount to be proven at trial but not less than

$5,000,000.00 plus interest, costs and attorneys;

B.   attorney's fees and costs; and

C.   such other, further and different relief as to this Court deems just, proper and equitable.

Dated: March 14, 2007
Nyack, New York

Yours, etc.,

BURTON I.  DORFMAN, ESQ.[BD5865]
**DORFMAN KNOEBEL & CONWAY, LLP**
Attorneys for Plaintiffs
51 North Broadway

Stout Affidavit

Exhibit B

## AGREEMENT OF SALE

THIS AGREEMENT ("Agreement") is made this 26th day of May, 2005 between KG CORNWALL, LLC., a New York Limited Liability Company, having as its principal place of business located at One Shiner Court, Monroe, New York 10950 and BEAZER HOMES CORP., 275 Phillips Boulevard, Trenton, New Jersey 08618, or their nominee ("Buyer").

### WITNESSETH:

In consideration of the covenants and provisions contained herein, and subject to the terms and conditions hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

1.    **Sale.**  Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase from Seller, all that certain tract of land, known as as Town of New Windsor Tax Map Section 65, Block 1, Lots 51.11 and 56.1 located in the Town of New Windsor, County of Orange, State of New York more particularly described on Exhibit "A" attached hereto (the "Property"). The Property includes (i) all tenements, hereditament, appurtenances, easements, covenants, permits, approvals and other rights arising from or appertaining to the land; (ii) all structures, fixtures, systems, improvements, topsoil, trees, shrubbery and landscaping situated on, in or under or used in connection with the land; and (iii) all surveys, plans, specifications, reports and other engineering information to which the Seller has access regarding the Property (together, "Seller's Plans"). Buyer acknowledges that they have received copies of Seller's Plans on or before the date of this Agreement, as they may exist and Seller shall provide Buyer Plans as they are submitted to respective Boards.

2.    **Purchase Price.**    The purchase price (the "Purchase Price") for the Property shall be Ten Million Three Hundred Twenty Thousand and No/100 Dollars ($10,320,000.00), based on $86,000 per unit for 120 Age Restricted Active Adult Townhouse Units to be paid as follows:

(a)    Within ten (10) days of the date hereof, Buyer shall deliver to the Escrow Agent (hereinafter defined as escrow agent), a letter of credit in the sum of $150,000 (such amount shall hereinafter be referred to as the "Deposit"), to be held in escrow.

(b)    The sum of $10,170,000 shall be paid by Buyer to Seller on the Settlement Date as is defined in paragraph " 4 " of this contract of sale.

(c)    Notwithstanding anything set forth herein, if less than 120 Units are approved, the Purchase Price shall be reduced by $86,000 for each approved Unit under 120. It is specifically understood that the Seller shall proceed diligently to obtain the approval of at least 110 Units but that should Seller be unable to do so, either party shall have the right to terminate the Agreement in which event the Deposit shall be returned to the Buyer and the parties shall have no further obligations hereunder.

3.    **Title.**

(a)    The Property is to be conveyed free and clear of all liens, encumbrances, restrictions, and easements excepting those covenants, restrictions and easements that exist and are reflected on the approved site plan so long as same do not prohibit the construction and use of at least 110 age restricted active adult town house units and further, EXCEPTING HOWEVER, the following: any existing privileges or rights of public service companies, provided same will not adversely affect the Buyer's intended use of the Property; otherwise title to the Property shall be good and marketable and insurable without exception by such title company that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located (the "Title Company"), at such Title Company's regular rates. Seller shall provide to the Title Company such releases, documents, indemnities and affidavits (including an affidavit of title) as shall be necessary to permit Buyer to obtain affirmative title insurance against

1

filed and unfiled mechanics liens and shall also provide to the Title Company a form 1099B information return relating to the Property.

(b)    In the event Seller is unable to give good and marketable title such as will be insured by the Title Company as set forth above, Buyer shall have the option (a) of taking such title as Seller can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by Seller with the Title Company whereupon Seller shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if Seller's contest is unsuccessful, or (c) Buyer receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void, except that Seller shall further reimburse Buyer for its reasonable and actual survey and title examination expenses, if any.

(c)    Seller shall execute and deliver to the Title Company such release, documents, indemnities and affidavits as shall be necessary for the elimination of any standard or printed exceptions in Buyer's final title policy, the exception for filed and unfiled mechanics' liens and the satisfaction of any Internal revenue Service disclosure and reporting requirements.

4.    **Settlement**.    Settlement ("Settlement") shall be made at the offices of the Title Company or a mutually agreeable location forty five (45) days following final Site Plan approval for between one hundred ten (110) and one hundred twenty (120) age restricted active adult town house units pursuant to Article 16 of the New York Town Law and Town of New Windsor Zoning Code and Site Plan Regulations and the filing of the Final Site Plan with Town of New Windsor Town Clerk and the satisfaction of all of the conditions contained set forth in Section 15, upon at least five (5) business days notice from Buyer to Seller.  If said conditions are not satisfied within two (2) years of the date of this Agreement, Buyer or Seller may, at any time thereafter, elect to cancel this Agreement in which event the Deposit shall be returned to the Buyer and the parties shall have no further obligations hereunder.

5.    **Possession**.    Possession is to be given at the time of Settlement, free of all leases and other occupancy, by bargain and sale deed with covenants against grantor's acts.

6..    **Apportionments**.    Taxes shall be apportioned pro rata as of the date of Settlement.  Any transfer taxes and "rollback" taxes based on farmland assessment, including interest, shall be the responsibility of Buyer.

7.    **Buyer's Default**.    Should Buyer violate or fail to fulfill and perform any of the terms or conditions of this Agreement after thirty (30) days' written notice from Seller (or ten (10) days' written notice in the event of a monetary default), then the Deposit shall be retained by Seller as Seller's sole and exclusive remedy for such breach as liquidated damages.

8.    **Seller's Default**.    Should Seller violate or fail to fulfill and perform any of the terms or conditions of this Agreement at or prior to Settlement, then Buyer shall be entitled to the return of the down payment or as its sole remedy available to Buyer the right to specifically enforce this Agreement against Seller.

9.    **Condemnation; Casualty**.

(a)    All risk of loss or damage to the Property by casualty of any nature prior to Settlement shall be borne by Seller.  Seller shall obtain and maintain casualty and general liability insurance at all times between the date hereof and Settlement.

(b)    If, prior to Settlement, any portion of the Property is condemned or destroyed, Buyer shall the option of (i) terminating this Agreement, in which event this Agreement shall be null and void and Buyer shall be paid the Deposit, or (ii) proceeding

with the Settlement, in which event the entire condemnation or insurance proceeds shall be delivered to Buyer at Settlement hereunder (and, in connection with the foregoing, Seller expressly acknowledges and agrees that the foregoing insurance or condemnation proceeds shall not be applied to restoration of the Property without Buyer's prior written consent, given or withheld in Buyer's sole discretion), or, if they have not yet been paid, the right to receive such proceeds shall be assigned to Buyer at Settlement.

10.    **Compliance with Notices, Ordinances.**    Any notices or ordinances filed or enacted subsequent to the date of this Agreement by any governing authority for which lien could be filed against the Property are to be complied with at the expense of Buyer if Buyer purchases the Property at Settlement. Any such notices or ordinances filed prior to the date of this Agreement are to be complied with at the expense of Seller.

11.    **Brokers.**    Buyer and Seller mutually represent to each other that they have dealt with no real estate broker, investment banker, person, firm, or entity that would be able to claim a real estate brokerage fee. Seller and Buyer agree to defend and indemnify each other and hold each other (including any affiliates, subsidiaries and officers) harmless from and against any and all claims, liabilities, losses, damages and expenses (including court costs and attorney's fees) asserted by any and all brokers, salespersons or agents with whom either party has dealt in connection with the sale of the Premises.

12.    **Due Diligence Period.**    Between the time of execution of this Agreement and Settlement, Seller agrees that Buyer, its representatives and consultants shall, upon Two (2) days notice to the Seller, have the right to enter upon the Property to perform engineering, environmental and such other feasibility studies as Buyer determines in its sole discretion upon the condition that Buyer, its representatives and consultants shall provide Seller with a certificate of insurance naming the Owner and Seller as additional insured. Buyer and Seller further agree that Buyer will be allowed a ninety (90) day due diligence period commencing on the date of the execution of the contract by Buyer and Seller. The due diligence period shall be automatically tolled for any period during which litigation respecting the Property is pending. Should Buyer desire to proceed with this Agreement, Buyer will notify Seller in writing prior to the expiration of the Due Diligence Period. Absent notice by the Buyer to move forward, this Agreement shall be deemed to be cancelled by Buyer in which event the Deposit shall be returned to Buyer and the parties shall have no further obligations hereunder. If Buyer causes damage to the Property as a result of its studies performed pursuant to this section, and Buyer and elects not to purchase Property, Buyer shall reasonably repair such damage. That Buyer shall indemnify and hold the Seller and the Owner safe and harmless with respect to any personal injury or property damage caused by Buyer, its representatives and consultants entering upon the property.

13.    **Seller's Representation, Warranties and Covenants.** Seller covenants, represents and warrants to Buyer as Follows:

(a)    Seller is the contract vendee to purchase the Property in fee simple and the Property is not subject to any lease, option, right of first refusal or agreement of sale other then Seller's Contract. Seller has the full power and authority to execute, deliver and perform this Agreement and all agreements and documents referred to in this Agreement. The person who has executed this Agreement on behalf of Seller has the authority to do so.

(b)    There is no action, suit or proceeding pending or threatened against or affecting Seller or the Property or relating to or arising out of the ownership of the Property, including without limitation, general or special assessment proceedings of any kind, or condemnation or eminent domain actions or proceedings of any kind.

(c)    Neither the entering into this Agreement, the consummation of the sale, nor the conveyance of the Property to Buyer, has or will constitute a violation or breach of any of the terms of any contract or other instrument to which Seller is a party or to which Seller is subject.

3

(d)     Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code (the "Code"). Seller shall provide Buyer with an affidavit to that effect in compliance with the Code at or prior to Settlement.

(e)     There are no commitments or agreements which would require Buyer to pay any money or perform any obligation or which would otherwise affect ownership or development of the Property of Buyer.

(f)     No notice by any government or other public authority has been served upon Seller, or anyone on Seller's behalf, relating to violations of any applicable housing, building, safety, fire ordinances or any other laws or ordinances that may be applicable to the subject property.

(g)     Seller's Plans have been provided to Buyer on or before the date of this Agreement, and will be provided, in accordance with Section 1 above and have been, or will be, paid for by Seller, in as much as such plans shall exist or shall hereafter be created.

(h)     To Seller's knowledge there is no environmental, fill or other sub-surface condition that will hinder, delay or interfere with the Buyer's development of the Property as contemplated.   Seller represents and warrants that it has done nothing to introduce any Hazardous Materials, as defined below, onto the Property.  In addition, to the best of Seller's knowledge, no Hazardous Materials exist on the Property or affect the Property.   The term "Hazardous Materials" means (A) hazardous wastes, hazardous substances, and toxic materials prohibited or regulated by federal, state or local law, regulation or order, (B) asbestos, (C) oil petroleum products and their byproducts, and (D) polychlorinated biphynls ("PCBs").

(j)     To the best of Seller's knowledge and belief, the plans, approvals and all support documentation including topographical and boundary surveys are accurate.  Seller agrees to assign all rights in said plans, approvals and supporting documentation to Buyer.

(k)     Seller shall keep Buyer fully informed of the status of Seller's efforts to obtain the development approvals contemplated hereunder, including providing Buyer written reports bi-monthly (or as may be otherwise requested by Buyer).  For the purpose of this Paragraph 13(k), Seller shall send information to the attention of Robert Stout, Operations Manager, 9 Whippany Road, Whippany, New Jersey 07981.

14.     <u>Operations Pending Settlement</u>.    Between the date of execution of this Agreement and the date of Settlement:

(a)     Seller represents that to the best of its knowledge the Property shall be maintained in its present state of repair and in substantially the same condition as on the date hereof. *If Buyer notifies Seller prior to Settlement that the Property is not in substantially the same condition as of the date* ℰ

(b)     Seller shall not enter into any lease, agreement of sale, option, or any other agreement or contract affecting the Property, nor shall Seller grant any easements or further encumber the Property, without the prior written consent of Buyer.

(c)     Seller shall comply with all covenants, conditions, restrictions, laws, statutes, rules, laws and ordinances applicable to the Property.

(d)     Seller shall not remove or damage any structures, fixtures, systems, improvements, standing trees, shrubbery, plants, landscaping or topsoil now in or on the Property during the term of this Agreement. *ℰ hereof, Seller shall cause the Property to be restored prior to Settlement.*

4

15.    Conditions to Buyer's Obligations.

(a)    Buyer's obligation to complete Settlement under this Agreement is expressly conditioned upon the following:

(i)    All representations and warranties of Seller herein being true and correct at the time of Settlement;

(ii)    Seller having performed all of its covenants and obligations hereunder; and

(iii)    The receipt by Seller at Seller's expense of final unappealable site plan approval of the Property for a development consisting of between one hundred ten (110) and one hundred twenty (120) age restricted active adult townhomes, with clubhouse, pool and other amenities common to such developments in the area, subject only to such terms, restrictions and conditions, including without limitation respecting off-tract/off-site improvements required by any Town, County, State and Federal Agency, Board, Statute, Regulation, Resolution and/or Decision as are acceptable to Buyer in its reasonable discretion; and

(iv)    The receipt by Seller at Seller's expense of all written agreements, arrangements and other evidence reasonably satisfactory to Buyer to the effect that (a) public sewer treatment hookup and capacity is available on a permanent basis for the effluent from the Property as intended to be developed, (b) sufficient public water hookup and capacity is immediately available to the units intended to be developed on the Property, and (c) electric, gas and other utilities are available at the Property, all at connecting fees and expenses that are not greater than those which are customary and ordinary for similar developments in the County wherein the subject property is located that are in effect on the date of this Agreement; and

(v)    The filing of the Site Plan and the receipt by Seller at Seller's expense of all governmental approvals, permits, licenses, variances, certificates, exceptions, authorizations, approvals and changes as may be required to permit the lawful construction, installation, maintenance and operation of the Property as intended by the Buyer.

(vi)    The ability to obtain building permits for Buyer's intended use, subject only to the payment of application fees, the preparation of and approval of building plans and installation of roadways, curbs, and any all other requisite public improvements all of which shall be the responsibility of Buyer after the Closing.

(b)    The final Site Plan for the Project pursuant to Article 16 of the New York Town Law and Town of New Windsor Zoning Code and Site Plan Regulations and the filing of the Final Site Plan with Town of New Windsor Town Clerk shall be unappealable at the time of Settlement.

(c)    The effectiveness of any of the approvals, agreements, permits, licenses or other matters provided for in this Paragraph shall not be subject to any moratorium or litigation.

(d)    In the event that any performance money in lieu of land or parkland fees, guarantees and/or inspection escrows are required in order to file the Site Plan, Seller shall do so provided that Buyer shall advance any costs or expenses (in which event Buyer shall promptly replace the guarantees and escrows after Closing) or Buyer

5

shall pay said expenses to Seller at the time of closing . In addition, the Buyer shall provide Seller at Buyer's sole cost and expense the required performance bond within 15 business days of the date of the unappealable final site plan approval

16.    **Survival.**    Seller shall remain liable after the Settlement for any breach or default of Paragraphs 6, 9, 10, 11, 13 and 14 which existed as of the date of the Settlement.    Any covenant, promise or obligation in this paragraph, which is not by expressed language intended to be fulfilled or performed at Settlement, shall not merge into the deed of conveyance but shall remain in full force and effect and be binding on the parties hereto until fully performed or fulfilled.

**Deleted:** up to

17.    **Notices.**    Any notice required to be given hereunder shall be given in writing and shall be served in person, by nationally recognized express delivery service, by United States registered or certified mail, with postage prepaid, or by facsimile transmission with a hard copy sent the same day by a nationally recognized overnight express delivery service, properly addressed and directed to the party to receive the same at the following address or at such other address as may hereafter be substituted by notice in writing thereof.

Seller:
KG CORNWALL, LLC.
One Shiney Court
Monroe, New York 10950


With copy to
Attorney for the Seller:
BURTON I. DORFMAN, ESQ.
DORFMAN, KNOEBEL & CONWAY, LLP.
51 North Broadway
Nyack, New York 10960

Buyer:
Mr. Paul R. Schneier, Division President
Beazer Homes Corp.
275 Phillips Blvd
Trenton, New Jersey 08618
Phone: 609-538-0244  Fax: 609-538-1899

With copy to
Attorney for the Buyer:
Richard S. Israel, Division Counsel
Beazer Homes Corp.
275 Phillips Blvd
Trenton, New Jersey 08618
Phone: 609-538-0244  Fax: 609-858-7415

18.    **Entire Agreement.**    This Agreement contains the entire agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever. This Agreement may be amended only by a writing signed by both parties.

19.    **Assignment.**    Buyer may assign its rights under this contract to any party with the prior written approval of Seller, which shall not be unreasonably withheld or delayed. Notwithstanding the preceding sentence, Buyer may assign its rights under this contract to any affiliated entity, or land banking financial partner, without the prior written approval of Seller.

20.   **Miscellaneous**.

(a)   The effective date of the Agreement shall be the date the last party signs the Agreement.

(b)   Subject to the Buyer's right to notice and opportunity to cure as provided in Paragraph 7, time shall be of the essence of this Agreement.

(c)   This Agreement may be signed in one or more counterparts (or with counterpart signature pages) which, taken together, shall constitute a fully executed Agreement and shall be considered a single document.

(d).   Buyer and Seller agree to cooperate with each other and to take such further actions as may be requested by the other in order to facilitate the timely purchase and sale of the Property.

(e)   Copies of all municipal, county and state applications, filings with any and all governmental entities and all engineering studies shall also be filed with the attorney for Seller.

(f)   The representatives and officers who have executed this Agreement on behalf of the Buyer hereby represent, warrant and confirm that they have the authority to execute this Agreement.

(g)   Buyer agrees to indemnify Seller from any claims relating to home building or site improvements constructed by the Buyer from the closing forward.

21.   **Escrow of Deposit**

(a)   The Deposit shall be deposited on or before the date of this Agreement with and shall be held in escrow by BURTON I. DORFMAN, ESQ., DORFMAN, KNOEBEL & CONWAY, LLP., ("Escrow Agent"). The parties and Escrow Agent agree that the deposit shall be applied as follows:

(i)   If Settlement is held, the Deposit shall be paid over to Seller and credit to the Purchase Price.

(ii)   If the Settlement is not held by reason of Buyer's default, the Deposit shall be paid over to Seller and be retained by Seller as provided in Section 7 above.

(iii)   If Settlement is not held by reason of Seller's default, the Deposit shall be paid over to Buyer.

(iv)   If Settlement is not held by reason of a failure of condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to Buyer, neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.

(b)   Escrow Agent and its partners and employees are acting as agents only, and will in no case be held liable either jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for the non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).

7

(c)    Escrow Agent shall be obligated to disburse the Deposit at Settlement or upon any cancellation or termination of this Agreement, only upon the written instructions of both parties, should Escrow Agent in its sole discretion request such instructions; and in the absence of such instructions or in the event of any dispute, Escrow Agent shall be and is hereby authorized, but not obligated, to pay the entire amount of the Deposit into court, and any expenses to Escrow Agent for so doing shall be payable out of the Deposit.   Notwithstanding the foregoing, until the expiration of the Due Diligence Period.  Escrow Agent shall be obligated to return the Deposit to Buyer upon unilateral instructions to Buyer.

**IN WITNESS THEREOF,** the parties hereto have hereunto set their hands and seals the day and first year above written

ATTEST:                                    BUYER:
                                           Beazer Homes Corp.

BY: _____             BY: _____
      Robert W. Stout                          Paul R. Schneier, Division President
      Authorized Signatory                     Beazer Homes Corp.

                                           DATE: _____


ATTEST:                                    SELLER: KG CORNWALL, LLC.

BY: _____             BY: _____
                                               JOHN KARGER,
                                               MANAGING MEMBER
                                           DATE: _____5/26/05_____

8

## JOINDER BY AS ESCROW AGENT

BURTON I. DORFMAN, ESQ., DORFMAN, KNOEBEL & CONWAY, LLP., the Escrow Agent named in the foregoing Agreement of Sale, hereby joins in such Agreement to evidence its agreement to hold the Deposit, and otherwise to perform its obligations as escrow agent, all as provided for in Section 21.

By: _____

Name: Burton I. Dorfman, Esquire
Title: Partner
Date of Execution: _____

9

EXHIBIT "A"

DESCRIPTION OF PROPERTY

The proposed property is located in the township of New Windsor in Orange County, NY. The property is known as Lots 65-1-56.1 and 65-1.51.11 and is located between Mt. Airy Road and Dean Hill Road surrounding Benedict Pond.

Stout Affidavit

Exhibit C

**JPMorganChase** ⬡

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

SEP 30, 2005
OUR L/C NO.: CPCS-205054

BENEFICIARY:
KG CORNWALL, LLC
ONE SHINEV COURT
MONROE, NY  10950

COPY

GENTLEMEN:

BY THE ORDER OF:

APPLICANT:
BEAZER HOMES CORP.
275 PHILLIPS BLVD.
TRENTON, NJ 08618

WE HEREBY ISSUE IN YOUR FAVOR OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO:
CPCS-205054 FOR THE ACCOUNT OF BEAZER HOMES CORP. FOR AN AMOUNT OR AMOUNTS
NOT TO EXCEED IN THE AGGREGATE U.S. $150,000.00 (ONE HUNDRED FIFTY
THOUSAND AND 00/100 U.S. DOLLARS) AVAILABLE AT SIGHT ON JPMORGAN CHASE
BANK, N.A., CHICAGO, IL EFFECTIVE IMMEDIATELY AND EXPIRING AT OUR OFFICE
ON OCTOBER 1, 2006.

FUNDS UNDER THIS CREDIT ARE AVAILABLE AT SIGHT ON JPMORGAN CHASE BANK N.A.
ACCOMPANIED BY THE FOLLOWING:

BENEFICIARY'S SIGNED AND DATED STATEMENT READING AS FOLLOWS:

"THE AMOUNT DRAWN REPRESENTS FUNDS DUE AND OWING PURSUANT TO THE AGREEMENT
BETWEEN KG CORNWALL, LLC AND BEAZER HOMES CORP.  BEAZER HOMES CORP. HAS
FAILED TO COMPLY WITH THE TERMS AND CONDITIONS OF THE CONTRACT/AGREEMENT
DATED MAY 31, 2005.  WE HEREBY DEMAND THE AMOUNT OF USD_____ UNDER
JPMORGAN CHASE BANK, N.A. LETTER OF CREDIT NUMBER CPCS-205054."

WE ENGAGE WITH YOU THAT DOCUMENTS DRAWN UNDER AND IN CONFORMITY WITH THE
TERMS AND CONDITIONS OF THIS CREDIT WILL BE DULY HONORED ON PRESENTATION
IF PRESENTED ON OR BEFORE THE EXPIRATION AT OUR COUNTERS AT 300 SOUTH
RIVERSIDE PLAZA, 7TH FLOOR, MAIL CODE IL1-0236, ATTN: STANDBY LETTER OF
CREDIT UNIT, CHICAGO, IL 60606-0236.  THE ORIGINAL LETTER OF CREDIT MUST
ACCOMPANY THE DOCUMENTS REQUIRED UNDER THIS CREDIT FOR ENDORSEMENT.

**JPMorganChase** ⬡

JPMorgan Chase Bank, N.A.
c/o JPMorgan Treasury Services
Global Trade Services
10420 Highland Manor Drive
Tampa, FL 33610

                                                SEP 30, 2005
                                    OUR L/C NO.: CPCS-205054

THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE
OF NEW YORK, AND, EXCEPT AS OTHERWISE EXPRESSLY STATED HEREIN, IS SUBJECT
TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (1993
REVISION), INTERNATIONAL CHAMBER OF COMMERCE - PUBLICATION NO. 500, AND IN
THE EVENT OF ANY CONFLICT, THE LAWS OF THE STATE OF NEW YORK WILL CONTROL,
WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS.

PLEASE ADDRESS ALL CORRESPONDENCE REGARDING THIS LETTER OF CREDIT TO THE
ATTENTION OF THE STANDBY LETTER OF CREDIT UNIT, 300 S. RIVERSIDE PLAZA,
7TH FLOOR, MAIL CODE IL1-0236, CHICAGO, IL 60606-0236, INCLUDING THE
LETTER OF CREDIT NUMBER MENTIONED ABOVE.  FOR TELEPHONE ASSISTANCE, PLEASE
CONTACT THE STANDBY CLIENT SERVICE UNIT AT 1-800-634-1969, SELECT OPTION
1, AND HAVE THIS LETTER OF CREDIT NUMBER AVAILABLE.

                        YOURS VERY TRULY,
                        JPMORGAN CHASE BANK, N.A.



                        _____
                        AUTHORIZED SIGNATURE

Stout Affidavit

Exhibit D

# ORANGE COUNTY CLERK'S OFFICE RECORDING PAGE
## THIS PAGE IS PART OF THE INSTRUMENT – DO NOT REMOVE

TYPE IN BLACK INK:
NAMES(S) OF PARTY(S) TO DOCUMENT

Benedict Pond of
New Windsor LLC

TO

Songoco Holding
LLC

SECTION _65_ BLOCK _1_ LOT _54_

RECORD AND RETURN TO:
(name and address)

R. Dinwooed
PO 367
Walden NY
12586

THIS IS PAGE ONE OF THE RECORDING

**ATTACH THIS SHEET TO THE FIRST PAGE OF EACH
RECORDED INSTRUMENT ONLY**

## DO NOT WRITE BELOW THIS LINE

INSTRUMENT TYPE: DEED___ MORTGAGE___ SATISFACTION___ ASSIGNMENT___ OTHER _Memo of Contract_

### PROPERTY LOCATION

| | | |
|---|---|---|
| 2089 BLOOMING GROVE (TN) | 4289 MONTGOMERY (TN) | NO PAGES _11_ CROSS REF._____ |
| 2001 WASHINGTONVILLE (VLG) | 4201 MAYBROOK (VLG) | CERT.COPY___ ADD'L X-REF.___ |
| 2289 CHESTER (TN) | 4203 MONTGOMERY (VLG) | MAP#_____ PGS._____ |
| 2201 CHESTER (VLG) | 4205 WALDEN (VLG) | |
| 2489 CORNWALL (TN) | 4489 MOUNT HOPE (TN) | PAYMENT TYPE: CHECK ___ |
| 2401 CORNWALL (VLG) | 4401 OTISVILLE (VLG) | CASH ___ |
| 2600 CRAWFORD (TN) | 4600 NEWBURGH (TN) | CHARGE ✓ |
| 2800 DEERPARK (TN) | 4800 NEW WINDSOR (TN) ✓ | NO FEE ___ |
| 3089 GOSHEN (TN) | 5089 TUXEDO (TN) | Taxable |
| 3001 GOSHEN (VLG) | 5001 TUXEDO PARK (VLG) | CONSIDERATION $ 3,000,000 |
| 3003 FLORIDA (VLG) | 5200 WALLKILL (TN) | TAX EXEMPT ___ |
| 3005 CHESTER (VLG) | 5489 WARWICK (TN) | Taxable |
| 3200 GREENVILLE (TN) | 5401 FLORIDA (VLG) | MORTGAGE AMT. $_____ |
| 3489 HAMPTONBURGH (TN) | 5403 GREENWOOD LAKE (VLG) | DATE _____ |
| 3401 MAYBROOK (VLG) | 5405 WARWICK (VLG) | |
| 3689 HIGHLANDS (TN) | 5600 WAWAYANDA (TN) | MORTGAGE TAX TYPE: |
| 3601 HIGHLAND FALLS (VLG) | 5889 WOODBURY (TN) | ___ (A) COMMERCIAL/FULL 1% |
| 3889 MINISINK (TN) | 5801 HARRIMAN (VLG) | ___ (B) 1 OR 2 FAMILY |
| 3801 UNIONVILLE (VLG) | | ___ (C) UNDER $10,000 |
| 4089 MONROE (TN) | **CITIES** | ___ (E) EXEMPT |
| 4001 MONROE (VLG) | 0900 MIDDLETOWN | ___ (F) 3 TO 6 UNITS |
| 4003 HARRIMAN (VLG) | 1100 NEWBURGH | ___ (I) NAT.PERSON/CR. UNION |
| 4005 KIRYAS JOEL (VLG) | 1300 PORT JERVIS | ___ (J) NAT.PER-CR.UN/1 OR 2 |
| | | ___ (K) CONDO |
| | 9999 HOLD | |

**DONNA L. BENSON**
ORANGE COUNTY CLERK

RECEIVED FROM: _Jacobeatz_

RECORDED/FILED
04/23/2003/ 14:13:50
DONNA L. BENSON
County Clerk
ORANGE COUNTY, NY

FILE # 200300065/98
CONTR / BK 11026 PG 1725
RECORDING FEES 63.00
TTX# 006804 TRANS TAX 0.00
Receipt#108769 dab

FILE No.498 02/21 '07 11:51  ID:TEICH GROH       FAX:6ᵤᵤ 890 6961        PAGE  8/ 17

## MEMORANDUM OF CONTRACT OF SALE OF REAL PROPERTY

THIS AGREEMENT, dated the 7 day of February, 2003, between BENEDICT POND

OF NEW WINDSOR, LLC, formerly known as Sarjon LLC, with offices at 535 High Mountain

Road, North Haledon, New Jersey 07508, (hereinafter referred to as the "Seller") AND SUNGOLD

HOLDING, INC., A Domestic Corporation, with offices at 108 New Hempstead Road, New City

New York 10956, (hereinafter referred to as the "Purchaser").

W I T N E S S E T H :

That the Seller agrees to sell and convey, and the Purchaser agrees to purchase, the real

property and premises commonly known as Tax Map Section 65, Block 1, Lots 93 and 94, located

at Town of New Windsor County of Orange, State of New York also described on Schedule "A"

annexed hereto.

This sale is to be made pursuant to the terms, covenants and conditions contained in a

Contract of Sale for the above property, by the parties, as executed on February __, 2003.

The closing of title is scheduled to take place on or before May 1, 2006, as set forth in

paragraph 12 of the contract.  Purchaser is NOT entitled to possession prior to closing.

Pursuant to said contract, Purchaser has made payments to Seller in the amount of

$300,000.00.

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN EXECUTED BY THE

PARTIES HERETO.

BENEDICT POND OF NEW WINDSOR, LLC

By: _____ Angelo J. Danza, Member

SUNGOLD HOLDING, INC.

By: Jaime Dresdner, Pres

State of New York    )
                     ) ss.:
County of ROCKLAND   )

On April 11, 2003 before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                                    Notary Public, State of New York

                                    DONALD TIRSCHWELL
                                    NOTARY PUBLIC - STATE OF NEW YORK
                                    RESIDING IN ROCKLAND COUNTY
                                    COMMISSION EXPIRES 6/30/06

State of New York    )
                     ) ss.:
County of Orange     )

On April 15, 2003 before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                                    Notary Public, State of New York

                                    JAMES V. RINALDI
                                    No. 8580050
                                    Notary Public, State of New York
                                    Qualified in Orange Co.
                                    Commission Expires Mar. 30, 200_

W:\733166\MV3890.WPD

## SCHEDULE "A"

PARCEL I                      DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being
in the Town of New Windsor, County of Orange and State of New York, and
being more particularly bounded and described as follows:

BEGINNING at a point in the easterly line of lands of H.O. Benedict at the
northwesterly corner of the lands of Walter H. Gerow, and running thence
from said point of beginning the following four courses and distances along
the lands of H.O. Benedict:

FIRST:  North 46 degrees 28 minutes East, 67.95 feet to a point;
SECOND: North 23 degrees 57 minutes West, 50 feet to a point;
THIRD:  North 60 degrees 36 minutes East, 23.80 feet to a point;
FOURTH: North 61 degrees 04 minutes East, 165.56 feet to a point, which point
is the corner of a stone wall at the northeasterly corner of the herein described
parcel, and running thence along the new division line through the lands of
Walter H. Gerow, the following three courses:

FIRST:  South 28 degrees 04 minutes East, 286.40 feet, along a stone wall to
a point;
SECOND:  South 26 degrees 08 minutes East, 117 feet, still along said stone wall
to an iron bolt on the west side of said stone wall, the said bolt marking the
southeasterly corner of the herein described parcel;
THIRD:  South 71 degrees 35 minutes West, 288.60 feet along the northerly side
of an old abandoned stone wall to an iron pipe set at the southwesterly corner
of the herein described parcel;
RUNNING THENCE along the easterly line of the lands of H.O. Benedict, North
10 degrees 28 minutes West, 125 feet to a point;
RUNNING THENCE, still along the lands of H.O. Benedict, North 32 degrees
39 minutes West, 165 feet to the point or place of BEGINNING.

Containing 2.12 acres of land, be the same more or less.

LIBER 2626 PG. 318

ITEM II    DESCRIPTION

'ALL THAT LAND, situate in the Town of New Windsor, Orange County, New York, bounded and described as follows;

BEGINNING at a point, being the intersection of the center line of Mount Airy Road with the westerly bounds of Dean Hill Road;

THENCE from said place of beginning and along the westerly bounds of Dean Hill Road;

SOUTH Thirty-Five Degrees, One Minute, Forty Seconds East, Three Hundred Twenty-Three and Fifty-Six Hundredths Feet (S 35°-01'-40" E, 323.56');

SOUTH Thirty-Five Degrees, Fifty-Eight Minutes, Fifty Seconds East, One Hundred Thirteen and Twenty-One Hundredths Feet (S 35°-58'-50" E, 113.21') to a set 5/8" iron rod, flush in the ground, being the northeasterly most corner of lands of Richard T. and Sharon J. Yanasco, Deed Reference Liber 2022, Page 702;

THENCE along the line of lands of said Yanasco, the following three (3) courses and distances;

SOUTH Sixty-Two Degrees, Fifty-Seven Minutes, Five Seconds West, Three Hundred Nine and Ninety-Six Hundredths Feet (S 62°-57'-05" W, 309.96') to a set 5/8" iron rod;

SOUTH Thirty-Five Degrees, Thirty Minutes, Five Seconds East, One Hundred Forty-Four and Forty-Six Hundredths Feet (S 35°-30'-05" E, 144.46') to a set 5/8" iron rod;

NORTH Sixty-Two Degrees, Four Minutes, Forty Seconds East, Three Hundred Ten and Forty-Eight Hundredths Feet (N 62°-04'-40" E, 310.48') generally following the line of the remains of a stone wall the latter portion of the course to a set 5/8" iron rod on the westerly bounds of Dean Hill Road;

THENCE along said westerly bounds, the following four (4) courses and distances, namely;

SOUTH Thirty-Five Degrees, Fifty-Eight Minutes, Fifty Seconds East, One Hundred Eighty and Thirty-Six Hundredths Feet (S 35°-58'-50" E, 180.36');

SOUTH Thirty-Seven Degrees, Twenty-Six Minutes, Five Seconds East, One Hundred Sixty-Six and Seventy-Five Hundredths Feet (S 37°-26'-05" E, 166.75');

LIBER 2626 PG 319

-continued-

SOUTH Forty-One Degrees, Fifty-Two Minutes, Ten Seconds East, One Hundred Seventy-Six and Seventy-Nine Hundredths Feet (S 41°-52'-10" E, 176.79');

SOUTH Forty-Seven Degrees, Nine Minutes, Five Seconds East, Eighty-Six and Sixty-Six Hundredths Feet (S 47°-09'-05" E, 86.66') to a set 5/8" iron rod;

THENCE leaving said westerly bounds of Dean Hill Road, North Seventy-Two Degrees, Ten Minutes, Thirty-Five Seconds East, Thirty-Two and Eighty-Nine Hundredths Feet (N 72°-10'-35" E, 32.89') to a point in the presumed center line of Dean Hill Road as located in July of 1986;

THENCE along the center line of Dean Hill Road, as located in July of 1986, approximately 400 feet plus or minus to a point;

THENCE along the center line of said Dean Hill Road, South Fifty-Nine Degrees, Eighteen Minutes, Fifty Seconds East, Twenty-Six and Zero Hundredths Feet (S 59°-18'-50" E, 26.00');

Deed Reference Liber 1235, Page 13
THENCE along the line of lands of Walter H. Gerow A South Thirty-Seven Degrees, Thirty-Six Minutes, Ten Seconds East (S 37°-36'-10" E) passing over a set 5/8" iron rod at Sixty-Seven and Fifty-Eight Hundredths Feet (67.50') along the way for a total distance of Six Hundred Seventy-Four and Forty Hundredths Feet (674.40') to a set 5/8" iron rod in a stone wall on the line of lands of Howard Franklin Benedict, Deed Reference Liber 1444, Page 2851 .

THENCE along the line of said Benedict, the following five (5) courses and distances, namely:

SOUTH Fifty-Eight Degrees, Fifty-Five Minutes, Thirty Seconds West, (S 58°-55'-30" W) generally following a stone wall, the beginning of the course, One Hundred Seventy-Three and Ninety Hundredths Feet (173.90');

SOUTH Fifty-Seven Degrees, Fifty-Nine Minutes, Thirty-Five Seconds West, Twenty-Three and Eighty Hundredths Feet (S 57°-59'-35" W, 23.80');

SOUTH Twenty-Seven Degrees, Twenty-Six Minutes, Ten Seconds East, Fifty and Zero Hundredths Feet (S 27°-26'-10" E, 50.00');

SOUTH Fifty-Seven Degrees, Fifty-Two Minutes, Thirty Seconds West, Seventy-Two and Zero Hundredths Feet (S 57°-52'-30" W, 72.00');

SOUTH Thirty Degrees, Fifty-Two Minutes, Forty-Five Seconds East, (S 30°-52'-45" E) generally following the line of a stone wall, One Hundred Sixty-Three and Zero Hundredths Feet (163.00') to an angle point in the stone

LIBER 2626 PG 320

-2-

\ wall on the westerly side of a 14" hickory tree;

THENCE continuing along the line of lands of Benedict and along the line of lands of Alice M. Mula, Deed Reference Liber 1025, Page 501 and generally following the direction of the stone wall, South Eight Degrees, Forty-One Minutes, Forty-Five Seconds East, Three Hundred Twelve & Seventy Hundredths Feet (S 08°-41'-45" E, 312.70') to a point on the southeasterly side of an 18" hickory tree standing on the westerly side of a stone wall;

THENCE continuing along the line of lands of Mula and along the line of lands of Linda Marie Gugel, Deed Reference Liber 2076, Page 746; South Twenty-Nine Degrees, Fourteen Minutes, Fifty Seconds East, One Hundred Ninety-Five and Forty-Two Hundredths Feet (S 29°-14'-50" E, 195.42') to a found 5/8" iron rod in a stone wall;

THENCE along the line of lands of John A. Daubois, Deed Reference Liber 2048, Page 158 and along the line of lands of Rufus and Beulah McCaster, Deed Reference Liber 1756, Page 940, South Twenty-Seven Degrees, Seven Minutes, Fifty-Five Seconds East, (S 27°-07'-55" E) generally following the line of a stone wall, One Hundred Seventy and Fourteen Hundredths Feet (170.14');

THENCE along the line of lands of Charles S. Satterly, Deed Reference Liber 2010, Page 1320, South Thirty-Eight Degrees, Forty-Eight Minutes, Forty-Five Seconds East, Sixteen and Forty-Five Hundredths Feet (S 38°-48'-45" E, 16.45') to a set 5/8" iron rod;

SOUTH Eight Degrees, Fifty Minutes, Forty-Five Seconds East, One Hundred Ninety-Two and Twenty-Four Hundredths Feet (S 08°-50'-45" E, 192.24') to a set 5/8" iron rod on the line intended to be the Town line between New Windsor and Cornwall, said iron rod also being North Eighty-Two Degrees, Twenty-One Minutes, Zero Seconds West, Nineteen and Two Hundredths Feet (N 82°-21'-00" W, 19.02') from a found "X" on a marble monument claimed by neighbors to be on the Town Line;

THENCE over and through the lands of Howard O. Benedict, Deed Reference Liber 779, Page 558, North Eighty-Two Degrees, Twenty-One Minutes, Zero Seconds West (N 82°-21'-00" W) along the presumed Town Line, Twelve and Fifty-Two Hundredths Feet (12.52') to a set 5/8" iron rod in a stone wall on the line of lands of Charles Satterly, Deed Reference Liber 1002, Page 81;

THENCE along the line of lands of Charles Satterly, the following two (2) courses and distances;

NORTH Eight Degrees, Fifty Minutes, Forty-Five Seconds West, (N 08°-50'-45" W) generally following the line of a stone wall, One Hundred Eighty-Three and Eight Hundredths Feet (183.08') to a set "X" chisel mark on a stone at the corner of stone walls and South Eighty-Six Degrees, Fifty-Four Minutes, Forty-Five Seconds West (S 86°-54'-45" W) generally following the line of a stone wall, Sixty-Eight and Fifty Hundredths Feet (68.50') to an angle point in the stone wall being the northeasterly corner of lands of David and Alice Mae Bundy, Deed Reference Liber 642, Page 859;

THENCE along the line of lands of said Bundy, the following three (3) courses and distances, namely;

NORTH Seventy-Four Degrees, Forty Minutes, Ten Seconds West (N 74°-40'-10" W) generally following the line of a stone wall, One Hundred Eight and Zero Hundredths Feet (108.00');

LIBER 2626 PG 321

NORTH Seventy-Two Degrees, Thirty-Seven Minutes, Fifty Seconds West, (N 72°-37'-50" W) generally following the line of a stone wall, One Hundred Seventy-Six and Eighteen Hundredths Feet (176.18') to a set 5/8" iron rod at a stone wall intersection;

NORTH Seventy-Five Degrees, Twenty-Six Minutes, Forty Seconds West, (N 75°-26'-40" W) generally following the line of a stone wall, Thirty-Eight and Twenty-Nine Hundredths Feet (38.29') to an intersection of stone walls;

SOUTH Fourteen Degrees, Forty Minutes, Forty Seconds West, (S 14°-40'-40" W) generally following the line of a stone wall, One Hundred Twenty-Seven and Fifty-Eight Hundredths Feet (127.58') to a point being the northeasterly corner of lands of Eleanor C. Graham, Deed Reference Liber 1952, Page 358;

THENCE along the line of lands of said Graham, the following two (2) courses and distances, namely:

NORTH Seventy-Five Degrees, Thirty-Five Minutes, Zero Seconds West, One Hundred Sixty and Zero Hundredths Feet (N 75°-35'-00" W, 160.00') to a found 1" o.d. iron pipe, 7" below grade in a gravel driveway;

SOUTH Fourteen Degrees, Twenty-Five Minutes, Zero Seconds West, One Hundred Four and Fifty-Three Hundredths Feet (S 14°-25'-00" W, 104.53') to a point being North Fourteen Degrees, Twenty-Five Minutes, Zero Seconds East, Ten and Thirty-Two Hundredths Feet (N 14°-25'-00" E, 10.32') from a found 1" o.d. iron pipe, flush in the ground being the southwesterly corner of lands of said Graham, said point also being on the Town Line between New Windsor and Cornwall;

THENCE along said presumed Town Line and over and through the lands of Howard O. Benedict, Deed Reference Liber 763, Page 499, North Eighty-Two Degrees, Twenty-One Minutes, Zero Seconds West, One Hundred Ninety-Nine and Sixty-Six Hundredths Feet (N 82°-21'-00" W, 199.66') to a set 5/8" iron rod;

THENCE continuing along said Town Line and over and through the lands of Howard O. Benedict, Deed Reference Liber 862, Page 350, North Eighty-Two Degrees, Twenty-One Minutes, Zero Seconds West, (N 82°-21'-00" W) passing over a set 5/8" iron rod near the southerly end of the Benedict pond at Three-Hundred Eighty and Seventy Hundredths Feet (380.70') along the way for a total distance of Seven Hundred Seventeen  and Thirty-Seven Hundredths Feet (717.37') to the top of a 1" o.d. iron pipe in concrete in a stone wall being the southeasterly corner of lands of Douglas C. Thorne, Deed Reference Liber 1438, Page 435, said iron pipe also being South Eighty-Five Degrees, Twenty-One Minutes, Thirty Seconds East, Sixty-Five and Sixty-One Hundredths Feet (S 85°-21'-30" E, 65.61') from a found 7/8" o.d. iron pipe in concrete on the line of lands of Thorne and said to be on the Town Line as well;

THENCE along the line of lands of Thorne for a portion of the way and along the line of lands of James and Karen Harle Rothwell, Jr., Deed Reference Liber 1903, Page 816 also being shown on a filed map in the Orange County Clerk's Office, filed on November 30, 1984 and designated as Map Number 6819:

NORTH Six Degrees, Thirty-Three Minutes, Forty-Five Seconds East, (N 06°-33'-45" E) generally following the line of a stone wall, Two Hundred Fifty-Eight and Forty-Nine Hundredths Feet (258.49') to a found 5/8" iron rod at a stone wall intersection;

LBER 2626 PG 322

THENCE continuing along the line of lands of Bothwell, North Thirty-Seven Degrees, Forty-Five Minutes, Fifty-Five Seconds West, ('... '.... ) generally following the line of a stone wall, One Hundred Fifty-... (165.34') to a found 1" o.d. iron pipe in said stone wall;

THENCE along the line of lands of James C. and Anna D. Jensen, Deed Reference Liber 1956, Page 655, the following three (3) courses and distances, namely:

NORTH Thirty-Seven Degrees, Sixteen Minutes, Fifty Seconds West, (N 37°-16'-50" W) generally following a stone wall, One Hundred Eighty-Seven and Seventy Hundredths Feet (187.70');

NORTH Thirty-Eight Degrees, Twelve Minutes, Fifty-Five Seconds West, (N 38°-12'-55" W) generally following a stone wall, One Hundred Thirty-One and Sixty-One Hundredths Feet (131.61');

NORTH Forty Degrees, Zero Minutes, Five Seconds West, (N 40°-00'-05" W) generally following a stone wall and passing over a set 5/8" iron rod at One Hundred Twenty-Five and Four Hundredths Feet (125.04') along the way for a total distance of One Hundredths Sixty and Fifty-Three Hundredths Feet (160.53') to a point in the center line of Mount Airy Road as located in July of 1986;

THENCE along the presumed center line aforementioned, North Four Degrees, Seventeen Minutes, Ten Seconds East, One Hundred Sixty-Six and Seventy-Six Hundredths Feet (N 04°-17'-10" E, 166.76'), North One Degree, Twenty-Nine Minutes, Fifteen Seconds East, One Hundred Thirty and Eight Hundredths Feet (N 01°-29'-15" E, 130.08') and North One Degree, Fifty-One Minutes, Twenty-Five Seconds West, Fifty-Three and Eighty-Two Hundredths Feet (N 01°-51'-25" W, 53.82') to the southwesterly corner of lands of Vernon H. and Florence C. Smith, Deed Reference Liber 1920, Page 1196;

THENCE along the line of lands of said Smith, the following five (5) courses and distances, all generally following a line of a stone wall:

SOUTH Seventy-One Degrees, Thirty-Two Minutes, Zero Seconds East, (S 71°-32'-00" E) passing over a set 5/8" iron rod on the easterly bounds of Mount Airy Road at Twenty-Five and Ninety-Two Hundredths Feet (25.92') along the way for a total distance of Ninety-Nine and Twelve Hundredths Feet (99.12');

SOUTH Seventy-Three Degrees, Thirty-Three Minutes, Fifty-Five Seconds East, Seventy-Two and Thirty-One Hundredths Feet (S 73°-33'-55" E, 72.31');

SOUTH Seventy-Nine Degrees, Fourteen Minutes, Fifty Seconds East, Forty-Six and Sixty-Four Hundredths Feet (S 79°-14'-50" E, 46.64') to a found 1" o.d. iron pipe in a stone wall corner;

NORTH Zero Degrees, Seventeen Minutes, Forty Seconds East, Four Hundred Eleven and Sixteen Hundredths Feet (N 00°-17'-40" E, 411.16') to a set 5/8" iron rod in a corner of a stone wall;

SOUTH Seventy-Two Degrees, Ten Minutes, Thirty-Five Seconds West, (S 72°-10'-35" W) passing over a set 5/8" iron rod at Two Hundred Ten and Eighty-Two Hundredths Feet (210.82') along the way for a total distance of Two Hundred Thirty-Six and Fourteen Hundredths Feet (236.14') to a point in the center line of Mount Airy Road;

LBR 2626 PG 323

THENCE along the center line of Mount Airy Road as located in July of 1986, the following ten (10) courses and distances, namely:

NORTH Four Degrees, Nine Minutes, Forty Seconds West, Ninety-Three and One Hundredths Feet (N 04°-09'-40" W, 93.01');

NORTH Six Degrees, Seven Minutes, Ten Seconds West, One Hundred Forty-Four and Seventy-Six Hundredths Feet (N 06°-07'-10" W, 144.76');

NORTH Seven Degrees, Nineteen Minutes, Twenty Seconds West, One Hundred Ninety-Two and Seven Hundredths Feet (N 07°-19'-20" W, 192.07');

NORTH Four Degrees, Twenty Minutes, Thirty Seconds West, Ninety and Fifty Hundredths Feet (N 04°-20'-30" W, 90.50');

NORTH One Degree, Zero Minutes, Fifty-Five Seconds East, Eighty-Four and Ninety-Three Hundredths Feet (N 01°-00'-55" E, 84.93');

NORTH Five Degrees, Forty-Five Minutes, Forty-Five Seconds East, Eighty-One and Seventy-Eight Hundredths Feet (N 05°-46'-45" E, 81.78');

NORTH Ten Degrees, Forty-Six Minutes, Twenty Seconds East, Eighty-Four and Eighty Hundredths Feet (N 10°-46'-20" E, 84.82');

NORTH Twenty-One Degrees, Eighteen Minutes, Twenty Seconds East, Ninety-Three and Eighty Hundredths Feet (N 21°-18'-20" E, 93.80');

NORTH Twenty-Eight Degrees, Twelve Minutes, Five Seconds East, One Hundred Thirty-Seven and Three Hundredths Feet (N 28°-12'-05" E, 137.03');

NORTH Twenty-Nine Degrees, Thirty-Seven Minutes, Fifty-Five Seconds East, three Hundred Eight and Twelve Hundredths Feet (N 29°-37'-55" E, 308.12') to the place of beginning.

CONTAINING 66.473 acres of land as surveyed by Mercurio-Norton-Terolli, Land Surveying-Engineering, Corner of Main and Center Streets, Pine Bush, New York 12566. Bearings refer to magnetic north of August, 1986.

EXCEPTING from the above described 66.473 acre parcel a parcel owned by New York Telephone Company as described in Liber 2004 of Deeds, Page 415 and more particularly bounded and described as follows:

BEGINNING at a found 4" X 4" concrete monument being the southeasterly corner of lands of said New York Telephone Company, said monument being North Eighty-Nine Degrees, Thirty-Five Minutes, Twenty-Five Seconds West, One Hundred Seven and Sixty Hundredths Feet (N 89°-35'-25" W, 107.60') from a set 5/8" iron rod, being the northwesterly corner of lands of Richard T. and Sharon J. Vanesco, Deed Reference Liber 2022, Page 702;

THENCE from said place of beginning and along the line of lands of M. Franklin Benedict, the following four (4) courses and distances, namely:

NORTH Sixty-Two Degrees, Forty-Eight Minutes, Fifty Seconds West, One Hundred and Twenty-Two Hundredths Feet (N 62°-48'-50" W, 100.22') to a found 4" X 4" concrete monument, flush in the ground on the easterly side of Mount Airy Road:

LIBER2626 PG 324

NORTH Twenty-Seven Degrees, Eighteen Minutes, Forty Seconds East, (N 27°-18'-40" E) along the easterly side of Mt. Airy Road, One Hundred Fifty and Seven Hundredths Feet (150.07') to a found 4" x 4" concrete monument in a stone wall;

SOUTH Sixty-Two Degrees, Fifty-Two Minutes, Thirty Seconds East, Ninety-Nine and Seventy-One Hundredths Feet (S 62°-52'-30" E, 99.71') to a found 4" x 4" concrete monument at the base of an apple tree, 13" above grade;

SOUTH Twenty-Seven Degrees, Seven Minutes, Ten Seconds West, One Hundred Fifty and Eighteen Hundredths Feet (S 27°-07'-10" W, 150.18') to the place of beginning.

THIS EXCEPTION contains 0.344 acres of land, leaving the above described tract with a remaining 66.129 acres of land.

THE 66.129 acre parcel is subject to that land within the bounds of Mt. Airy Road and Dean Hill Road, for use as a public highway.

SUBJECT to a utility easement in favor of the American Telephone and Telegraph Company as described in Liber 681 of Deeds, Page 507.

SUBJECT to a right-of-way over and upon a private road leading from the westerly bounds of Graham to the New York State Route 94 as is described in Liber 1252, Page 358;

SUBJECT to an grants easements or rights-of-way of utility companies of record, if any.

THE ABOVE DESCRIBED 66.129 acres of land is intended to be portions of the following deed: the first a deed conveyed by Eva S. Benedict to Howard O. Benedict on July 2, 1945 and recorded in the Orange County Clerk's Office in Liber 902 of Deeds, Page 350 on July 3, 1945; the second being a portion of a deed conveyed by Lyman Abbott Gerow and Gilbert Westcott Gerow as executors of a will to Howard O. Benedict on March 12, 1937 and recorded in the Orange County Clerk's Office in Liber 779 of Deeds, Page 558 on March 19, 1937; the third being a portion of lands conveyed by Edward P. Runyan to Howard O. Benedict on October 24, 1935 and recorded in the Orange County Clerk's Office in Liber 763 of Deeds, Page 489; the fourth being all the land contained in a deed conveyed by Lyman Abbott Gerow and Gilbert Westcott Gerow as executors of a will to Howard O. Benedict and filed in the Orange County Clerk's Office on July 29, 1937 in Liber 784 of Deeds, Page 49 and the last deed being a portion of lands conveyed on April 4, 1970 from Eva B. Benedict to H. Franklin Benedict and filed in the Orange County Clerk's Office in Liber 1007 of Deeds, Page 271 on October 18, 1971.

                              LIBER 2626 PG 325

BEING AND INTENDED TO BE the same premises described in a certain Deed dated June 21, 1994, made by Omat Inc., to Gertrude C. Benedict, Individually and as Testatrix of the Last Will and Testament of H. Franklin Benedict; H. Glenn Benedict, Lee C. Benedict and Dale Benedict, which Deed was thereafter recorded in the Office of the Orange County Clerk on June 27, 1994, in Liber 4065 of Deeds at page 141.

ALSO BEING INTENDED TO BE PARCEL I AND PARCEL II ON A MAP ENTITLED "PROPOSED LOT LINE CHANGE OF LANDS OF GERTRUDE C. BENEDICT" DATED 7-17-95 AND RECORDED 4-12-96 IN THE ORANGE COUNTY CLERK'S OFFICE AS MAP #69-96.

Stout Affidavit

Exhibit E

# TEICH GROH
### AN ASSOCIATION OF
### PROFESSIONAL CORPORATIONS & LIMITED LIABILITY COMPANIES
### COUNSELLORS AT LAW
691 STATE HIGHWAY 33
MERCERVILLE
TRENTON, NEW JERSEY 08619-4492

ARTHUR TEICH (1915-1997)
WILLIAM C. GROH, Retired
BARRY W. FROST*
MICHAEL A. ZINDLER
CAROL OSWALD
CAROL L. KNOWLTON†
ALLEN I. GORSKI‡
DEAN S. NALBONE†
ALAN G. FRANK, JR.
GARY R. BACKINOFF†
BRIAN W. HOFMEISTER

BRANCH OFFICE:

109 FRANKLIN CORNER ROAD
LAWRENCEVILLE, NJ 08648
(609) 844-0488

(609) 890-1500

123 FRANKLIN CORNER ROAD
SUITE 208
LAWRENCEVILLE, NJ 08648
(609) 896-2900
FAX (609)896-3115

FAX NO. (609)890-6961

JENNIFER ZOSCHAK
CINZIA CIOFFI
RICHARD J. ALPHONSE

* NJ AND NY BAR
† NJ AND PA BAR
‡ NJ, NY, CT AND DC BAR

September 7, 2005

**sent via fax and regular mail**
Burton I. Dorfman, Esquire
Dorfman, Knoebel & Conway, LLP
51 North Broadway
Nyack, New York 10960

        RE:    KG CORNWALL, LLC TO BEAZER HOMES CORP.
               SECTION 65, BLOCK 1, LOTS 51.11 AND 56.1
               TOWN OF NEW WINDSOR
               AGREEMENT OF SALE

Dear Mr. Dorfman:

        Please be advised that this firm represents Beazer Homes Corp. who has contracted with your client, KG Cornwall, LLC, to purchase the referenced property.

        In connection with our clients' due diligence investigation of the property, a title search was ordered and one of the items listed as an exception under said report was a Memorandum of Contract from 2003 between the present fee title owner of the property and an entity by the name of Sungold Holding, Inc. A copy of the Memorandum of Contract is provided for your benefit. We further note that the contract vendee under that Memorandum appears to be a different entity than KG Cornwall, LLC.

        I would appreciate your enlightening me as to the implications of this Memorandum which is of record. It would appear that unless said Memorandum is discharged, there is a third party with whom neither my client nor your client is in privity who has rights in the property which may be superior to those of your client and thus superior to those of mine.

        Please contact me at your earliest convenience so that I will be able to complete my legal due diligence review of the premises prior to the expiration of the due diligence period on September 19, 2005.

Burton I. Dorfman, Esquire                    Page Two
RE: KG Cornwall - Beazer Homes               September 7, 2005

    Thanking you for your cooperation and looking forward to hearing from you, I am

                     Very truly yours,

                     Alan G. Frank, Jr.

AGF/cla
enclosures
CC:   Beazer Homes Corp.
Attn: Rob Stout

Stout Affidavit

Exhibit F

# DORFMAN, KNOEBEL & CONWAY, LLP

ATTORNEYS AT LAW
51 NORTH BROADWAY
NYACK, NEW YORK 10960

(845) 353-3500

FAX
(845) 353-3529

130 WILLIAMS STREET
SUITE 710
NEW YORK, NEW YORK 10038

NO FAX OR SERVICE ACCEPTED

BURTON I. DORFMAN
ROBERT S. KNOEBEL, JR.*
KEVIN T. CONWAY **

JOSEPH S. SCARMATO
DEBORAH A. QUINN

MEMBER NY & NJ BAR *
MEMBER NY, NJ & CT BAR **

February 9, 2007

## *Via facsimile and Express Mail:*

Beazer Homes Corp.
275 Phillips Boulevard
Trenton NJ 08618

Attention:   Paul R. Schneier, Division President- Fax No.:(609)538-1899
             Richard S. Israel, Esq., Division Counsel- Fax No.:(609) 858-7415

Re:   KG Cornwall, LLC w/Beazer Homes Corp.

Dear Messrs. Schneier and Israel:

This letter is to advise you that you have defaulted in providing conditions set forth in ¶15D of the Contract of Sale that was set forth in my letters dated January 15, 2007 and January 30, 2007.

Please be further advised that as a result of your default a Time of the Essence Closing is hereby scheduled for February 21, 20007 at my offices located at 51 North Broadway, Nyack, New York at 11:00 a.m.

Very truly yours,

BURTON I. DORFMAN

BID:cz

cc:   KG Cornwall
      JP Morgan Chase Bank

Stout Affidavit

Exhibit G

# TEICH GROH
### AN ASSOCIATION OF
### PROFESSIONAL CORPORATIONS & LIMITED LIABILITY COMPANIES
### COUNSELLORS AT LAW
691 STATE HIGHWAY 33
MERCERVILLE
TRENTON, NEW JERSEY 08619-4492

(609) 890-1500

FAX NO. (609) 890-5951

ARTHUR TEICH  (1915-1997)
WILLIAM C. GROH, Retired
BARRY W. FROST*
MICHAEL A. ZINDLER
CAROL OSWALD
CAROL L. KNOWLTON†
ALLEN L. GORSKI†
DEAN S. NALBONE†
ALAN G. FRANK, JR.
GARY R. BACKINOFF†
BRIAN W. HOFMEISTER

JENNIFER ZOSCHAK
CINZIA CIOFFI
RICHARD J. ALPHONSE

* NJ AND NY BAR
† NJ AND PA BAR

BRANCH OFFICE:

108 FRANKLIN CORNER ROAD
LAWRENCEVILLE, NJ 08648
(609) 844-0488
FAX (609) 844-0784

123 FRANKLIN CORNER ROAD
SUITE 208
LAWRENCEVILLE, NJ 08648
(609) 896-2900
FAX (609) 896-3115

February 21, 2007

<u>VIA FAX AND OVERNIGHT MAIL</u>                    <u>VIA OVERNIGHT MAIL</u>

KG Cornwall, LLC                  and        KG Cornwall, LLC
c/o Dorfman, Knoebel & Conway, LLP           One Shinev Court
51 North Broadway                            Monroe, New York 10950
Nyack, New York 10960
Attention:  Burton I. Dorfman, Esquire

RE:    **AGREEMENT OF SALE OF MAY 31, 2005 BETWEEN
       KG CORNWALL, LLC ("SELLER") AND BEAZER HOMES
       CORP. ("BUYER") – NOTICE OF TERMINATION**

Gentlemen:

   Please accept this letter as notice from our client, the Buyer in the referenced Agreement, that Seller is in default of said Agreement and that by reason of such default, Buyer is exercising its right under Paragraph 8 of the Agreement to terminate same and receive a return of the down payment, demand for which is hereby made.

   The substance of Seller's default is that despite (i)  Seller's obligation under Paragraph 3(a) of the Agreement to convey to Buyer encumbrance-free title to the property described in the Agreement (the "Property") and (ii)  Seller's written notice to Buyer that a Time of Essence Closing had been scheduled for 11:00 a.m. at your office on February 21, 2007 (the "TOE Time"), Seller was <u>not</u> and is <u>not</u> in a position to convey encumbrance-free title to the Property to Buyer as of the TOE Time.

   Specifically, a certain Memorandum of a Contract of Sale between Seller's predecessor in title to the Property, Benedict Pond of New Windsor, LLC (formerly Sarjon, LLC), and Sungold Holding, Inc. with respect to real property which included the Property was recorded in the Orange County Clerk's Office on April 23, 2003 in Liber 11026 at page 1725 (the "Memorandum"). Said Memorandum still appears of record in the Orange County Clerk's Office as of the TOE Time. The non-discharge of the

KG Cornwall, LLC
Page Two
February 21, 2007

Memorandum in the records of the Orange County Clerk's Office as of the TOE Time of 11:00 a.m. on February 21, 2007 was confirmed to Buyer by a telephone message from James Wood of Hill-n-Dale Abstractors, Inc./Goshen Searchers, Inc. just prior to 11:00 a.m. on February 21, 2007.

Please note that Buyer first made Seller aware of the existence of the encumbrance embodied in the Memorandum and its implications in September, 2005. (See attached letter to Seller's attorney). Despite that letter – to which no response was ever forthcoming – and despite Seller's May, 2006 purchase of the Property from Benedict Pond of New Windsor, LLC (formerly Sarjon, LLC), the contract vendor under the Memorandum, Seller has failed as of the TOE Time to cause the contractual right of Sungold Holdings, Inc. in the Property to be discharged or terminated of record. The continuing existence of the encumbrance embodied in the Memorandum of record as of the TOE Time clearly places Seller in default of the Agreement as of the TOE Time and such circumstance entitles Buyer to lawfully terminate the Agreement and receive the return of its down payment. This letter constitutes such notice of termination. The Agreement is now null and void and of no further force and effect.

Notwithstanding that the down payment in the form of a $150,000.00 Letter of Credit being held by your attorney, Burton I. Dorfman, Esquire, as Escrow Agent under the Agreement, has expired by its terms and is of no further force and/or effect, demand is nonetheless hereby made that you immediately authorize the Escrow Agent to return such Letter of Credit to Buyer at the address for Buyer provided in the Agreement.

Very truly yours,

Alan G. Frank, Jr.

AGF/cla
CC:    Beazer Homes/Attn: Paul Schneier, Division President
       Beazer Homes/Attn: Richard S. Israel, Esquire, Division Counsel
       Burton I. Dorfman, Esquire (via Fax and Overnight Delivery)

Stout Affidavit

Exhibit H

Feb-26-07   11:09am   From-Tiech, Groh, Frost & Zindler          609 890 6961          T-079   P.002/003   F-550
                                                                                      NU. 1504   r. 1

# DORFMAN, KNOEBEL & CONWAY, LLP

ATTORNEYS AT LAW

51 NORTH BROADWAY

NYACK, NEW YORK 10960

(845) 353-3500

FAX

(845) 353-3529

BURTON I. DORFMAN
ROBERT S. KNOEBEL, JR.*
KEVIN T. CONWAY **

JOSEPH S. SCARMATO
DEBORAH A. QUINN

MEMBER NY & NJ BAR *
MEMBER NY, NJ & CT BAR **

130 WILLIAMS STREET
SUITE 710
NEW YORK, NEW YORK 10038

NO FAX OR SERVICE ACCEPTED

February 26, 2007

_**Via facsimile: (609) 890-6961**_

TEICH GROH
691 State Highway 33
Mercerville
Trenton, NJ 08619-4407

Attention: Alan G. Frank, Jr., Esq.

Re:   KG Cornwall, LLC/Beazer Homes Corp.

Dear Mr. Frank:

This letter is written in response to your letter dated February 21, 2007 that was faxed to my office at 11:40 a.m. on same date.   Please be advised that your correspondence, as well as your client's conduct with respect to the Contract of Sale dated May 31, 2006, is, to say the least, improper.

Initially, it was quite shocking that there has been no prior correspondence from your office concerning the Time of the Essence Closing scheduled at 11:00 a.m. on February 21, 2007 since your client's waiver of due diligence on **September 26, 2005**.  Your reference to the non-existent title exception which I am only to presume to have been raised by Hill-N-Dale Title Abstract that was **never** provided to this office.

Alan G. Frank, Jr., Esq.
February 26, 2007
PAGE TWO

It is quite apparent that this "after-the-fact" non-existent exception is without merit due to the fact that your client was well aware that Mr. Abe Goldberger was a principal of Sun-Gold and title was taken pursuant to the Contract referred in the Memorandum. That all interest in Sun-Gold was assigned to Mr. Goldberger on <u>July 10, 2003</u> by Jamie Dresner. That Mr. Goldberger as principal of both Sun-Gold and KG Cornwall, LLC, assigned the rights to the Contract to KG Cornwall and KG Cornwall took title to the property pursuant to the Contract that is subject to the Memorandum on May 1, 2006.

Your client was also fully informed that my client took title on May 1, 2006. In fact, ¶13(a) specifically reflects that KG Cornwall was a contract vendee at the time it entered into the Contract on May 31, 2005. That my client was ready, willing and able to tender the executed Deed on February 21, 2007, prior to receipt of your letter. In addition any and all documents required by Hill-N-Dale as to the non-existent exception would have been provided.

Furthermore, your client has no authority to request the return of the Letter of Credit. Your client does have the obligation of providing a Letter of Credit and did so and it was believed that the Letter of Credit had been extended. However, it appears your client committed an unlawful act of removing the down payment from my escrow. Therefore, unless the sum of $150,000 is received by my office by wire transfer or bank check by March 2, 2007, my client will bring appropriate action in the proper forums.

Thanking you for your anticipated cooperation.

Very truly yours,

BURTON I. DORFMAN

BID:cz

cc: Chase Bank

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KG CORNWALL, LLC                              :
                                              :        Index No. 07 Civ. 2881 (CLB)
                           Plaintiff,         :
                                              :
            -against-                         :
                                              :        **DECLARATION OF
                                              :        LUISA K. HAGEMEIER
                                              :        IN SUPPORT OF DEFEN-
BEAZER HOMES CORP.                            :        DANT'S MOTION FOR
                                              :        PARTIAL SUMMARY
                           Defendant.         :        JUDGMENT AND DIS-
------------------------------------------------------------------X        QUALIFICATION**

       LUISA K. HAGEMEIER, under penalty of perjury under the laws of the United States of

America, declares and states as follows:

       1.        I am an attorney duly admitted to practice before this Court and the courts of

this State and am of counsel to the law firm Pryor Cashman LLP, attorneys for defendant in this

action, Beazer Homes Corporation (Beazer).

       2.        I submit this declaration in support of (i) Beazer's motion for partial summary

judgment dismissing the Second, Third and Fourth Counts of the Complaint[1] and KG's demand

for damages in the amount of $5 million and (ii) Beazer's motion to disqualify Burton Dorfman,

Esq. (Dorfman) and the law firm of Dorfman, Knoebel & Conway, LLP (the Firm) from

representing plaintiff KG Cornwall, LLC (KG) in this action. This declaration is based upon my

personal knowledge, Beazer's books and records and documents produced by KG in this

litigation.

       3.        The facts set forth herein relate primarily to the disqualification portion of

Beazer's motion. The accompanying Affidavit of Robert Stout, sworn to December 27, 2007

---

[1] The Complaint is attached as Ex. A to the accompanying Affidavit of Robert Stout, sworn to December 27, 2007
(Stout Aff.).

(Stout Aff.) is more comprehensive in setting forth facts relevant to the summary judgment portion of the motion.

4.    At issue in this case is an agreement between KG and Beazer, dated May 31, 2005 (the Agreement), pursuant to which KG was to sell and Beazer was to buy a tract of land in New Windsor, New York (the Property).  The Agreement is attached as Ex. B to the Stout Aff.

**Dorfman and the Firm Should Be Disqualified**

5.    Dorfman, KG's attorney in this litigation, represented KG at all times in the underlying transaction.  He himself told me during a telephone conversation on August 2, 2007, that he knows "exactly what happened [in the underlying transaction], because [he] was right in the middle of all of this."

6.    Indeed, just a cursory perusal of the correspondence and documents relating to the underlying transaction, reveals the extent of Dorfman's involvement at virtually every turn and every phase of the transaction.  See, e.g., Stout Ex. B (Agreement) § 17 (Dorfman to receive notices under Agreement) and § 21 (Dorfman designated as Escrow Agent); Ex. F, Letter from B. Dorfman, Esq. to P. Schneier & R. Israel, dated Feb. 9, 2007 (setting Time of the Essence closing); Ex. H, Letter from B. Dorfman, Esq. to A. Frank, dated Feb. 26, 2007 (stating "facts" regarding transaction, including alleged chain of title).

7.    By virtue of his extensive involvement in the underlying transaction, intimate knowledge and singular familiarity with the documents and facts at issue in this litigation, not only "ought" Dorfman be called to testify in the trial of this action, but he is a critical witness in this case, for both KG and Beazer.

8.      Dorfman and the Firm represented KG in the underlying transaction and also served as the designated Escrow Agent under the Agreement. Stout Aff. Ex. B, Agreement, at § 21.

9.      In that capacity, Dorfman was responsible for "the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section 21." Stout Aff. Ex. B § 21.

10.     Pursuant to the Agreement, in the event of default by Beazer, the Deposit was KG's "sole and exclusive remedy." Stout Aff. Ex. B, Agreement, at § 7.

11.     The LOC expired by its terms on October 1, 2006. Stout Aff. Ex. C.

12.     Dorfman told me during our August 2, 2007 telephone conversation that he, the Escrow Agent, had never asked Beazer to renew, extend or replace the LOC after it expired.

13.     Correspondence from Dorfman actually suggests that he was not even aware that the LOC had expired until on or about February 26, 2007. Stout Aff. Ex. H (Dorfman writes in letter to Beazer's counsel that "it was believed that the Letter of Credit had been extended").

14.     The possibility that Dorfman may have breached his fiduciary duty to KG in his role as Escrow Agent, gives Dorfman a personal, financial and business interest in this case.

15.     Upon information and belief, Dorfman is a partner in the Firm, and the Firm is subject to liability for Dorfman's acts as KG's Escrow Agent.

**Dorfman Induced Beazer to Defer Moving to Disqualify Until This Time**

16.     KG has known since July 30, 2007—at the latest—that Beazer intended to seek disqualification of Dorfman and the Firm. Attached hereto as Ex. A is a letter dated and sent on July 30, 2007, in which Beazer requests that Dorfman voluntarily withdraw from the

representation, and advising that Beazer would otherwise move for disqualification based on DR 5-102.

17.      Dorfman did not respond to the July 30 letter.  Rather, KG induced Beazer to defer the motion while mediation was pending, through what have proved to be repeated unfulfilled representations that Dorfman would voluntarily withdraw.

18.      When the subject of the impropriety of Dorfman's continued representation of KG arose during the mediation, Dorfman stated *in the presence of George Gluck, Esq., the Mediator*, that he would withdraw voluntarily.

19.      Hoping to amicably resolve this matter and avoid unnecessary motion practice, the parties agreed to suspend deadlines for responding to discovery requests during the pendency of the mediation (which continued through November 2007).

20.      On November 26, 2007, I received a telephone call from Debbie Quinn, an associate at Mr. Dorfman's firm.  I advised Ms. Quinn during our conversation that Beazer intended to make its motion to disqualify Dorfman and the Firm.

21.      Shortly thereafter, Ms. Quinn called me again to convey a request by Dorfman that we inform him prior to making such a motion, whereupon he would withdraw voluntarily.

22.      By letter dated November 26, 2007, attached hereto as Ex. B, Beazer notified Dorfman that it intended to move for disqualification if he did not withdraw.

23.      One week later, on December 7, 2007, counsel attended a previously scheduled compliance conference before the Court.

24.      Upon being informed that there had been little progress on discovery, the Court ordered that discovery be completed and the case be trial ready by January 11, 2008.  Based on Dorfman's representations that he would withdraw, Beazer had not moved to disqualify.

15.     On November 26, 2007, I received a telephone call from Debbie Quinn, an associate at Mr. Dorfman's firm. I advised Ms. Quinn during our conversation that Beazer intended to make its motion to disqualify Dorfman and the Firm.

16.     Shortly thereafter, Ms. Quinn called me again to convey a request by Dorfman that we inform him prior to making such a motion, whereupon he would withdraw voluntarily.

17.     By letter dated November 26, 2007, attached hereto as Ex. B, Beazer notified Dorfman that it intended to move for disqualification if he did not withdraw.

18.     One week later, on December 7, 2007, counsel attended a previously scheduled compliance conference before the Court.

19.     Upon being informed that there had been little progress on discovery, the Court ordered that discovery be completed and the case be trial ready by January 11, 2008. Based on Dorfman's representations that he would withdraw, Beazer had not moved to disqualify.

20.     Absent a pending motion, with due notice and an opportunity to reply by KG, it would have been inappropriate to raise disqualification at the conference.

21.     Beazer has complied with all of KG's discovery requests, and depositions are scheduled to take place during the first two weeks of January 2008.

22.     Dorfman and the Firm should be disqualified immediately.

I declare under penalty of perjury that the foregoing is true and correct.


DATED:      New York, New York
            December 27, 2007


                                    _____
                                    LUISA K. HAGEMEIER
                                    lhagemeier@pryorcashman.com


4

Hagemeier Declaration

Exhibit A

**Luisa K. Hagemeier**
Of Counsel

Direct Tel: 212-326-0877
Direct Fax: 212-798-6354
lhagemeier@pryorcashman.com

July 30, 2007

<u>FEDERAL EXPRESS</u>

Burton I. Dorfman, Esq.
Dorfman Knoebel & Conway, LLP
Nyack, New York 10960

      Re:    <u>KG Cornwall v. Beazer Homes Corp., Index No. 07 Civ. 2881</u>

Dear Mr. Dorfman:

      Enclosed is a notice to take your deposition in the above-referenced matter.

      Disciplinary Rule 5-102(A) of the New York Code of Professional Responsibility prohibits a lawyer from accepting or continuing employment "if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client," except in certain circumstances not present here.  Furthermore, 5-102(B) provides that "[n]either a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or another lawyer in the lawyer's firm may be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony would or might be prejudicial to the client."

      Because your testimony is necessary and potentially prejudicial to your client, these Disciplinary Rules bar both you and your firm from representing KG Cornwall, LLC in this action.  Please advise us immediately whether it will be necessary for us to move to disqualify you, or whether you will withdraw voluntarily.  If we do not hear from you within five days of this letter, we will assume that you have opted for the former course of action.

      Very truly yours,

      / s /

      Luisa K. Hagemeier

cc:  Eric D. Sherman, Esq.
Enclosure

Hagemeier Declaration

Exhibit B



# PRYOR CASHMAN LLP

New York | Los Angeles

410 Park Avenue, New York, NY 10022   Tel: 212-421-4100   Fax: 212-326-0806

www.pryorcashman.com

**Luisa K. Hagemeier**
Of Counsel

Direct Tel: 212-326-0877
Direct Fax: 212-798-6354
lhagemeier@pryorcashman.com

November 26, 2007

BY FACSIMILE

Burton I. Dorfman, Esq.
Dorfman Knoebel & Conway, LLP
51 North Broadway
Nyack, New York 10960

Re:   KG Cornwall v. Beazer Homes Corp., Index No. 07 Civ. 2881

Dear Mr. Dorfman:

Your associate, Debbie Quinn, asked that we notify you before moving to disqualify you and your firm from representing the plaintiff in the above-referenced action, suggesting that you would withdraw voluntarily rather than forcing motion practice.  I am hereby notifying you that we intend to make such a motion.

Please advise us of your intentions no later than Friday, November 30, 2007.  If we do not hear from you by then, we will assume that a motion is necessary.

Very truly yours,

Luisa K. Hagemeier

cc:  Eric D. Sherman, Esq.