UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KG CORNWALL, LLC                                    :
                                                    :          Index No. 07 Civ. 2881 (CLB)
                        Plaintiff,                  :
                                                    :
          -against-                                 :
                                                    :
                                                    :
                                                    :
                                                    :
BEAZER HOMES CORP.                                  :
                                                    :
                        Defendant.                  :
-------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISQUALIFICATION OF COUNSEL


PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022

*Attorneys for Defendant Beazer
Homes Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

I.    THE UNDISPUTED FACTS RELEVANT TO
      SUMMARY JUDGMENT MOTION ......................................................................2

      A.    The Transaction Underlying the Present Dispute ..........................................2

            1.    KG Was Required to Convey Clear and
                  Unencumbered Title to the Property ...................................................3

            2.    Beazer Alerted KG to a Title Defect ....................................................4

            3.    KG Never Explained or Discharged the Sungold Contract .....................5

            4.    The LOC Expired While in Escrow .......................................................6

      B.    KG's Claims in this Action ..........................................................................6

II.   FACTS RELEVANT TO THE DISQUALIFICATION MOTION ............................6

ARGUMENT ..........................................................................................................................7

I.    THE CLAIMS FOR CONVERSION, MISREPRESENTATION AND
      DAMAGES OF FIVE MILLION DOLLARS SHOULD BE DISMISSED ...............7

      A.    Summary Judgment Standard .......................................................................8

      B.    There Is No Evidentiary or Legal Basis for KG's Conversion Claim ...............9

      C.    There Is No Evidentiary or Legal Basis for
            KG's Claim of Misrepresentation .................................................................9

      D.    The Agreement's Express Limitation of
            Remedies Precludes Damages of $5 Million ..................................................10

II.   DORFMAN AND THE FIRM SHOULD BE DISQUALIFIED ...............................11

      A.    Standard for Determining Disqualification Motion ..........................................11

      B.    Dorfman and the Firm Should be Disqualified Under DR 5-102 .....................11

C.    Dorfman and the Firm Should Be Disqualified Under DR 5-101 ...................16

CONCLUSION..............................................................................................................16

## TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE(S)**

Automobile Coverage, Inc. v. American International Group,
    42 A.D.3d 405, 839 N.Y.S.2d 916 (1st Dep't 2007)...........................................8

Blue Cross & Blue Shield v. Philip Morris, Inc.,
    53 F. Supp. 2d 338 (E.D.N.Y. 1999) .........................................................11

Briefstein v. Rotondo Construction Co.,
    8 A.D.2d 349, 187 N.Y.S.2d 866 (1st Dep't 1959) ...........................................10

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..........................................................................7

Clarett v. National Football League,
    306 F. Supp. 2d 379 (S.D.N.Y. 2004)........................................................7

Colavito v. N.Y. Organ Donor Network, Inc.,
    8 N.Y.3d 43 (2006) ..........................................................................8

D'Ambrosio v. Engel, 292 A.D.2d 564, 741 N.Y.S.2d 42 (2d Dep't 2002)......................8

Duane Reade v. 405 Lexington, L.L.C.,
    22 A.D.3d 108, 800 N.Y.S.2d 664 (1st Dep't 2005) .........................................10

Fairview at Old Westfield, L.P. v. European America Bank,
    186 A.D.2d 238, 588 N.Y.S.2d 339 (2d Dep't 1992)........................................13

Felix v. Balkin,
    49 F. Supp. 2d 260 (S.D.N.Y. 1999)........................................................11

Fulfree v. Manchester,
    945 F. Supp. 768 (S.D.N.Y. 1996) .....................................................11, 14

Gleason v. Zocco,
    941 F. Supp. 32 (S.D.N.Y. 1996) ..........................................................12

Hakimian Management Corp. v. Richard C. Fiore, Inc.,
    16 Misc. 3d 1108, 2007 WL. 2003759  (N.Y. Sup. Ct. N.Y. Co. July 9, 2007)...............12

Hempstead Bank v. Reliance Mortgage Corp.,
    81 A.D.2d 906, 459 N.Y.S.2d 202 (2d Dep't 1981).........................................14

**CASES**                                                                                          **PAGE(S)**

Hoerger v. Board of Education of the Great Neck Union Free Sch. District,
    129 A.D.2d 659, 514 N.Y.S.2d 641 (2d Dep't 1987)..........................................................13

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).........................................................................................................7

McGovern v. Best Building & Remodeling,
    245 A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997)....................................................9

Mendelovitz v. Cohen,
    37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2007)......................................................9

Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.,
    192 A.D.2d 83, 600 N.Y.S.2d 212 (1st Dep't 1993) ..................................................10

Moon v. Clear Channel Communications, Inc.,
    307 A.D.2d 628, 763 N.Y.S.2d 157 (3d Dep't 2003) ..................................................9

Multi-Juice S.A. v. Snapple Beverage Corp.,
    No. 02 Civ. 4635 (RPP), 2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003) ..........................12

North Shore Neurosurgical Group, P.C. v. Leivy,
    72 A.D.2d 598, 421 N.Y.S.2d 100 (2d Dep't 1979)....................................................11

One Beacon Ins. v. Terra Firma Constr. Mgmt. & General Contracting, LLC,
    No. 02 Civ. 7492, (SAS) 2004 WL. 369273 (S.D.N.Y. Feb. 26, 2004) ............................7

Parke-Hayden, Inc. v. Loews Theatre Management Corp.,
    794 F. Supp. 525 (S.D.N.Y. 1992) ...............................................................................13

Peluso v. Tauscher Cronacher Professional Engineers, P.C.,
    270 A.D.2d 325, 704 N.Y.S.2d 289 (2d Dep't 2000)..................................................10

Polycast Tech. Corp. v. Uniroyal, Inc.,
    129 F.R.D. 621 (S.D.N.Y.), aff'd, 1990 WL 180566 (S.D.N.Y. Nov. 14,  1990) .............10

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994)...........................................................................................13

S&S Hotel Ventures Ltd. v. 777 S.H. Corp.,
    69 N.Y.2d 437, 515 N.Y.S.2d 735 (1987) ..............................................................11, 13

Sokolow, Dunaud, Mercedier & Carreras LLP v. Lacher,
    299 A.D.2d 64, 747 N.Y.S.2d 441 (1st Dep't 2002)....................................................13

**CASES**                                                                                    **PAGE(S)**

Stober v. Gaba & Stober, P.C.,
    259 A.D.2d 554, 686 N.Y.S.2d 440 (2d Dep't 1999).........................................14

The Hawthorne Group LLC v. RRE Ventures,
    7 A.D.3d 320, 776 N.Y.S.2d 273 (1st Dep't 2004) ............................................9

United States v. Wallert,
    733 F. Supp. 570 (E.D.N.Y. 1990) .................................................................14

Wensley and Partners, L.L.C. v. Polimeni,
    262 A.D.2d 311, 692 N.Y.S.2d 85 (2d Dep't 1999).........................................13

**STATUTES**

Fed. R. Civ. P. 56(c) ...............................................................................................1, 7

**OTHER AUTHORITIES**

Local Rule 1.5(b)(5), Local Rules of the District Courts for the
    Southern and Eastern Districts of New York....................................................10

New York Lawyers' Code of Professional Responsibility ...........................................10

Disciplinary Rule 5-102 .................................................................................... 11, 14-15

Disciplinary Rule 5-101 .................................................................................... 11-12, 15

Pursuant to Federal Rule of Civil Procedure 56(c), defendant Beazer Homes Corporation (Beazer), by its attorneys, Pryor Cashman LLP, respectfully submits this memorandum of law in support of (1) its motion for partial summary judgment dismissing plaintiff KG Cornwall, LLC's (KG) claims of conversion, misrepresentation and damages of $5 million and (2) its motion for disqualification of Burton I. Dorfman, Esq. (Dorfman) and the law firm of Dorfman Knoebel & Conway, LLP (the Firm) as KG's litigation counsel in this matter.

## PRELIMINARY STATEMENT

This is a plain-vanilla breach of contract case, which KG has attempted to amplify by asserting legally and factually baseless claims of conversion, "misrepresentation" and a demand for damages of $5,000,000.[1] The transparent purpose behind including such patently illusory claims is either to exact a lucrative settlement in excess of the contractually limited damages of $150,000 or to mesmerize a legally unsophisticated jury.

By agreement dated as of May 31, 2005 (the Agreement), subject to satisfaction of the Agreement's terms, KG agreed to sell and Beazer agreed to buy a tract of land in New Windsor, New York (the Property).  See Affidavit of Robert Stout, sworn to Dec. 27, 2007,  Ex. B. Ultimately, Beazer terminated the Agreement, and refused to purchase the Property, because KG was unable to satisfy its obligations with respect to title at its own Time of the Essence closing.[2]

Prior to Beazer's termination, in October 2006, the letter of credit being held in escrow as Beazer's contract deposit expired by its terms.  See Stout Aff. Ex. C.  KG never asked Beazer to extend, renew or replace the letter of credit, yet it now goes so far as to claim that Beazer's failure to do so constituted "conversion," and evidences some sort of "misrepresentation" by

---

[1] Complaint, dated March 15, 2007, attached as Ex. A to the accompanying Affidavit of Robert Stout, sworn to December 27, 2007 (Stout Aff.).

[2] In addition to its conversion and misrepresentation claims, KG asserts claims for breach of contract based on that termination.  Except with respect to damages, this motion does not address those claims.

Beazer. Notwithstanding an express provision in the Agreement limiting KG's remedies to $150,000 in the event of Beazer's default, KG demands damages in the amount of $5,000,000.

The conversion and misrepresentation claims have no legal or factual basis. The allegedly wrongful conduct underlying each of these claims, if proven, would constitute only a breach of contract, not an independent tort. Furthermore, there are no facts in the record, disputed or not, that could support these claims. The $5,000,000 in damages KG seeks for breach of contract and "misrepresentation," is expressly precluded by the Agreement's terms. In short, there is no question for trial on these claims and they should be dismissed on summary judgment.

Beazer also moves herein to disqualify counsel for KG, Burton Dorfman, Esq. (Dorfman) and the law firm of Dorfman Knoebel & Conway, L.L.P. (the Firm). Dorfman was the driving force behind the underlying transaction, participated in its every aspect and would undoubtedly be KG's main witness. It is likely that some of his testimony would prejudice KG, thus warranting disqualification of the entire Firm. Disqualification of Dorfman and the Firm is also warranted because Dorfman and the Firm may have business or financial interests that may affect the exercise of their professional judgment in representing KG.

## I.     THE UNDISPUTED FACTS RELEVANT TO SUMMARY JUDGMENT MOTION

### A.     The Transaction Underlying the Present Dispute

KG and Beazer entered into the Agreement of Sale, dated as of May 31, 2005, pursuant to which KG was to sell and Beazer was to buy a tract of land in New Windsor, New York (the Property). See accompanying Defendant's Statement Pursuant to Local Rule 56.1 of Undisputed Material Facts (56.1 Statement) ¶ 1; Stout Aff. Ex. B.

Pursuant to § 2 of the Agreement, Beazer made a contract deposit (the Deposit) of a Letter of Credit in the amount of $150,000 (the LOC, Stout Aff. Ex. C), which was to be held in escrow by "Burton I. Dorfman, Esq., Dorfman, Knoebel & Conway, L.L.P.," the contractually-designated Escrow Agent. See 56.1 Statement ¶¶ 2-3; Stout Aff. Ex. B §§ 2, 21. The Escrow Agent's duties under the Agreement included:

> (i) if Settlement is held, the Deposit shall be paid over to [KG] and credit to the Purchase Price.
>
> (ii) If the Settlement is not held by reason of [Beazer's] default, the Deposit shall be paid over to [KG] and be retained by [KG] as provided in Section 7 above.
>
> (iii) If Settlement is not held by reason of [KG's] default, the Deposit shall be paid over to Buyer.
>
> (iv) If Settlement is not held by reason of a failure of a condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to [Beazer], neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.
>
> (b) Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section 21.

56.1 Statement ¶ 4; Stout Aff. Ex. B § 21.

The Agreement expressly provided that the Deposit would be KG's "sole and exclusive remedy" in the event Beazer breached the Agreement. 56.1 Statement ¶ 5; Stout Aff. Ex. B § 7.

### 1. KG Was Required to Convey Clear and Unencumbered Title to the Property

Beazer had no obligation to close, and was entitled to terminate the Agreement without further liability, unless KG was able to convey the Property "free and clear of all liens, encumbrances, restrictions, and easements" with title that is "good and marketable and insurable without exception by such title company that is selected by Buyer." 56.1 Statement ¶ 6; Stout

Aff. Ex. B § 3 (a). The Agreement provided that, if KG was "unable to give good and marketable title such as will be insured by the Insurance Company [selected by Beazer], [Beazer] shall have the option (a) of taking such title as [KG] can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by [KG] with the Title Company whereupon [KG] shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if [KG's] contest is unsuccessful, *or (c) [Beazer] receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and v*oid." 56.1 Statement ¶ 7; Stout Aff. Ex. B § 3(b) (emphasis added).

Furthermore, § 15 of the Agreement expressly conditioned Beazer's obligation to close on "(i) All representations and warranties of [KG] herein being true and correct at the time of Settlement [and] (ii) [KG] having performed all of its covenants and obligations hereunder." 56.1 Statement ¶ 8; Stout Aff. Ex. B § 15. One such representation was that the Property was "not subject to any lease, option, right of first refusal or agreement of sale other than Seller's Contract [to purchase the Property]." 56.1 Statement ¶ 9; Stout Aff. Ex. B § 13.

## 2.    <u>Beazer Alerted KG to a Title Defect</u>

In or about September 2005, Beazer discovered a Memorandum of Contract of Sale relating to the Property on record in Orange County, New York. 56.1 Statement ¶ 10; Stout Aff. Ex. D, Memorandum of Contract and Contract, dated March 7, 2003, between Benedict Pond of New Windsor LLC and Sungold Holding Inc. (the Sungold Contract). Pursuant to the Sungold Contract, Benedict Pond, KG's purported predecessor in title, agreed to sell the Property to Sungold Holding, Inc. 56.1 Statement ¶ 11; Stout Aff. Ex. D.

4

Beazer immediately notified KG about the Sungold Contract. Stout Aff. ¶ 13. By letter dated September 7, 2005, Beazer notified KG that

> a title search was ordered and one of the items listed as an exception under said report was a Memorandum of Contract from 2003 between the present fee owner of the property and an entity by the name of Sungold Holding, Inc. A copy of the Memorandum of Contract is provided for your benefit. We further note that the contract vendee under that Memorandum appears to be a different entity than KG Cornwall, LLC. I would appreciate your enlightening me as to the implications of this Memorandum which is of record. It would appear that unless said Memorandum is discharged, there is a third party with whom neither my client nor your client is in privity who has rights in the property which may be superior to those of your client and thus superior to those of mine.

56.1 Statement ¶ 12; Letter from A. Frank, Esq. to B. Dorfman, Esq., dated Sept. 7, 2005, Stout Aff. ¶ 13 & Ex. E.

### 3.    <u>KG Never Explained or Discharged the Sungold Contract</u>

KG never responded to Beazer's September 7 Letter, provided the requested elucidation or discharged the Sungold Contract. 56.1 Statement ¶ 14; Stout Aff. ¶ 15. Yet, on February 9, 2007, KG notified Beazer that it was scheduling a Time of the Essence closing to take place on February 21, 2007 at 11:00 a.m. 56.1 Statement ¶15; Stout Aff. Ex. F, Letter from B. Dorfman, Esq. to P. Schneier & I. Israel, Esq., dated Feb. 9, 2007. Just prior to the scheduled closing, Beazer was advised by its title insurance company that the Sungold Contract was still on record in Orange County. 56.1 Statement ¶ 16; Stout Aff. ¶17. Accordingly, Beazer advised KG that it was in default and that, pursuant to its rights under the Agreement, it was terminating the agreement and demanding release of the Deposit. 56.1 Statement ¶ 17; Stout Aff. Ex. G, Letter from A. Frank, Esq. to B. Dorfman, Esq. dated Feb. 21, 2007.

### 4.    The LOC Expired While in Escrow

The LOC, it turned out, had expired by its terms on October 1, 2006.  56.1 Statement ¶ 18; Stout Aff. Ex C.  Contrary to the allegations in ¶ 30 of the Complaint, KG never asked Beazer to replace, renew or extend it.  See Rule 56.1 Statement ¶ 19; accompanying Declaration of Luisa K. Hagemeier, dated December 26, 2007 (Hagemeier Decl) ¶ 12.

### B.    KG's Claims in this Action

KG asserts two claims for breach of contract (First and Second Counts of the Complaint), one seeking damages of $150,000 and one, inexplicably, seeking damages of $5 million. Stout Aff. Ex. A ¶¶ 25-33.  KG contends that Beazer had no right to terminate the Agreement because, it says, the Sungold Contract was of no significance, having allegedly been assigned by Sungold to KG.  See Letter from B. Dorfman to A. Frank, dated Feb. 26, 2007, Stout Aff. Ex. H.  Though document discovery is complete, however, KG has produced no substantiation for such a claim.

In the Third and Fourth Counts of the Complaint, KG again asserts claims for breach of contract, styling them, however, as tort claims of conversion (of the Deposit) and "misrepresentation."  Stout Aff. Ex. A ¶¶ 34-42.  These claims are improper as a matter of law and, moreover, unsupported by any evidence whatsoever.

## II.    FACTS RELEVANT TO THE DISQUALIFICATION MOTION

Dorfman and the Firm represented KG at all times in the underlying transaction and were designated as Escrow Agent under the Agreement.  Stout Aff. ¶¶ 21-22; Hagemeier Decl. ¶ 8.  In his own words, Dorfman knows "exactly what happened, because [he] was right in the middle of all of this."  Hagemeier Decl. ¶ 5.

Since July 30, 2007, Beazer advised Mr. Dorfman a number of times, once in the presence of the Mediator, George Gluck, Esq., that it was going to seek disqualification of him

and the Firm as KG's litigation counsel. Hagemeier Decl. ¶¶ 16-22 Exs. A&B, Letters from L. Hagemeier to B. Dorfman dated July 30, 2007 & Nov. 26, 2007.    Dorfman repeatedly assured Beazer that, recognizing that he would be a witness in the case, motion practice was unnecessary because he would withdraw voluntarily.  Hagemeier Decl ¶¶ 18, 21.  In good faith reliance on Dorfman's assurances, Beazer refrained from making a formal motion, and now, due to an expedited discovery schedule ordered on December 7, 2007,  the case is now almost at the close of discovery.   Nonetheless, Dorfman has not withdrawn, forcing Beazer to make the disqualification motion at this time.

## ARGUMENT

### I.

### THE CLAIMS FOR CONVERSION, MISREPRESENTATION AND DAMAGES OF FIVE MILLION DOLLARS SHOULD BE DISMISSED

**A.**    **Summary Judgment Standard**

Summary judgment should be granted if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, its opponent "must show more than a 'metaphysical doubt' as to material facts." One Beacon Ins. v. Terra Firma Constr. Mgmt. & General Contracting, LLC, No. 02 Civ. 7492, (SAS) 2004 WL 369273, at *2-3  (S.D.N.Y. Feb. 26, 2004) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  In attempting to do so, the opponent may not rely on conclusory allegations or unsubstantiated speculation.  Clarett v. National Football League, 306 F. Supp. 2d 379, 389 (S.D.N.Y. 2004).

**B.**   **There is No Evidentiary or Legal Basis for KG's Conversion Claim**

KG claims in the Third Count of the Complaint that Beazer converted $150,000 "by the removal of the letter of credit from escrow." Stout Aff. Ex. A, Complaint, ¶ 35. This claim is legally improper and, moreover, unsupported by any evidence in the record.

Under New York law, "a conversion takes place when someone, intentionally and without authority, assumes or exercises control *50 over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43 (2006). To establish the tort of conversion, the plaintiff must prove (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. Id.

In the first instance, the conversion claim is legally improper, because it is merely a claim for breach of contract labeled as a tort. Beazer's obligations with respect to the Deposit were contractual in nature, and thus any claims based on its performance of those obligations are contractual in nature. See Automobile Coverage, Inc. v. American Int'l Group, 42 A.D.3d 405, 407, 839 N.Y.S.2d 916, 917 (1st Dep't 2007) (wrongfully directing escrow agent to withhold deposit from plaintiff was breach of contractual obligation to return money, not conversion); D'Ambrosio v. Engel, 292 A.D.2d 564, 564-65, 741 N.Y.S.2d 42, 44 (2d Dep't 2002) (same). Absent a legal duty independent of the contract itself, it is well established that a simple breach of contract does not give rise to an action in tort. See Automobile Coverage, Inc., 42 A.D.3d at 407, 839 N.Y.S.2d at 917. No such extra-contractual duty exists in this case, and thus the conversion claim is not legally viable.

Moreover, even if the claim were legally viable, which it is not, neither element of conversion could be established on the record in this case. First, KG did not have a possessory

right or interest in the Deposit. The Deposit was held in escrow and belonged to neither party

unless and until stated conditions in the Agreement occurred. Furthermore, there is no dispute

that the LOC expired by its terms, which were patent on its face, and that KG never asked KG

to extend, renew or replace it. Rule 56.1 Statement ¶ 19; Stout Aff. ¶ 19 & Ex. C; Hagemeier

Decl. ¶ 12. There is no basis upon which KG could argue that Beazer took "dominion" over or

"interfered" with the LOC.

**C.    There is No Evidentiary or Legal Basis for KG's Claim of "Misrepresentation"**

KG makes the vague and undefined claim in the Fourth Count of the Complaint that

Beazer "knowingly misrepresented its intention to maintain the letter of credit." Stout Aff. Ex.

A ¶ 39.

Like the conversion claim, this claim is merely a repackaged version of a claim that

Beazer breached its obligations under the Agreement, if any, to maintain the Deposit. The fact

that KG has injected the element of "intent" into the equation does not transform the claim into

a tort. It is well-settled that a misrepresentation of an intention to perform a contractual

obligation is an insufficient basis for a fraud claim. See, e.g., Mendelovitz v. Cohen, 37 A.D.3d

670, 830 N.Y.S.2d 577 (2d Dep't 2007); The Hawthorne Group LLC v. RRE Ventures, 7

A.D.3d 320, 776 N.Y.S.2d 273 (1st Dep't 2004); McGovern v. Best Bldg. & Remodeling, 245

A.D.2d 925, 927, 666 N.Y.S.2d 854 (3d Dep't 1997); Moon v. Clear Channel Communications,

Inc., 307 A.D.2d 628, 631, 763 N.Y.S.2d 157, 161 (3d Dep't 2003). Beazer's obligations with

respect to the Deposit were contractual, and thus any allegation that it failed or intended not to

perform those obligations can form the basis only of a claim for breach of contract.

Accordingly, KG's "misrepresentation" claim should be dismissed.

**D.**    **The Agreement's Express Limitation of Remedies Precludes Damages of $5 Million**

KG's demand for $5 million in damages is precluded by the Agreement's express limitation of KG's remedies to the Deposit. The absolute maximum damages KG can recover if it prevails is $150,000. Stout Aff. Ex. B, Agreement § 7.

Contractual provisions limiting remedies are wholly proper, and it is well-settled that "a contractual provision which limits damages will be enforced unless a special relationship exists between the parties, or a statute or public policy imposes liability despite the restrictions set forth in the contract." Duane Reade v. 405 Lexington, L.L.C., 22 A.D.3d 108, 111, 800 N.Y.S.2d 664, 666 (1st Dep't 2005). There is no "special relationship," statute or public policy that would warrant overriding the parties' express agreement to limit damages here. Even where a breach was deliberate, courts have repeatedly rejected the argument that such conduct vitiates a contractual provision limiting damages. See e.g., Briefstein v. Rotondo Constr. Co., 8 A.D.2d 349, 351, 187 N.Y.S.2d 866 (1st Dep't 1959) ("An intention not to perform does not bring on heavier damages than actual nonperformance.); Peluso v. Tauscher Cronacher Professional Engineers, P.C., 270 A.D.2d 325, 704 N.Y.S.2d 289 (2d Dep't 2000) (absent special relationship, statute or overriding public policy, contractual limitation of damages enforced even if defendant was negligent); Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc., 192 A.D.2d 83, 88, 600 N.Y.S.2d 212, 214 (1st Dep't 1993) (limitation of damages clause applied even if breach of contract was deliberate).

## II.

## DORFMAN AND THE FIRM SHOULD BE DISQUALIFIED

### A.  Standard for Determining Disqualification Motion

In determining motions to disqualify counsel, courts within the Second Circuit look to the

New York Lawyers' Code of Professional Responsibility (Code).  See Local Rule 1.5(b)(5),

Local Rules of the Southern and Eastern Districts of New York; Polycast Tech. Corp. v.

Uniroyal, Inc., 129 F.R.D. 621, 625 (S.D.N.Y.), aff'd, 1990 WL 180566 (S.D.N.Y. Nov. 14,

1990); S&S Hotel Ventures Ltd. v. 777 S.H. Corp., 69 N.Y.2d 437, 443, 515 N.Y.S.2d 735, 738

(1987).  "Whether to disqualify counsel is a matter subject to the trial court's sound discretion."

Blue Cross & Blue Shield v. Philip Morris, Inc., 53 F. Supp. 2d 338, 342 (E.D.N.Y. 1999)

(citations omitted).  Any doubts should be resolved in favor of disqualification.  See Felix v.

Balkin, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999).

Pursuant to the conflict-of-interest rule of set forth in DR 5-101(A) and the "advocate-

witness rule" set forth in 5-102 (A) and (B), both Dorfman and the Firm should be disqualified

from representing KG in this action.

### B.  Dorfman and the Firm Should be Disqualified Under DR 5-102

In his own words, Dorfman knows "exactly what happened, because [he] was right in the

middle of all of this."  Hagemeier Decl. ¶ 5.  Because of Dorman's integral role in and singular

familiarity with the facts and documentation relevant to the underlying transaction, Dorfman

"ought" to be called as a witness and thus should be disqualified under DR 5-102(A).

The "advocate-witness" rule codified in DR 5-102(A), "recogniz[es] that the roles of an

advocate and of a witness are inconsistent, and that it is …unseemly for a lawyer in a trial also to

argue his own credibility as a witness".  S&S Hotel Ventures, 69 N.Y.2d at 444, 515 N.Y.S.2d at

739. One purpose of the rule is to avoid the "unseemly situation where an advocate must argue his own credibility before the trier of fact." North Shore Neurosurgical Group, P.C. v. Leivy, 72 A.D.2d 598, 599, 421 N.Y.S.2d 100, 102 (2d Dep't 1979) (citation omitted); accord Fulfree v. Manchester, 945 F. Supp. 768, 770 (S.D.N.Y. 1996) ("from a public image perspective, the roles of an advocate and a witness are inconsistent because the public might think that the lawyer is distorting the truth for the sake of the client") (citation omitted).

DR 5-102(A) provides that:

> A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before the tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client . . .

It is more than "obvious" that Dorfman "ought" to be called to testify as a fact witness on behalf of KG.  To prevail, KG must prove that it was able to convey title commensurate with the requirements of the Agreement.  Dorfman is the singlemost knowledgeable witness in support of the claim that KG complied with all of its contractual obligations.  Dorfman represented KG throughout the entire underlying transaction, as well as in its "purchase" of the Property from Benedict Pond.  In addition, Dorfman appears to be peculiarly knowledgeable about the Sungold Contract, of the alleged relationship between KG and Sungold and of the underpinnings of KG's claim that it held title satisfying the requirements of the Agreement on the date it set for a Time of the Essence closing for Beazer to purchase the Property.  See Stout Aff. Ex.G, Letter from B. Dorfman to A. Frank, dated Feb. 26, 2007.  In addition, Dorfman acted as Escrow Agent under the Agreement.

Courts overwhelmingly disqualify attorneys with even less than Dorfman's level of involvement.  See Gleason v. Zocco, 941 F. Supp. 32, 35-36 (S.D.N.Y. 1996) (fact that attorney was necessary witness and had "extensive personal involvement in every aspect of the

underlying controversies that led to this lawsuit" required disqualification); Hakimian

Management Corp. v. Richard C. Fiore, Inc., 16 Misc. 3d 1108(A), at *9, 2007 WL 2003759

(N.Y. Sup. Ct. N.Y. Co. July 9, 2007) (plaintiff's counsel "ought" to be called as witness where

"he is the most knowledgeable individual concerning the [underlying transaction] despite the fact

that other persons . . . are also knowledgeable about this matter"); Multi-Juice S.A. v. Snapple

Beverage Corp., No. 02 Civ. 4635 (RPP), 2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003)

(disqualification appropriate where attorney was plaintiff's sole representative at numerous

negotiations and conversations regarding disputed agreement); Wensley and Partners, L.L.C. v.

Polimeni, 262 A.D.2d 311, 311, 692 N.Y.S.2d 85, 86 (2d Dep't 1999) (attorney with material

knowledge about underlying negotiations disqualified); Fairview at Old Westfield, L.P. v.

European Am. Bank, 186 A.D.2d 238, 239, 588 N.Y.S.2d 339, 339 (2d Dep't 1992) (same);

Hoerger v. Board of Educ. of the Great Neck Union Free Sch. Dist., 129 A.D. 2d 659, 514

N.Y.S.2d 641(2d Dep't 1987) (attorney who negotiated and executed agreements at issue ought

to be called as witness where he negotiated and executed agreements at issue); see also Purgess

v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (attorney "ought" to be called to testify if testimony

is "likely to be necessary" to his client's case). Based on this authority, Dorfman, too, should be

disqualified from representing KG in this action.

     The Firm should be disqualified from representing KG in this litigation as well.  DR 5-

102(B) provides that:

> Neither a lawyer nor the lawyer's firm shall accept employment in
> contemplated or pending litigation if the lawyer knows or it is
> obvious that the lawyer or another lawyer in the lawyer's firm may
> be called as a witness on a significant issue other than on behalf of
> the client, and it is apparent that the testimony would or might be
> prejudicial to the client.

In deciding whether an entire firm should be disqualified, a court should examine "the significance of the matters, weight of the testimony, and availability of other evidence". Sokolow, Dunaud, Mercedier & Carreras LLP v. Lacher, 299 A.D.2d 64, 75, 747 N.Y.S.2d 441, 449 (1st Dep't 2002), citing S&S Hotel Ventures, 69 N.Y.2d at 441, 446, 515 N.Y.S.2d at 739-40. Testimony is "prejudicial" if it is "sufficiently adverse to the factual assertions. . . offered on behalf of the client, such that the bar or client might have an interest in the lawyer's independence in discrediting that testimony." Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp., 794 F. Supp. 525, 527 (S.D.N.Y. 1992).

Here, Dorfman will testify about the central issues in the case and, as a direct participant in the underlying events, his testimony will undoubtedly be given great weight. Based on the available evidence, it is doubtful that there is any other witness with as knowledge as comprehensive or understanding as deep as Dorfman..

Dorfman's testimony is also liable to be "prejudicial," as that term is understood for purposes of applying DR 5-102(B). Under this DR, "prejudicial" testimony includes not only testimony that is directly "adverse," but also testimony that is seemingly favorable but that is belied by other evidence in the record, such that the attorney's credibility itself becomes an issue in the case, see United States v. Wallert, 733 F. Supp. 570, 572-73 (E.D.N.Y. 1990); Fulfree v. Manchester, 945 F. Supp. 768, 772 (S.D.N.Y. 1996) ("Clearly, Mr. Fulfree's success or lack thereof as a witness may affect his success as lawyer and vice versa."); Stober v. Gaba & Stober, P.C., 259 A.D.2d 554, 555, 686 N.Y.S.2d 440, 440-41 (2d Dep't 1999) (finding potential credibility problem where attorney previously expressed one position in underlying matter, and averred no knowledge of same matter in pending litigation).

The "prejudicial" standard is also satisfied if a negative inference might be drawn from the failure of the attorney to testify.  See Hempstead Bank v. Reliance Mortgage Corp., 81 A.D.2d 906, 459 N.Y.S.2d 202 (2d Dep't 1981), or if the attorney's testimony may give the impression that he is colluding with his client to give helpful testimony, notwithstanding other evidence that calls the attorney's credibility into question.  See, e.g., Wallert, 733 F. Supp. at 573 (finding that attorney's testimony was likely to be prejudicial because either attorney would testify in "sufficiently adverse" manner to client's interests, or attorney would testify in favor of client but opposing party could "establish[] the inference that [the attorney] was not credible and was colluding with [his client, thereby meaning that the attorney's] effectiveness as advocate would be severely tarnished and the defense markedly diminished.").

There are many aspects in which Dorfman's testimony is likely to be prejudicial to KG under this standard.  There are some facts to which Dorfman must inevitably testify that will not be favorable to KG's case.  For instance, Dorfman will be asked whether he or anyone else took steps to discharge the record of the Sungold Contract, to which there is no answer that can help KG.  Dorfman will be asked a line of questions concerning his failure to respond to Beazer's September 7, 2005 inquiry, and his testimony in response has great potential to prejudice KG.  Dorfman will be questioned regarding the alleged assignment of the Sungold Contract and, to the extent that process was defective, his testimony will prejudice KG.  Dorfman's testimony that he failed to request that Beazer extend, renew or replace the LOC will be prejudicial to KG as well.  At the very least, his integral role in the transaction, and unique knowledge of the facts, will inject his credibility as an issue in the case.   Accordingly, disqualification of the Firm is warranted under DR 5-102(B).

C.    **Dorfman and the Firm Should Be Disqualified Under DR 5-101**

Disciplinary Rule 5-101(A) provides that:

> A lawyer shall not accept or continue employment if the exercise
> of professional judgment on behalf of the client will be or
> reasonably may be affected by the lawyer's own financial,
> business, property, or personal interests, unless a disinterested
> lawyer would believe that the representation of the client will not
> be adversely affected thereby and the client consents to the
> representation after full disclosure of the implications of the
> lawyer's interest.

Dorfman's role as Escrow Agent gives him and the Firm, in which he is a partner, a "financial,

business, property, or personal interest[]" that will or may affect the exercise of professional

judgment on behalf of KG.  Depending on the stage of the case, the interests of the Escrow

Agent may not be wholly aligned with KG's.

## CONCLUSION

For the foregoing reasons, defendant Beazer respectfully requests that the Court grant (i)

its motion for summary judgment dismissing the Second, Third and Fourth Counts of the

Complaint and the demand for $5 million in damages and (ii) its motion to disqualify Dorfman

and the Firm from representing KG in this action.

Dated:  New York, New York
        December 28, 2007

Respectfully submitted,

PRYOR CASHMAN LLP

By:
Eric D. Sherman
Luisa K. Hagemeier
lhagemeier@pryorcashman.com
410 Park Avenue
New York, New York 10022
(212) 326-0862

16