UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KG CORNWALL, LLC,                    :   Index No. 07 Civ. 2881
                Plaintiff,       :
                                 :   **STATEMENT PURSUANT**
                                 :   **TO LOCAL RULE 56.1**
       -against-           :
                                 :
BEAZER HOMES CORP.,                  :
                Defendant.       :
-------------------------------------------------------------X

## DEFENDANT'S STATEMENT PURSUANT TO LOCAL RULE 56.1 OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, defendant Beazer Homes Corporation (Beazer) respectfully submits this statement of the material facts as to which there is no genuine issue to be tried in support of its motion for summary partial judgment dismissing the Second, Third and Fourth Counts of the Complaint and the demand for damages of $5 million by plaintiff KG Cornwall, LLC (KG). The Complaint is attached as Ex. A to the accompanying Affidavit of Robert Stout, sworn to December 26, 2007 (Stout Aff.)

1. KG and Beazer entered into an Agreement of Sale, dated as of May 31, 2005 (Agreement), pursuant to which KG agreed to sell and Beazer agreed to buy a tract of land in New Windsor, New York (the Property). See Stout Aff. Ex. B.

2. Pursuant to § 2 of the Agreement, Beazer made a contract deposit (the Deposit) in the form of a letter of credit in the amount of $150,000 (the LOC). See Stout Aff. Ex. B, Agreement, at § 2 and Ex. C (LOC).

6. Beazer was not obligated to close on the purchase of the Property, and was entitled to terminate the Agreement without any further liability, unless KG was able to convey the Property "free and clear of all liens, encumbrances, restrictions, and easements" with title that is "good and marketable and insurable without exception by such title company that is selected by Buyer." Id. § 3(a).

7. The Agreement provided that, if KG is "unable to give good and marketable title such as will be insured by the Insurance Company [selected by Beazer], [Beazer] shall have the option (a) of taking such title as [KG] can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by [KG] with the Title Company whereupon [KG] shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if [KG's] contest is unsuccessful, *or (c) [Beazer] receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void.*" Id. § 3(b) (emphasis added).

8. Section 15 of the Agreement sets forth "Conditions to Buyer's Obligations." One of the conditions upon which Beazer's obligations is "expressly conditioned," is "(a)(i) All representations and warranties of [KG] herein being true and correct at the time of Settlement [and] (ii) [KG] having performed all of its covenants and obligations hereunder." Id. § 15(a)(i).

9. One of KG's representations was that the Property was "not subject to any lease, option, right of first refusal or agreement of sale other than Seller's Contract [to purchase the Property]." Id. § 13.

10. In or about September 2005, Beazer discovered a Memorandum of Contract of Sale relating to the Property on record in Orange County. A copy of the Memorandum of Contract and the underlying Contract is Ex. D to the Stout Aff. and is referred to herein as the "Sungold Contract."

11. Pursuant to the Sungold Contract, dated March 7, 2003, Benedict Pond of New Windsor, LLC, the purported seller of the Property to KG, agreed to sell the Property to Sungold Holding, Inc. See Stout Aff. Ex. D.

12. By letter dated September 7, 2005, Beazer alerted KG to this cloud on title. Letter from A. Frank, Esq. to B. Dorfman, Esq., dated Sept. 7, 2005, attached as Ex. E to the Stout Aff.

13. Specifically, Beazer informed KG that:

> a title search was ordered and one of the items listed as an exception under said report was a Memorandum of Contract from 2003 between the present fee owner of the property and an entity by the name of Sungold Holding, Inc. A copy of the Memorandum of Contract is provided for your benefit. We further note that the contract vendee under that Memorandum appears to be a different entity than KG Cornwall, LLC. I would appreciate your enlightening me as to the implications of this Memorandum which is of record. It would appear that unless said Memorandum is discharged, there is a third party with whom neither my client nor your client is in privity who has rights in the property which may be superior to those of your client and thus superior to those of mine.

Id.

16. KG never responded to Beazer's inquiry or provided any elucidation regarding the Sungold Contract. Stout Aff. ¶ 15.

17. On February 9, 2007, KG notified Beazer that it was scheduling a Time of the Essence closing to take place on February 21, 2007 at 11:00 a.m. See Letter

from B. Dorfman, Esq. to P. Schneier & I. Israel, Esq., dated Feb. 9, 2007, Stout Aff. Ex. F.

18.     Just prior to the scheduled closing, however, Beazer's title company discovered that the Sungold Contract remained on record in Orange County. Thus, not only had KG not explained this cloud on title, though given more than ample time to do so, but it had not discharged it either.   Stout Aff. ¶ 17.

19.     Accordingly, pursuant to its rights under the Agreement, Beazer advised KG that KG was in default and that Beazer was terminating the agreement and demanding release of the Deposit. See Letter from A. Frank, Esq. to B. Dorfman, Esq. dated Feb. 21, 2007, Stout Aff. Ex. G.

20.     The LOC, it turned out, had expired by its terms on October 1, 2006. See Stout Aff. Ex. C.

21.     Contrary to the allegations in ¶ 30 of the Complaint, KG never asked Beazer to replace, renew or extend it.   Stout Aff. ¶ 20.

22.     By letter dated February 26, 2007, KG's counsel contended that Beazer had no right to terminate the Agreement, claiming that the Sungold Contract had been assigned to KG and thus did not constitute a cloud on title. See Letter from B. Dorfman to A. Frank, dated Feb. 26, 2007, Stout Aff. Ex. H.

23.     However, at no time has Beazer seen such an assignment or any other evidence to substantiate that allegation, despite the fact that document discovery is closed.  Stout Aff. ¶ 21.

24.  Beazer never made any misrepresentations to KG or wrongfully took any property or funds rightfully belonging to KG. Beazer's actions with respect to the Agreement and the Property were wholly proper.   Stout Aff. ¶ 24.

25.  KG never owned or had a possessory right to the LOC.

Dated:  New York, New York
        December 27, 2007

                                        PRYOR CASHMAN LLP

                                        By: _____
                                            Eric D. Sherman
                                            Luisa K. Hagemeier
                                            lhagemeier@pryorcashman.com
                                        410 Park Avenue
                                        New York, New York  10022
                                        (212) 421-4100

                                        *Attorneys for Defendant Beazer Homes Corporation*