UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

KG CORNWALL, LLC.                              Index No. 07 Civ. 2881 (CLB)

                    Plaintiff,                 **NOTICE OF CROSS-MOTION FOR**

                                           **<u>SUMMARY JUDGMENT</u>**

        -against-

BEAZER HOMES CORP.

                 Defendant.

--------------------------------------------------------x

       PLEASE TAKE NOTICE, that upon the Complaint and the Answer in this action;

Plaintiff's Statement Pursuant to Local Rule 56.1 of Undisputed Material Facts in Support of

Motion for Partial Summary Judgment, dated  January 9, 2008, and Exhibits thereto; the

Affirmation of Abraham Goldberger, affirmed on January 9, 2008, and Exhibits thereto; the

Affidavit of David Ellner, duly sworn to on January 9, 2008 and Exhibits thereto; the Declaration

of Kevin T. Conway, duly sworn to on January 9, 2008; and Memorandum of Law in support of

Plaintiff's Motion for Partial Summary Judgment; and all of the proceedings heretofore had in

this action, the undersigned will move this Court, in Room 218 of the United States District

Courthouse 300 Quarropas Street, White Plains, New York 10601, on the 25th day of January,

2007, at 10:00 a.m., or as soon thereafter as counsel be heard, for  an Order pursuant to Fed. R.

Civ. P. 56(b) granting a Judgment in favor of Plaintiff  KG CORNWALL, LLC. and against

Defendant BEAZER HOMES CORP. (a) on the First Count of Plaintiff's Complaint in the sum

of $150,000.00 plus interest and costs and (b) granting a judgment against Defendant BEAZER

HOMES CORP. on the second, third and fourth counts of the Complaint and scheduling a hearing on the issue of damages.

PLEASE TAKE FURTHER NOTICE, that pursuant to Local Civil Rule Rule 6.1(b), answering papers, if any, shall be served within ten business days after service of these moving papers, and reply papers, if any, shall be served within five business days after service of the answering papers.

Dated: Nyack, New York
　　　　January 9, 2008

　　　　　　　　　　　　　　　　　　DORFMAN, KNOEBEL, CONWAY,
　　　　　　　　　　　　　　　　　　FURY & GRIFFIN, LLP.

　　　　　　　　　　　　　　　　　　By_____
　　　　　　　　　　　　　　　　　　　　KEVIN CONWAY ( KG3347 )
　　　　　　　　　　　　　　　　　　　　k.conway@dkcllp.com
　　　　　　　　　　　　　　　　　　51 North Broadway
　　　　　　　　　　　　　　　　　　Nyack, New York 10960
　　　　　　　　　　　　　　　　　　(845)353-3500
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

TO:

ERIC D. SHERMAN, ESQ.
LUISA K. HAGEMEIER

PRYOR CASHMAN LLP

410 Park Avenue

New York, New York 10022

(212) 421-4100

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

KG CORNWALL, LLC.                                        Index No. 07 Civ. 2881 (CLB)

               Plaintiff,                **AFFIRMATION**

    -against-                                    **OF ABRAHAM GOLDBERGER**

BEAZER HOMES CORP.

              Defendant.

--------------------------------------------------------x

STATE OF NEW YORK    )

                 ) ss.:

COUNTY OF ROCKLAND)

      ABRAHAM GOLDBERGER, does hereby affirm the following under the penalties of

perjury:

1. I am, and was at all relevant times during the events at issue in this litigation, the
   manager and the sole member of KG CORNWALL, LLC. ("KG") and makes this
   affirmation in support of KG's Cross-Motion for summary judgment on KG's
   Complaint (Exhibit "A") and opposition to the relief requested in Defendant BEAZER
   HOMES CORP.'s ("Beazer") motion for partial summary judgment of the second, third
   and fourth count contained in KG's Complaint (Exhibit "A") and for disqualification of
   KG's counsel.

2. I am fully familiar with the facts and circumstances set forth herein, except where I
   indicate a statement is made upon information and belief. Where a statement is made on

information and belief, it is based upon my personal knowledge of the books and records of KG.

## PRELIMINARY STATEMENT

3.  It is respectfully requested that this Court  based upon my affirmation, the affidavit of Mr. Ellner, the affidavit of Kevin Conway, the Memorandum of Law it Grant KG summary judgment on the First Count in KG's complaint against Beazer in the sum of $150,000.00 and grant KG a liability Judgment on the Second, Third and Fourth Counts of KG's Complaint and schedule a hearing for damages and that this Court deny Beazer's request for Summary Judgment on the second, third and fourth counts of KG's complaint. It is conceded that on October 1, 2006 Beazer allowed the Deposit consisting of a $150,000.00 to lapse without excuse.  More importantly, Beazer induced KG to continue with the Contract without advising Beazer that they failed to extend the letter of credit, and moments after Beazer failed to attend the closing,  Beazer created a non-existent title issue.

4.  In addition, it is respectfully requested that this Court deny Beazer's Motion for Disqualification of KG's counsel.  That as I have set forth herein,  Beazer has evidently sought summary judgment and KG has sought summary judgment due to the fact I am fully familiar with the facts so as not to need my counsel's affidavit, without the necessity of an affidavit from KG's Counsel. More importantly as recent as December 20, 2007, Beazer has submitted its list of witnesses that does not include Mr. Dorfman. Clearly, this application is simply to delay this proceeding.

2

**IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON KG'S COMPLAING AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY <u>JUDGMENT ON SECOND, THIRD AND FOURTH COUNTS</u>**

## SUNGOLD CONTRACT

5.  On March 7, 2003 Benedict Pond of New Windsor, LLC ("Benedict Pond") entered into a contract of sale ("Benedict Pond Agreement") to sell certain real property to Sungold Holding, Inc. ("Sungold") located at Dean Hill Road and Mt. Airy Road, in the Town of New Windsor, County of Orange, State of New York also known as Town of New Windsor Tax Map Section 65 Block 1 Lots 51.11 and 56.1 (formerly known as Town of New Windsor Tax Map Section 65 Block I Lots 93 and 94) ("Property") (Exhibit "C").

6.  The Benedict Pond Agreement was executed by Benedict Pond's Manager Angelo Danza ("Danza") and Sungold's President, my Brother-in-Law Chaim Dresner ("Dresner").

7.  On April 15, 2003 Danza on behalf of Benedict Pond and Dresner on behalf of Sungold executed a memorandum of contract (Exhibit "D") ("memorandum").

## ASSIGNMENT OF BENEDICT POND AGREEMENT

8.  On July 10, 2003 Dresner the sole shareholder of Sungold Holding Corp., assigned "all rights and interest" in the Benedict Pond Agreement to your affirmant for valuable consideration ("Sungold assignment")(Exhibit " E"). The Sungold assignment provided in part that "Chaim agrees to cooperate with any necessary legal paper work that Abe may need to facilitate the sale to a third party" (Exhibit " E").

3

9.  That in accordance with paragraph "22" of the Benedict Pond Agreement, Benedict Pond by Danza, consented to the Assignment of the Contract to KG, that is solely owned by your affirmant (Exhibit "F").

## AGREEMENT BETWEEN KG AND BEAZER

10. On May 31, 2005, KG entered into an Agreement of Sale ("Agreement") to sell to Beazer,  real property located in the Town of New Windsor, County of Orange, State of New York known as Town of New Windsor Tax Map Section 65 Block 1 Lots 51.11 and 56.1 ("Property") (Exhibit "G"). KG represented in Paragraph "13(a)" of the Agreement that it was the "contract vendee to purchase the Property in fee simple …" (Exhibit "G").

11. In paragraph "2" of the Agreement Beazer agreed to pay Seller a purchase price of $10,320,000.00, as follows;

     a.   Beazer was required to deliver to Escrow Agent a $150,000 letter of credit to be held in escrow until the closing ( "Deposit"). Paragraph "21" entitled "Escrow of Deposit" directed the Deposit to be paid to KG at the closing or if the closing did not occur as a result of Beazer's Default (Exhibit "G")

     b.   the sum of $10,170,000.00 to be paid by Beazer to KG at the time of closing (Exhibit "G").

12. Paragraph "7" of the Agreement entitled "Buyer's Default" provided "Should Buyer violate or fail to fulfill and perform any of the terms or conditions of this Agreement after thirty (30) days written notice from Seller (or ten (10) days written notice in the event of

a monetary default), then the Deposit shall be retained by Seller as Seller's sole and exclusive remedy for such breach as liquidated damages" (Exhibit "G").

**BEAZER WAIVED DUE DILIGENCE**

13. Paragraph "12" of the Agreement provided for a 90 day due diligence period and provided "Should buyer to desire to proceed with this Agreement, Buyer will notify Seller in writing prior to the expiration of the Due Diligence Period..." (Exhibit "G").

14. That the original due diligence period was extended until September 19, 2005 (Exhibit "H").

15. That in connection with due diligence, Beazer engaged the services of Alan J. Frank, Jr. for the sole purpose of due diligence review who on September 7, 2005, wrote to KG's counsel requesting information "in connection with our clients' due diligence investigation of the property" concerning the Memorandum and requested KG's counsel to contact him "...so that I will be able to complete my legal due diligence review of the premises prior to the expiration of the due diligence period on September 19, 2005..." (Exhibit "I").

16. That subsequent to receipt of this letter from Beazer's due diligence counsel, Beazer's representatives including Robert Stout were advised by John Karger ("Karger") KG's Manager, my attorney and myself that the Benedict Pond Agreement was assigned to me and that Benedict Pond consented to the Assignment to my company and more importantly that I would execute a termination of the Memorandum at the time the

5

Property was conveyed by Benedict to KG. That this termination agreement was in fact executed on the date of the KG Closing (Exhibit "J").

17. That due diligence was thereafter extended by KG at the request of Beazer from September 19, 2005 until September 26, 2005 .

18. That on September 26, 2005, Robert Stout of Beazer Homes wrote to Mr. Karger, my attorney and Mr. Danza the principal of Benedict Pond;

> Beazer has now completed due diligence on the Benedict Pond property. Beazer Homes intends to go forward with our Agreement of Sale and close on the property as soon as all approvals are in place as outlined in the Agreement of Sale dated May 31, 2005.(Exhibit "K")

Clearly, Beazer's legal consultant completed his due diligence and based upon his investigation and the conversations between KG and Beazer due diligence and the issue regarding the Memorandum were waived.

## BEAZER'S FAILURE TO EXTEND LETTER OF CREDIT

19. That immediately after Beazer waived due diligence (Exhibit "K") Beazer delivered to KG's attorney as escrow agent the Deposit (¶2, Exhibit "A") an irrevocable standby letter of credit dated September 30, 2005 issued by JP Morgan Chase in the sum of $150,000, listing the beneficiary as KG (Exhibit "L").

20. The Letter of Credit provided an expiration date of October 1, 2006 and it was Beazer's obligation to continue extending the letter of credit until the closing or Beazer's default at which time the Deposit was required to be released to KG (¶¶2 and 21, Exhibit "A"; Exhibit "L").

21. That Stout has conceded that the Letter of Credit expired by its terms on October 1, 2006 (¶19, Stout Affidavit) , and neither Beazer nor Stout has set forth an excuse and/or a reason why Beazer failed to extend the Letter of Credit as required (¶¶2 and 21, Exhibit "A").

22. In fact your affirmant and counsel were shocked to learn for the first time that Beazer failed to extend the Letter of Credit on October 1, 2006 when Mr. Frank in his February 21, 2007 letter that was delivered after Beazer failed to attend the closing on same date, advised KG's counsel;

> Notwithstanding that the down payment in the form of a $150,000 Letter of Credit being held by your attorney, Burton I. Dorfman, Esquire, as Escrow Agent under the Agreement, has expired by its terms and is of no further force and/or effect, demand is nonetheless hereby made that you immediately authorize the Escrow Agent to return such Letter of Credit to Buyer at the address for Buyer provided in the Agreement. (Exhibit "M")

23. Clearly, not only did Stout fail to provide an excuse why Beazer failed to extend the Letter of Credit. Mr. Frank conceded that the Letter of Credit was required to be held in escrow "under the Agreement" and that Beazer had allowed the Letter of Credit to expire and was a nullity.

24. That Stout's allegation that "KG never asked Beazer to replace, renew or extend it…" is inaccurate. On February 26, 2007 KG's attorney after learning that BEAZER failed to extend the Letter of Credit as required under the Contract responded to Mr. Frank;

> …your client has no authority to request the return of the Letter of Credit. Your client does have the obligation of providing a Letter of Credit and did so and it was believed that the Letter of Credit had been extended. However, it appears your client committed an unlawful act of removing

7

the down payment from my escrow.  Therefore, unless the sum of
$150,000 is received by my office by wire transfer or bank check by
March 2, 2007, my client will bring appropriate action in the proper
forums… (Exhibit "N")

## KG PURCHASES PROPERTY

25. In reliance on Beazer's waiver of due diligence and the deposit of the Letter of Credit in

Escrow on  May 1, 2006, KG purchased the subject property from Bendict Pond for the

sum of $3,000,000 in accordance with the Benedict Pond Agreement (Exhibits "O" and

"C").

26.  That as Karger and myself had advised Stout,  on May 1, 2006, the Memorandum of

Agreement was terminated by instrument entitled "TERMINATION OF

MEMORANDUM OF CONTRACT" (Exhibit "J").

27. KG was issued a title policy in the amount of the purchase price of the property from

Fiduciary Abstract as agent for Stewart Title Insurance Company (Exhibit  "P").

## BEAZER REFUSES TO CLOSE

28. Paragraph "4" of the Agreement entitled "Settlement" provided in part as follows;

Settlement ("Settlement") shall be made at the offices of the Title
Company or a mutually agreeable location forty five (45) days following
final Site Plan approval for between one hundred ten (110) and one
hundred twenty (120) age restricted active adult town house units …and
the satisfaction of all of the conditions contained set forth in Section 15,
upon at least five (5) business days notice from Buyer to Seller (Exhibit
"G").

8

29. On August 11, 2006 Site Plan Approval was granted by the Town of New Windsor Planning Board for 120 age restricted units.

30. That shortly after Site Plan Approval was obtained Mr. Stout contacted by Karger and myself and advised us as a result of the downturn in the real estate market, Beazer was reevaluating all projects and that Beazer was not going to close unless KG renegotiated the Agreement and lowered the price. That both Mr. Karger and myself had continuing discussions with Mr. Stout.

31. That during the period of our discussions with Mr. Stout KG was under the impression that Beazer extended the Letter of Credit, we were unaware that Beazer allowed the Letter of Credit to expire on October 1, 2006 (Exhibit "L").

32. On January 15, 2007 notice in accordance with Paragraphs "4" and "17" of the Agreement was sent to both to Mr. Paul R. Schneier, Division President and Richard S. Israel as "Attorney for the Buyer", that 45 days have transpired since the grant of final site plan approval and that all conditions have been satisfied "…with the exception of Purchaser's obligations money in lieu of land, park land fees, guarantees and/or inspection escrows and boding requirements (copies of which are enclosed) that are required by ¶15(d) of the Contract of Sale to file site plan. Please make arrangements for the closing and to complete Purchaser's obligations pursuant to paragraph ¶15(d) of the Contract of Sale on or before February 5, 2007" (Exhibits "Q" and "A").

33. On January 23, 2007 Mr. Israel wrote "…in order to confirm the conditions of closing as provided in the Agreement of Sale have been satisfied, please provide the following

9

documentation…" providing a list of documents (Exhibit "R").  That Mr. Israel made no

request for the termination of the memorandum in his January 23rd letter. That Mr. Israel

did not inform KG or its representatives that Beazer had allowed the Letter of Credit to

lapse.

34. On January 30, 2007 KG's counsel sent the requested documents to Mr. Israel and

concluded his letter by stating, "…your client's failure to pay the fees in accordance with

the Contract is delaying the closing and shall be deemed in default if not paid by

February 5, 2007" (Exhibit "S").

35.  On February 9, 2007, a notice was sent to Beazer that Beazer "defaulted in providing

conditions set forth in" paragraph "15(d) of the Agreement  in accordance with

paragraphs "7" and "17" of the Agreement scheduling a "TIME OF THE ESSENCE"

closing on February 21, 2007 at 11:00 am.  That a copy of this notice was sent to Chase

Manhattan Bank, due to the fact KG and its counsel believed that the Letter of Credit had

been extended by Beazer.

36. That your affirmant appeared at the scheduled closing at 11:00 a.m., on February 21,

2007,  and KG was ready, willing and able to close the sale of the property in accordance

with the Agreement.  That on February 21, 2007, my attorney in my presence attempted

to contact Beazer by calling Mr. Israel, Beazer's counsel at the scheduled closing and Mr.

Dorfman only received a voice mail message.

37. That we waited for a representative from Beazer to appear at the closing and

unfortunately Beazer failed to attend the closing.  I thereafter left the closing and

instructed my attorney to contact Chase Bank to obtain the letter of credit, after it became apparent that Beazer was neither responding to phone calls or appearing at the closing. I thereafter left my attorney's office.

38. A few minutes after leaving KG's attorney's office I received a phone call from my attorney to return to the office at which time I was provided a copy of the February 21, 2007 letter from Mr. Frank that had been faxed to KG's counsel at 11:49 A.M. (Exhibit "M")

39. I was not only shocked that Beazer had let the Letter of Credit expire but it was quite apparent that Beazer was attempting to claim that KG was in default under the Agreement that "…Seller was <u>not</u> and is <u>not</u> in a position to convey encumbrance-free title to the Property to Buyer as of the TOE time…" and thereafter made reference to the Memorandum that appears to be on record based upon a "…telephone message from James Wood of Hill-n-Dale Abstractors, Inc./Goshen Searchers, Inc. just prior to 11:00 a.m. on February 21, 2007 (Exhibit "J").

40. Initially, Beazer nor its representatives provided a title report to KG or it's counsel title company "…that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located…" (paragraph "3", Exhibit "A") and clearly Mr./ Wood's "telephone message" was not in any manner in compliance with the requirements of Paragraph "3" of the Agreement regarding title (Exhibit "A"). As the affidavit of David Ellner, Esq., annexed hereto clearly sets forth there was absolutely no issue regarding the memorandum as Stewart Title Insurance Company issued KG fee title insurance policy (Exhibit "P").

11

41. Certainly, neither Mr. Frank left his office in Trenton, New Jersey, nor did Mr. Wood from Hill-n-Dale attend or have any intention to attend the closing in Nyack, New York, when Mr. Frank, received the alleged phone message coincidently "just prior to 11:00 a.m.". The simple fact is Beazer never intended to close due to the change in the market as Mr. Stout had indicated to both Mr. Karger and myself and not with respect to the "pretense" of title.

42. Therefore, based upon my affirmation, the affidavit of Mr. Ellner, the affidavit of Kevin Conway, the Memorandum of Law it Grant KG summary judgment on the First Count in KG's complaint against Beazer in the sum of $150,000.00 and grant KG a liability Judgment on the Second, Third and Fourth Counts of KG's Complaint and schedule a hearing for damages and that this Court deny Beazer's request for Summary Judgment on the second, third and fourth counts of KG's complaint.

## IN OPPOSITION TO REQUEST FOR DISQUALIFICATION

43.  Clearly, Beazer's application to disqualify KG's counsel is also a "pretense to delay" the inevitable judgments against Beazer in this litigation. KG nor Beazer has listed Mr. Dorfman or any member of his firm as a witness in this litigation. In fact, Beazer has made a Motion for Summary Judgment on the Second, Third and Fourth Counts of KG's Complaint in conjunction with their motion for disqualification.

44. Clearly, Beazer did not find it necessary to have Mr. Dorfman as a witness prior to making summary judgment.

45. In addition, KG has moved for summary judgment on the First Count of the Complaint and there is no affidavit of Mr. Dorfman annexed. Your affirmant was copied on all correspondences annexed at the time they were sent or received and I am familiar with all documents annexed to my affidavit.

46. It is quite clear that the application for disqualification, is simply a tactic and is made for no other reason than to force KG to settle for a low figure or to delay judgment.

47. This conduct by Beazer and counsel cannot be tolerated by this Court.



48. Therefore, for these reasons it is respectfully requested that this Court deny Beazer's motion to disqualify.

Dated: Monroe, New York

January 9, 2008

ABRAHAM GOLDBERGER

Affirmed before me this

9th day of January, 2008

Notary Public

MOISHE GRUBER
Notary Public, State of New York
No. 01GR4840440
Qualified in Kings County
Commission Expires Sept. 30, 200__

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

KG CORNWALL, LLC.                              Index No. 07 Civ. 2881 (CLB)

             Plaintiff,                          **AFFIDAVIT**

   -against-                                   **OF DAVID ELLNER**

BEAZER HOMES CORP.

             Defendant.

-------------------------------------------------------x

STATE OF NEW YORK   )

              ) ss.:

COUNTY OF ROCKLAND)

        DAVID ELLNER, under the penalties of perjury under the laws of the United

States of America, declares and states as follows:

1.  I am the President and Senior Agency Counsel for Fiduciary Title Agency, Inc.

    ("Fiduciary") an agent of Stewart Title Insurance Company.

2.  On March 31, 2006, Fiduciary issued a title report  (Title Number FID-2164S) with

    reference to premises located on Dean Hill and Mt. Airy Road, in the Town of New

    Windsor, County of Orange, State of New York known as Town of New Windsor Tax

    Map Section 65 Block I Lots 93 and 94  and also known as  Town of New Windsor Tax

    Map Section 65 Block 1 Lots 51.11 and 56.1 ("Property") (Exhibit "U").

3.  That I examined the title prior to preparing the title report and set forth certain exception

    including a Memorandum of Contract (Exhibit "D"),  which I set forth as Exception #13,

    in Schedule B of the aforesaid title report (Exhibit "U").

4.  That I attended the closing on May 1, 2006, wherein the subject property was sold by
    BENEDICT POND OF NEW WINDSOR, LLC., formerly known as Sarjon, LLC., as
    Seller ("Benedict Pond") to KG CORNWALL, LLC. ("KG") (annexed as Exhibit "O" is
    a copy of the Deed).

5.  That at the May 1, 2006 closing I was provided certain proofs which allowed me to
    "omit" the Memorandum of Contract from both the title report and the subsequently
    issued fee title policy by Stewart Title Insurance Company in the sum of $3,000,000
    (Exhibit "P"). These proofs provided at closing were (i) a copy of the assignment
    between Sungold and Abe Goldberger; (ii) the consent by Benedict Pond to assignment
    to KG ; and (iii) the Termination of the Memorandum of Contract that was executed in
    my presence and in which I notarized.

6.  Accordingly, the Memorandum of Contract is no longer an encumbrance on the property.

7.  In addition, I have reviewed the affidavit of Mr. Stout submitted to this Court and more
    particularly Beazer's Exh. G, the letter of Mr. Frank dated February 21, 2007 (Exhibit
    "M"). In his letter Mr. Frank states that he relied on a telephone message from James
    Wood from Hill-n-Dale Abstractors, Inc. on February 21, 2007 as his only "proof" that
    the Memorandum is an" encumbrance on title".

8.  At no time did James Wood and/or Hill-n-Dale Abstractors, Inc. contact Fiduciary to
    verify whether the Memorandum was still valid, in light of the fact that Fiduciary insured
    subsequent to the recording of the Memorandum. Mr. Wood was aware from the
    recorded deed between Benedict and KG that Fiduciary was involved in the transaction.

9.  It is generally accepted title practice to request proofs of title companies relating to
    matters that were satisfied at closing. Both Mr. Wood and myself are familiar with each
    other and have corresponded on numerous title issues in the same manner for many years.

    Dated: Nyack, New York

    January 9, 2008

                                                David Ellner

Duly sworn to  before me this

9th day of January, 2008

Notary Public

**MINERVA FRANZESE**
Notary Public, State of New York
No. 01FR4858247
Qualified in Rockland County
Commission Expires May 5, 201○

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

KG CORNWALL, LLC.                              Index No. 07 Civ. 2881 (CLB)

             Plaintiff,                      **DECLARATION OF**

   -against-                                   **OF KEVIN CONWAY**

BEAZER HOMES CORP.

             Defendant.

--------------------------------------------------------x

STATE OF NEW YORK   )

                    ) ss.:

COUNTY OF ROCKLAND)

      KEVIN CONWAY, penalties of perjury under the laws of the United States of America,

declares and states as follows:

1. I am an attorney duly admitted to practice before this Court and the Courts of this
   State and am a member of the firm of DORFMAN, KNOEBEL, CONWAY,  FURY
   & GRIFFIN, LLP., attorneys for Plaintiff KG CORNWALL, LLC. ("KG").

2. I submit this declaration (i)  in  support of KG's Cross-Motion for  summary
   judgment on  KG's Complaint (Exhibit "A") and (ii) in opposition to the relief
   requested in Defendant BEAZER HOMES CORP.'s ("Beazer") motion for partial
   summary judgment of the  second, third and fourth count contained in KG's
   Complaint (Exhibit "A")  and for disqualification of KG's counsel.

3. The facts set forth in my Declaration relate primarily to the portion of Beazer's
   motion for disqualification. The Affirmation of Abraham Goldberger dated January 9,

2007 and the Affidavit of David Ellner, dated January 9, 2007 together with supporting exhibits clearly establishes "…there is no genuine issue as to any matter of fact.." and that KG is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## APPLICATION FOR DISQUALIFICATION SHOULD BE DENIED

4. Beazer and counsel have failed to set forth any basis pursuant to the legal standards set forth to disqualify counsel in their papers and therefore, this application should be denied in its entirety. More importantly, Beazer nor their attorneys have alleged either a "conflict of interest" nor are Mr. Dorfman and this firm using privileged information gained from Beazer (Solow v. Conseco, Inc., 2007 WL1599151(S.D.N.Y.)).

5. Even more disturbing, is the fact that Beazer and its counsel submitted a motion for summary judgment without the necessity of an affidavit of Mr. Dorfman while at the same time seeking disqualification based on inflammatory comments.

6. Equally distressing is the use by Ms. Hagemeier are references to alleged statements made by Mr. Dorfman as part of settlement discussions and mediation, both of which are inadmissible. Fed. Rules of Ev. 408(a)(2).

7. The insinuation that this firm or my partner in the caption and in Ms. Hagemeier's Declaration that we "induced Beazer to Defer Moving to Disqualify" is outrageous. The caption should read "Beazer and counsel are playing games with KG, the Dorfman and this Court". Ms. Hagemeier appeared before the Court on December 7, 2007 and made numerous attempts to delay discovery but was silent on this issue, I was present and I did not induce or lure Ms. Hagemeier.

8.  In fact as will be set forth in detail Ms. Haemeier and her firm have played fast and loose with submitting discovery documents as recent as December 20, 2007 wherein, Mr. Dorfman was not listed as a witness (Exhibit "V"). and Ms. Hagemeier a mere 7 days later in her declaration states to this Court that Mr. Dorfman "ought" to be a witness (¶7, Hagemeier Dec.) This conduct should not be countenanced by this Court.

9.  That with respect to the First Count of the Complaint the documents have all been submitted to this Court by Mr. Stout in support of Beazer's partial motion for summary judgment and by Mr. Goldberger and Mr. Ellner in support of KG's motion for summary judgment. In addition, Mr. Stout has conceded that Beazer allowed the $150,000 Letter of Credit that was the contract deposit to expire by its terms on October 1, 2006(¶19, Stout Affidavit) without any reason or excuse.

10. Mr. Stout's admission was supported by the February 24, 2007 letter from Alan Frank wherein he stated that "Notwithstanding that the down payment in the form of a $150,000 Letter of Credit being held by your attorney, Burton I. Dorfman, Esquire, as Escrow Agent under the Agreement, has expired by its terms and is of no further force and/or effect" (Exhibit "M").

11. These are just examples of the fact that the documentary evidence and the affidavits submitted make this case ripe for summary judgment and clearly there is no issue of disqualification or who "ought" to testify.

12. More importantly, Beazer's cross-motion has been submitted without a single affidavit and/or declaration of Mr. Dorfman, therefore, the allegations as to Mr. Dorfman, being a witness is a misstatement.

13. Mr. Dorfman represented KG at closing as Seller's attorney and as escrow agent. That the Contract of sale prepared by Beazer's counsel specifically provided in paragraph "21 (b)" as follows;\

> Escrow Agent and its partners and employees are acting as agents only, and will no case be held liable wither jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).

14. Mr. Dorfman signed the Complaint on March 14, 2007 (Exhibit "A").

15. Mr. Dorfman is not being called as a witness by KG nor has Mr. Dorfman been named as a potential witness by KG (Exhibit "V").

16. On June 11, 2007 your Mr. Dorfman submitted Rule 26 Disclosure Statement wherein he provided all documents pertaining to the underlying litigation.

17. The conclusory allegation set forth in paragraphs "14" that "…there is a possibility…" my partner breached his "fiduciary duty" (¶14, Hagemeir Dec.) is unfounded and to say the least inflammatory and without basis. This firm to this date holds in escrow the Letter of Credit that was not extended by Beazer and has not violated any fiduciary duty nor does my firm or Mr. Dorfman have "…a personal,

financial and business interest…" in this case.  If either myself and/or my firm "…is subject to liability for Dorfman's acts as KG's Escrow Agent" why hasn't Beazer commenced a third party action. Clearly, these allegations border on sanctionable conduct by Beazer's counsel(¶15, Hagemeir Dec.).

18. I cannot believe another attorney would allege such inflammatory comments when it was their client who as acted unlawfully, fraudulently and with absolute disregard to its contractual obligations.

19. The series of letters submitted by counsel are without basis, your affirmant has appeared before this Court on two separate occasions the most recent on December 7, 2007. That Beazer's counsel failed to raise this purported disqualification issue at said date and in fact a deposition timetable was set by the Court over Ms. Hagemeier's objections, none of which dealt with disqualification.

20. Subsequent to this Court hearing during a phone conference on December 14, 2007 when I contacted Ms. Hagemeier that she once again addressed the claims of purported and non-existent conflict.  I indicated to her that there is no basis for the apparent requests disqualification but in order not to delay the Court proceedings, due to the fact that we did not want to request an adjournment from the Court as a result of this Court requested expedited scheduling of discovery.

21. I followed up my conversation with Mr. Sherman, with a letter on December 14, 2007 wherein I indicated that our firm would have "…no objection to withdrawal upon completion of remaining discovery so as to provide our client time to retain new counsel, despite there being **no** basis for your request…" (Exhibit " X").

22. On December 20, 2007 we received Beazer's list of witnesses of which Mr. Dorfman was not included (Exhibit "V"). Clearly, it became apparent that  Beazer and its counsel were using the disqualification of our firm as a tactic to delay the litigation and for no other legitimate purpose .  Due to the fact there was no basis for disqualification and Mr. Dorfman would not be called as a witness and there was no reason for our firm to withdraw its representation.

23. Therefore,  based upon my delaration, the affidavit of Mr. Ellner, the affirmation of Abraham Goldberger, the Memorandum of Law it is respectfully requested that this Court grant (i) KG summary judgment on the First Count in KG's complaint against Beazer in the sum of $150,000.00; (ii) grant KG a liability Judgment on the Second, Third and Fourth Counts of KG's Complaint and schedule a hearing for damages; (iii) deny Beazer's request for Summary Judgment on the second, third and fourth counts of KG's complaint and (iv) deny Beazer's motion to disqualify your declarant's firm.

Dated: Nyack, New York

January 9, 2008

_____

KEVIN CONWAY (KG3347)

k.conway@dkcllp.com