# Exhibit "C"

WARNING: NO REPRESENTATIONS IS MADE THAT THIS FORM OF CONTRACT
FOR THE SALE AND PURCHASE OF REAL ESTATE
COMPLIES WITH SECTION 5-702
OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE).

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## CONTRACT OF SALE

**Contract of Sale** made as of February    , 2003        BETWEEN
**Benedict Pond of New Windsor LLC, formerly known as Sarjon LLC**

Address:    535 High Mountain Road
            North Haledon, New Jersey 07508
Social Security / Federal ID# 14-1815716

hereinafter called "Seller", and

            SUNGOLD HOLDING, INC., A DOMESTIC CORPORATION
Address:    108 New Hempstead Road, New City, New York 10956

Social Security / Federal ID#_____

hereinafter called "Purchaser", and

## The parties hereby agree as follows:

1.    **Premises.**    At the closing of title, Seller shall sell and convey and Purchaser shall purchase the vacant land, (the "Premises"), more fully described on a separate page marked "Schedule "A", annexed hereto and made a part hereof and also known as:

Street Address:        Dean Hill Road and Mt. Airy Road, New Windsor, New York

Tax Map Designation:   Section 65    Block  1    Lots 93 and 94

**Subject to the exception referred to in paragraph 6 hereof.**
Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any

1

street or highway. Seller shall deliver at no additional cost of Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** None

3. **Purchase Price.** The purchase price is $25,000.00 per approved Lot. If 120 lots are approved the purchase price is $3,000,000.00. If less than 120 lots are approved, the purchase price is still $25,000.00 per lot x the amount of lots approved. If less than 80 lots are approved, as set forth in paragraph 4 of this contract.

    a. On the signing of this contract, the receipt of which is hereby acknowledged, (the "Down payment") by bank or certified check:
$300,000.00

    b. Balance at Closing: **BANK OR CERTIFIED CHECK MADE PAYABLE DIRECTLY TO SELLER**
$Balance due Seller per **approved lot**

4. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

Cash, but not over $1,000.00;

Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser:

As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00; and

As otherwise agreed to in writing by Seller or Seller's attorney.

    A. The down payment hereunder ($300,000.00) shall be released to seller immediately upon execution of this contract. The purchaser shall be entitled to a return of the down payment in the event seller is unable to convey title in accordance with the terms of this contract. In order to secure such a return of Purchaser's down payment of $300,000.00, upon receipt of said $300,000.00, Seller will execute and deliver to Purchaser a collateral exculpatory third note and mortgage in the form annexed hereto on the Premises in such amount, subject to a first mortgage of approximately $125,000.00 and a second mortgage of approximately $655,000.00. Seller agrees to maintain said mortgages and real estate taxes on a current basis. Seller shall be responsible for recording such mortgage and all mortgage recording tax fees.

2

  B. In the event that Seller fails to obtain Development Approvals for at least 80 townhouse condominium units as hereinafter stated, then Seller shall either (1) elect to convey the premises to the Purchaser at the rate of $25,000.00 per lot or (2) return the down payment to the Purchaser and cancel this contract, in which event there shall be no further liability between the parties.

  5. **Execution of Contract.** It is expressly understood and agreed that this contract offer made by Seller is not a binding contract, and is subject to Seller's acceptance and approval, and that this contract is not an offer to sell, and shall not in any way bind Seller until such time as the same has been approved and executed by the Seller and good checks are received by the Seller.

Executed contracts of sale must be returned to the Seller's attorney's office no later than January 15, 2003.

  6. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

a. Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation provided same do not prohibit the erection and maintenance of the one-family units contemplated by this contract;

b. Consents for the erection of any structures on, under or above any streets on which the Premises abut;

c. Any area of Premises within to the center line of any street or highway;

d. Real estate taxes that are a lien, but are not yet due and payable;

e. Any state of facts an accurate survey would show provided same do not render title unmarketable;

f. Covenants, easements, restrictions of record affecting the Premises;

g. Any variance in connection with fence, hedge, and like, surrounding the Premises, provided the same does not render title unmarketable;

h. Any state of facts a personal inspection of the Premises would disclose.

i. Public utility easements of record, if any.

j. Notes on a filed map.

k. Matters stated in the annexed title report of Hardenburgh Abstract dated April 6, 1999, Title No. RD-33-27294.

l. The first and second mortgages in the total sum of $780,000.00 as stated in paragraph 4 hereof, which shall be satisfied of record at the closing of title.

7. **Governmental Violations and Orders.**

Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matter.

8. **Seller's Representations.**

Seller represents to Purchaser that:

   i. The Premises abut or have a right of access to a public road or a road irrevocably dedicated to the Town;

   ii. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

   iii. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

Seller covenants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

9. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and all of the other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state or repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representative shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

10. **Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable title insurance company licensed in the State of New York shall be willing to approve and insure in accordance with the annexed title report of Hardenburgh Abstract, Title No. RD-33-27294 and the terms of this contract.

11. **Closing, Deed and Title.**

"Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale with covenants against grantors acts deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subdivision 5 of Section 13 of the Lien Law.

If Seller is a corporation, it shall deliver to Purchaser at the time of Closing a deed containing a recital sufficient to establish compliance with Section 909 of the Business Corporation Law.

12. **Closing Date and Place.**   Closing shall take place at the office of Jacobowitz & Gubits, LLP at 11:00 a.m. within 15 days after the expiration of the period within which appeals can be filed with respect to the final development approval, provided, however, that the closing shall take place within 38 months from the date of this Contract.

13. **Conditions to Closing.**   This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

The delivery by the parties of any other affidavits required as a condition of recording the deed.

14. **Deed Transfer and Recording Taxes.**   Seller shall pay transfer tax and all recording charges normally the responsibility of Seller.

15. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.**

To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

    i.    taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed;

If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediate preceding fiscal period applied to the latest assessed valuation.

Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

16. **Allowance for Unpaid Taxes, etc.**  Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

17. **Use of Purchase Price to Remove Encumbrances.**  If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

18. **Title Examination; Seller's Inability to Convey; Limitations of Liability.**

Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

      i. If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, by reason of liens, encumbrances or other objections to title (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract. However, to the extent title objections can be removed solely by the payment of a sum of money not in excess of the sales price, Seller shall be obligated to do so, but shall not be obligated to commence any legal proceedings to do so.

      ii. If Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate, and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. However, to the extent title objections can be removed

6

       solely by the payment of a sum of money not in excess of the sales price, Seller shall be obligated to do so, but shall not be obligated to commence any legal proceedings to do so. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date;

    iii.    notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

    19.    **Affidavit as to Judgments, Bankruptcies, etc.**    If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

    20.    **Defaults and Remedies**.    In the event the Purchaser shall default, under the terms and conditions of this agreement, the Seller may elect to retain liquidated damages for such breach in lieu of specific performance. The liquidated damages for such breach are now agreed to and fixed by the parties hereto as the amounts paid hereunder as payments on this contract prior to title closing. Alternatively, at the election of seller, seller may elect to pursue compensatory damages against purchaser.

    21.    **Sewer Rights:**

    A.    Purchaser acknowledges that Seller has secured sewer capacity rights to serve the proposed development and that the contract for the same is or may be in excess of the amount necessary to serve the development. Purchaser further acknowledges and agrees that purchaser shall not have any rights to said excess capacity which shall solely belong to and benefit the Seller. This clause shall survive delivery of the deed.

    B.    If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

    22.    **No Assignment.**    This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void, provided, however, Purchaser may assign the contract to an entity in which he is the principal.

    23.    **Broker.**    Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this transaction except Leo Lichtenstein. The broker shall be paid by Seller. The broker shall be paid $150,000.00 at the closing of title if 120 units are approved. In the event less than 120 units but more than 80 units are approved the broker shall be paid at the rate of $1250.00 per approved unit. If less than 80 units are approved the broker shall not be paid a commission. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees arising out of the breach on

their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

    24.    **Construction of Contract Terms.** In any construction of the terms of this contract, none of its terms shall be construed against the Seller by reason of the fact that the Seller or its attorneys drew the contract since the final terms of this contract are the result of negotiations by parties having equal bargaining powers, with each of the parties having full access to legal representation.

    25.    **Metes and Bounds Description** In the event Purchaser obtains a survey of the premises and the survey is certified to the Seller, the Seller agrees to include in the deed of conveyance a metes and bounds description in accordance with the survey, with the understanding by Purchaser that Seller does not thereby warrant the accuracy of said metes and bounds description. Seller agrees to obtain a survey, certified to Purchaser and to title company, from the surveyor assisting in preparation of the subdivision so long as same can be obtained at no additional cost to Seller.

    26.    **Miscellaneous.**

All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

Neither this contract nor any provision thereof may be waived, changed or canceled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

The captions in this contract are for convenience of reference only and in no way define, limit or described the scope of this contract and shall not be considered in the interpretation of his contract or any provision hereof.

This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

**IN WITNESS WHEREOF**, this contract has been duly executed by the parties hereto.

Seller:  
Benedict Pond of New Windsor LLC,  
formerly known as Sarjon LLC

By: _____ 3/7/03

_____ Broker  
LEO LICHTENSTEIN  
As to paragraph 22.

Purchaser:  
Sungold Holding, Inc.

By: _____

Attorney for Seller:

Robert E. DiNardo, Esq.  
Jacobowitz and Gubits, LLP  
158 Orange Avenue  
P.O. Box #367  
Walden, New York   12586

Telephone:   (845) 778-2121  
Fax:              (845) 778-5173

Attorney for Purchaser:

Donald Tirschwell, Esq.  
108 New Hempstead Road  
New City, New York 10956

Telephone:   (845) 634-4687  
Fax:              (845) 634-6962