UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

KG CORNWALL, LLC.

                  Plaintiff,

      -against-


BEAZER HOMES CORP.

              Defendant.

----------------------------------------------------x

Index No. 07 Civ. 2881 (CLB)

**RESPONSE TO RULE 56.1**

**STATEMENT AND STATEMENT**

**PURSUANT TO LOCAL RULE 56.1**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT
## PURSUANT TO LOCAL RULE 56.1

      Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff KG CORNWALL, LLC (KG) respectfully submits this response in opposition to Defendant BEAZER HOMES CORP. (BEAZER) Statement pursuant to Local Rule 56.1. The Complaint is annexed as Exh. A to accompanying affidavit of Abraham Goldberger, affirmed to on January 7. 2008.


      1.    KG and Beazer entered into an Agreement of Sale, dated as of May 31, 2005 (Agreement), pursuant to which KG agreed to sell and Beazer agreed to buy a tract of land in New Windsor, New York (the Property). See Stout Aff. Ex. B.


      **Admit**

2.    Pursuant to § 2 of the Agreement, Beazer made a contract deposit (the Deposit) in the form of a letter of credit in the amount of $150,000 (the LOC). See Stout Aff. Lx. B, Agreement, at § 2 and Ex. C (LOC).

**The letter of credit was sent after Beazer waived Due Diligence on or about September 30, 2005.  The Deposit was required to be extended and maintained in full force and effect until the closing (¶¶ 2 ad 21, Exh. G)**

3.    The Deposit was to be held in escrow by "Burton I. Dorfman, Esq.,Dorfman, Knoebel & Conway, L.L.P.," the designated Escrow Agent under the Agreement. See Stout Aff Ex. B, at § 21. Dorfman and the law firm of Dorfman, Knoebel & Conway, L.L.P. (the Firm) were KG's transaction counsel and are also KG's litigation counsel herein. See e.g., Declaration of Luisa K. Hageineier, dated December 26, 2007 (Hagemeier Decl.), ¶ 5.

**The letter of credit although expired continues to be held in escrow in accordance with pars. 2 and 21 of Agreement (Exh. "G").**

4.    As Escrow Agent, Dorfman was charged with the following enumerated duties:

(i) if Settlement is held, the Deposit shall be paid over to [KG] and credit to the Purchase Price.

(ii) If the Settlement is not held by reason of [Beazer's] default, the Deposit shall be paid over to [KG] and be retained by [KG] as provided in Section 7 above.

(iii) If Settlement is not held by reason of [KG's] default, the Deposit shall be paid over to Buyer.

(iv) If Settlement is not held by reason of a failure of a condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to [Beazer], neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.

(b)  Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section 21.

Id. **The court is referred to the entire paragraph "21" and more particularly 21(b) that provides as follows**

> **Escrow Agent and its partners and employees are acting as agents only, and will no case be held liable wither jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law.  Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).**

5.      The Agreement expressly provided that the Depoist would be KG's "sole and exclusive remedy" in the event Beazer defaulted. Id. § 7.

**That Beazer allowed the Letter of Credit to expire and in fact converted the deposit and  Beazer has refused to replace the deposit .**

6.      Beazer was not obligated to close on the purchase of the Property, and was entitled to terminate the Agreement without any further liability, unless KG was able to convey the Property "free and clear of all liens, encumbrances, restrictions, and easements" with title that is "good and marketable and insurable without exception by such title company that is selected by Buyer." Id. § 3(a).

**KG was ready, willing, and able to close title on February 21, 2007.**

7.      The Agreement provided that, if KG is "unable to give good and marketable title such as will be insured by the Insurance Company [selected by Beazerl, [Beazer] shall have the option (a) of taking such title as [KG] can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by [KG] with the Title Company whereupon [KG] shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if [KG's] contest is unsuccessful, *or (c) [Beazer] receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void."* Id. § 3(b) (emphasis added).

**KG was ready, willing, and able to convey good and marketable title in accordance with the contract on the date of closing.**

8.    Section 15 of the Agreement sets forth "Conditions to Buyer's Obligations." One of the conditions upon which Beazer's obligations is "expressly conditioned," is "(a)(i) All representations and warranties of [KG] herein being true and correct at the time of Settlement [and] (ii) [KG] having performed all of its covenants and obligations hereunder." Id § 15(a)(i).

**Beazer waived Due Diligence and KG was ready, willing and able to close title on February 11, 2007.**

9.    One of KG's representations was that the Property was "not subject to any lease, option, right of first refusal or agreement of sale other than Seller's Contract [to purchase the Property]." Id. § 13.

**None of these conditions existed on the date of closing.  KG represented it was a contract vendee (par. 13(a), Exh. G).**

10.    In or about September 2005, Beazer discovered a Memorandum of Contract of Sale relating to the Property on record in Orange County. A copy of the Memorandum of Contract and the underlying Contract is Ex. D to the Stout Aff. and is referred to herein as the "Sungold Contract."

**The memorandum of contract was terminated pursuant to the agreement dated May 1, 2006 (exhibit "J").**

11.    Pursuant to the Sungold Contract, dated March 7, 2003, Benedict Pond of New Windsor, LLC, the purported seller of the Property to KG, agreed to sell the Property to Sungold Holding, Inc. See Stout Aff. Ex. D.

**Admit**

12.    By letter dated September 7, 2005, Beazer alerted KG to this cloud on title. Letter from A. Frank, Esq. to B. Dorfman, Esq., dated Sept. 7, 2005, attached as Ex. E to the Stout Aff.

**That this due diligence investigation was satisfied and waived by Mr. Stout (Exhibit "K").**

13.    Specifically, Beazer informed KG that:

a title search was ordered and one of the items listed as an exception under said report was a Memorandum of Contract from 2003 between the present fee owner of the property and an entity by the name of Sungold Holding, Inc. A copy of the

Memorandum of Contract is provided for your benefit. We further note that the contract vendee under that Memorandum appears to be a different entity than KG Cornwall, LLC. I would appreciate your enlightening me as to the implications of this Memorandum which is of record. It would appear that unless said Memorandum is discharged, there is a third party with whom neither my client nor your client is in privity who has rights in the property which may be superior to those of your client and thus superior to those of mine.

Id.    **That due diligence investigation was completed and waived by Beazer (Exh. "K").**

16.    KG never responded to Beazer's inquiry or provided any elucidation regarding the Sungold Contract. Stout Aff ¶ 15.

**That KG satisfied Beazer's due diligence investigation and Beazer waived due diligence (Exh. K.).**

17.    On February 9, 2007, KG notified Beazer that it was scheduling a Time of the Essence closing to take place on February 21, 2007 at 11:00 a.m. See Letter from B. Dorfman, Esq. to P. Schneier & I. Israel, Esq., dated Feb. 9, 2007, Stout Aff Ex. F.

**Admit**

18.    Just prior to the scheduled closing, however, Beazer's title company discovered that the Sungold Contract remained on record in Orange County. Thus, not only had KG not explained this cloud on title, though given more than ample time to do so, but it had not discharged it either. Stout Aff. ¶ 17.

**There was no title report issued to Beazer provided to KG that there was no encumbrance at time of closing.**

19.    Accordingly, pursuant to its rights under the Agreement, Beazer advised KG that KG was in default and that Beazer was terminating the agreement and demanding release of the Deposit. See Letter from A. Frank, Esq. to B. Dorfman, Esq. dated Feb. 21, 2007, Stout Aff Ex. G.

**There was no basis for  Beazer to terminate agreement . There was no title report issued to Beazer provided to KG that there was no encumbrance at time of closing.**

20.        The LOC, it turned out, had expired by its terms on October 1,

2006. See Stout Aff Ex. C.

**Admit**

21.        Contrary to the allegations in ¶ 30 of the Complaint, KG never asked
Beazer to replace, renew or extend it. Stout Aff. ¶ 20.

**Beazer had the responsibility pursuant to paragraphs 2 and 21 of contract to
extend Letter of Credit.**

22.        By letter dated February 26, 2007, KG's counsel contended that Beazer
had no right to terminate the Agreement, claiming that the Sungold Contract had been assigned
to KG and thus did not constitute a cloud on title. See Letter from B. Dorfman to A. Frank, dated
Feb. 26, 2007, Stout Aff. Ex. H.

**Admit**

23.        However, at no time has Beazer seen such an assignment or any other
evidence to substantiate that allegation, despite the fact that document discovery is closed. Stout
Aff ¶ 21.

**Beazer has been provided all of the aforementioned documents as part of Rule 26
and during discovery.**

24.        Beazer never made any misrepresentations to KG or wrongfully took any
property or funds rightfully belonging to KG. Beazer's actions with respect to the Agreement
and the Property were wholly proper. Stout Aff. ¶ 24.

**Beazer has wrongfully converted the downpayment.**

25.        KG never owned or had a possessory right to the LOC.

**KG was entitled to the proceeds of the LOC upon the default of Beazer.**

**PLAINTIFF'S STATEMENT PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Court for the
Southern District of New York, Plaintiff KG CORNWALL, LLC (KG) respectfully submits this
statement of material facts as to which there is no genuine issued to be tried in support of its motion for
partial summary judgment granting KG a money judgment in the sum of $150,000.00 against Defendant
BEAZER HOMES CORP. on the first count of the complaint  pursuant to Local Rule 56.1.  The
Complaint is annexed as Exh. A to accompanying affidavit of Abraham Goldberger, affirmed to on
January 7. 2008.

1. On March 7, 2003 Benedict Pond of New Windsor, LLC  ("Benedict Pond") entered into
   a contract of sale ("Benedict Pond Agreement") to sell certain real property to Sungold
   Holding, Inc. ("Sungold") located at Dean Hill Road and Mt. Airy Road, in the Town of
   New Windsor, County of Orange, State of New York also known as  Town of New
   Windsor Tax Map Section 65 Block 1 Lots 51.11 and 56.1 (formerly known as Town of
   New Windsor Tax Map Section 65 Block I Lots 93 and 94) ("Property") (Exhibit "C").

2. The Benedict Pond Agreement was executed by Benedict Pond's Manager Angelo
   Danza ("Danza") and Sungold's President, my Brother-in-Law Chaim Dresner
   ("Dresner").

3. On April 15, 2003 Danza on behalf of Benedict Pond and Dresner on behalf of Sungold
   executed a memorandum of contract (Exhibit "D") ("memorandum").

4. On July 10, 2003 Dresner the sole shareholder of Sungold Holding Corp., assigned "all
   rights and interest" in the Benedict Pond Agreement  to your affirmant for valuable
   consideration ("Sungold assignment")(Exhibit " E"). The Sungold assignment  provided

in part that "Chaim agrees to cooperate with any necessary legal paper work that Abe may need to facilitate the sale to a third party" (Exhibit " E").

5.  That in accordance with paragraph "22" of the Benedict Pond Agreement, Benedict Pond by Danza, consented to the Assignment of the Contract to KG, that is solely owned by your affirmant (Exhibit "F").

6.  KG represented in Paragraph "13(a)" of the Agreement that it was the "contract vendee to purchase the Property in fee simple ..." (Exhibit "G").

7.  In paragraph "2" of the Agreement Beazer agreed to pay Seller a purchase price of $10,320,000.00, as follows;

    a.  Beazer was required to deliver to Escrow Agent a $150,000 letter of credit to be held in escrow until the closing ( "Deposit"). Paragraph "21" entitled "Escrow of Deposit" directed the Deposit to be paid to KG at the closing or if the closing did not occur as a result of Beazer's Default (Exhibit "G")

    b.  the sum of $10,170,000.00 to be paid by Beazer to KG at the time of closing (Exhibit "G").

8.  Paragraph "7" of the Agreement entitled "Buyer's Default" provided "Should Buyer violate or fail to fulfill and perform any of the terms or conditions of this Agreement after thirty (30) days written notice from Seller (or ten (10) days written notice in the event of a monetary default), then the Deposit shall be retained by Seller as Seller's sole and exclusive remedy for such breach as liquidated damages" (Exhibit "G").

9. Paragraph "12" of the Agreement provided for a 90 day due diligence period and provided "Should buyer to desire to proceed with this Agreement, Buyer will notify Seller in writing prior to the expiration of the Due Diligence Period…" (Exhibit "G").

10. That the original due diligence period was extended until September 19, 2005 (Exhibit "H").

11. That in connection with due diligence, Beazer engaged the services of Alan J. Frank, Jr. for the sole purpose of due diligence review who on September 7, 2005, wrote to KG's counsel requesting information "in connection with our clients' due diligence investigation of the property" concerning the Memorandum and requested KG's counsel to contact him "…so that I will be able to complete my legal due diligence review of the premises prior to the expiration of the due diligence period on September 19, 2005…" (Exhibit "I").

12. That due diligence was thereafter extended by KG at the request of Beazer from September 19, 2005 until September 26, 2005 .

13. That on September 26, 2005, Robert Stout of Beazer Homes wrote to Mr. Karger, my attorney and Mr. Danza the principal of Benedict Pond;

> Beazer has now completed due diligence on the Benedict Pond property. Beazer Homes intends to go forward with our Agreement of Sale and close on the property as soon as all approvals are in place as outlined in the Agreement of Sale dated May 31, 2005.(Exhibit "K")

14. That immediately after Beazer waived due diligence (Exhibit "K") Beazer delivered to KG's attorney as escrow agent the Deposit (¶2, Exhibit "A") an irrevocable standby

letter of credit dated September 30, 2005 issued by JP Morgan Chase in the sum of $150,000, listing the beneficiary as KG (Exhibit "L").

15. The Letter of Credit provided an expiration date of October 1, 2006 and it was Beazer's obligation to continue extending the letter of credit until the closing or Beazer's default at which time the Deposit was required to be released to KG (¶¶2 and 21, Exhibit "A"; Exhibit "L").

16. That Stout has conceded that the Letter of Credit expired by its terms on October 1, 2006 (¶19, Stout Affidavit) , and neither Beazer nor Stout has set forth an excuse and/or a reason why Beazer failed to extend the Letter of Credit as required (¶¶2 and 21, Exhibit "A").

17. . On February 26, 2007 KG's attorney after learning that BEAZER failed to extend the Letter of Credit as required under the Contract responded to Mr. Frank;

> …your client has no authority to request the return of the Letter of Credit.
> Your client does have the obligation of providing a Letter of Credit and
> did so and it was believed that the Letter of Credit had been extended.
> However, it appears your client committed an unlawful act of removing
> the down payment from my escrow. Therefore, unless the sum of
> $150,000 is received by my office by wire transfer or bank check by
> March 2, 2007, my client will bring appropriate action in the proper
> forums… (Exhibit "N")

18. On May 1, 2006, KG purchased the subject property from Bendict Pond for the sum of $3,000,000 in accordance with the Benedict Pond Agreement (Exhibits "O" and "C").

19. On May 1, 2006, the Memorandum of Agreement was terminated by instrument entitled "TERMINATION OF MEMORANDUM OF CONTRACT" (Exhibit "J").

20. KG was issued a title policy in the amount of the purchase price of the property from

    Fiduciary Abstract as agent for Stewart Title Insurance Company (Exhibit "P").

21. Paragraph "4" of the Agreement entitled "Settlement" provided in part as follows;

> Settlement ("Settlement") shall be made at the offices of the Title
> Company or a mutually agreeable location forty five (45) days following
> final Site Plan approval for between one hundred ten (110) and one
> hundred twenty (120) age restricted active adult town house units …and
> the satisfaction of all of the conditions contained set forth in Section 15,
> upon at least five (5) business days notice from Buyer to Seller (Exhibit
> "G").

22. On August 11, 2006 Site Plan Approval was granted by the Town of New Windsor

    Planning Board for 120 age restricted units.

23. That shortly after Site Plan Approval was obtained Mr. Stout contacted by Karger and

    Goldberger and advised them as a result of the downturn in the real estate market, Beazer

    was reevaluating all projects and that Beazer was not going to close unless KG

    renegotiated the Agreement and lowered the price.

24. That during the period of our discussions with Mr. Stout KG was under the impression

    that Beazer extended the Letter of Credit, we were unaware that Beazer allowed the

    Letter of Credit to expire on October 1, 2006 (Exhibit "L").

25. On January 15, 2007 notice in accordance with Paragraphs "4" and "17" of the

    Agreement was sent to both to Mr. Paul R. Schneier, Division President and Richard S.

    Israel as "Attorney for the Buyer", that 45 days have transpired since the grant of final

    site plan approval and that all conditions have been satisfied "…with the exception of

Purchaser's obligations money in lieu of land, park land fees, guarantees and/or inspection escrows and boding requirements (copies of which are enclosed) that are required by ¶15(d) of the Contract of Sale to file site plan. Please make arrangements for the closing and to complete Purchaser's obligations pursuant to paragraph ¶15(d) of the Contract of Sale on or before February 5, 2007" (Exhibits "Q" and "A").

26. On January 23, 2007 Mr. Israel wrote "…in order to confirm the conditions of closing as provided in the Agreement of Sale have been satisfied, please provide the following documentation…" providing a list of documents (Exhibit "R"). That Mr. Israel made no request for the termination of the memorandum in his January 23rd letter. That Mr. Israel did not inform KG or its representatives that Beazer had allowed the Letter of Credit to lapse.

27. On January 30, 2007 KG's counsel sent the requested documents to Mr. Israel and concluded his letter by stating, "…your client's failure to pay the fees in accordance with the Contract is delaying the closing and shall be deemed in default if not paid by February 5, 2007" (Exhibit "S").

28. On February 9, 2007, a notice was sent to Beazer that Beazer "defaulted in providing conditions set forth in" paragraph "15(d) of the Agreement  in accordance with paragraphs "7" and "17" of the Agreement scheduling a "TIME OF THE ESSENCE" closing on February 21, 2007 at 11:00 am.  That a copy of this notice was sent to Chase Manhattan Bank, due to the fact KG and its counsel believed that the Letter of Credit had been extended by Beazer.

29. That your affirmant appeared at the scheduled closing at 11:00 a.m., on February 21, 2007, and KG was ready, willing and able to close the sale of the property in accordance with the Agreement.

30. On February 21, 2007 Mr. Frank faxed a letter to KG's counsel at 11:49 A.M. (Exhibit "M")

31. Beazer claimed that KG was in default under the Agreement that "…Seller was not and is not in a position to convey encumbrance-free title to the Property to Buyer as of the TOE time…" and thereafter made reference to the Memorandum that appears to be on record based upon a "…telephone message from James Wood of Hill-n-Dale Abstractors, Inc./Goshen Searchers, Inc. just prior to 11:00 a.m. on February 21, 2007 (Exhibit "J").

32. Beazer nor its representatives provided a title report to KG or it's counsel title company "…that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located…" (paragraph "3", Exhibit "A").

33. Mr. Wood's "telephone message" was not in any manner in compliance with the requirements of Paragraph "3" of the Agreement regarding title (Exhibit "A").

Dated: Nyack, New York

January 9, 2008

DORFMAN, KNOEBEL, CONWAY,

FURY & GRIFFIN, LLP.

By_____

KEVIN CONWAY ( KG3347 )

k.conway@dkcllp.com

51 North Broadway

Nyack, New York 10960

(845)353-3500

Attorneys for Plaintiff


TO:

ERIC D. SHERMAN, ESQ.
LUISA K. HAGEMEIER

PRYOR CASHMAN LLP

410 Park Avenue

New York, New York 10022

(212) 421-4100

Attorneys for Defendant