UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

KG CORNWALL, LLC.                                    Index No. 07 Civ. 2881 (CLB)

        Plaintiff,

    -against-

BEAZER HOMES CORP.

        Defendant.

-------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT <u>AND DISQUALIFICATION OF COUNSEL</u>

Dorfman, Knoebel, Conway,

Fury & Griffin, LLP.

51 North Broadway

Nyack, New York 10960

*Attorneys for Plaintiff KG Cornwall, LLC.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………..

PRELIMINARY STATEMENT 1

    I.    UNDISPUTED FACTS RELEVANT TO THE SUMMARY 1

JUDGMENT MOTION

    II.    FACTS RELEVANT TO THE DISQUALIFICATION

        MOTION 7

ARGUMENT 10

    I PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
    SHOULD BE GRANTED IN ALL RESPECTS AND
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    SHOULD BE DENIED 10

    A. Summary Judgment Standard 10

    B. Plaintiff should be granted Summary Judgment
       against Defendant in the sum of $150,000
       on the First Count of Complaint 11

    C. Plaintiff should be granted a liability verdict on the Second, Third
       and Fourth Counts and a hearing should be scheduled to
       determine damages in excess of $150,000 set forth in Liquidated
       Damages Clause 13

    II    DEFENDANT'S MOTION FOR DISQUALIFICATION
        SHOULD BE DENIED 14

CONCLUSION 18

## TABLE OF AUTHORITIES

| | |
|---|---|
| Fed. R. Civ. P. 56 (b) and (c) | 10 |
| Celotex Corp. v. Catrett, 477 U.S.317, 323 | 10 |
| Collar City Partnership I v. Redemption Church of Christ of the Apostolic Faith, 235 A.D.2d 665, 667, 651 N.Y.S.2d 729 | 13 |
| Gillette v. Meyers, 42 A.D.3d 654, 655, 839 N.Y.S. 2d 584, 585 | 12 |
| Lawrence v. Miller, 86 N.Y. 131 | 11 |
| Maxton Builders, Inc. v. LoGalbo, 68 N.Y.2d 373, 509 N.Y.S.2d 507 | 11 |
| New Colony Homes, Inc. v. Long Island Property Group, LLC, 21 A.D.3d 1072, 803 N.Y.S.2d 615 | 12 |
| Old Orchard Development, LLC v. Marrano/Marc Equity Corp., 45 A.D.3d 1497, 846 N.Y.S.2d 529 | 12 |
| Richmond Shop Smart, Inc. v. Kenbar Development Center, LLC., 32 A.D.3d 423, 424, 820 N.Y.S.2d 124, 126 | 13 |
| Solow v. Conseco, Inc., 2007 WL 1599151 (S.D.N.Y) | 14-17 |
| Uzan v. 845 UN Ltd. Partnership, 10 A.D.3d 230, 778 N.Y.S.2d 171 | 12 |
| Verrolla v. Beechwood Carmen Building Corp., 43 A.D.3d 913, 841 N.Y.S.2d 610 | 12 |
| Sutton v. Santora, 87 A.D.2d 796, 449 N.Y.S.2d 503 | 12 |

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff KG Cornwall, LLLC ("KG"), by its attorneys Dorfman, Knoebel, Conway, Fury and Griffin, LLP., respectfully submits this memorandum of law in (i) in support of KG's Cross-Motion for summary judgment on KG's Complaint (Exhibit "A") and (ii) in opposition to the relief requested in Defendant BEAZER HOMES CORP.'s ("Beazer") motion for partial summary judgment of the second, third and fourth count contained in KG's Complaint (Exhibit "A") and for disqualification of KG's counsel.

## PRELIMINARY STATEMENT

Beazer's counsel is correct in one sense the first count of KG's Complaint (¶¶1-27, Exhibit "A") is a "plain-vanilla breach of contract" claim. The second, third and fourth causes of action based upon conversion and fraud are separate and distinct and based upon the documentary evidence submitted to this Court as well as the affirmation of Mr. Goldberger, the affidavit of David Ellner, the admissions contained in the affidavit of Mr. Stout .

### I. UNDISPUTED FACTS RELEVANT TO THE SUMMARY JUDGMENT MOTION

This case is quite simple, a contract dated May 31, 2005 was entered to sell property in New Windsor, New York for the sum of $10,000,000 (Exhibit "G"). The Contract required a "Deposit" in the form of a letter of credit in the sum of $150,000 or 1.5% of the Contract price to be held pending closing or a default of either party (¶¶2 and 21, Exh.G.). The contract contained a due diligence provision of 90 days that was extended by the parties until September 26, 2005. That in connection with due diligence, Beazer engaged the services of Alan J. Frank, Jr. for the sole purpose of due diligence review who on September 7, 2005, wrote to KG's counsel requesting information "in connection with our clients' due diligence investigation of the property" concerning the Memorandum and requested KG's counsel to contact him "…so that I

1

will be able to complete my legal due diligence review of the premises prior to the expiration of the due diligence period on September 19, 2005…" (Exhibit "I") (Exhibit "I").

That subsequent to receipt of this letter from Beazer's due diligence counsel, Beazer's representatives including Robert Stout were advised by John Karger ("Karger") KG's Manager, my attorney and myself that the Benedict Pond Agreement was assigned to Goldberger and that Benedict Pond consented to the Assignment to my company and more importantly that KG and Goldberger would execute a termination of the Memorandum at the time the Property was conveyed by Benedict to KG. On September 26, 2005, Beazer waived due diligence (¶12, Exh.G, Exhs. H and K). That this termination agreement was in fact executed on the date of the KG Closing (Exhibit "J").

That immediately after Beazer waived due diligence (Exhibit "K") Beazer delivered to KG's attorney as escrow agent the Deposit (¶2, Exhibit "A") an irrevocable standby letter of credit dated September 30, 2005 issued by JP Morgan Chase in the sum of $150,000, listing the beneficiary as KG (Exhibit "L").

On May 1, 2006, wherein the property was sold by Benedict Pond to KG (Exhibit "O").

That at the May 1, 2006 closing Mr. Ellner was provided certain proofs which allowed Fiduciary Title an Agent of Stewart Title Insurance Company to "omit" the Memorandum of Contract from both the title report and the subsequently issued fee title policy by Stewart Title Insurance Company in the sum of $3,000,000 (Exhibit "P"). These proofs provided at closing were (i) a copy of the assignment between Sungold and Abe Goldberger; (ii) the consent by Benedict Pond to assignment to KG ; and (iii) the Termination of the Memorandum of Contract

2

that was executed and notarized by Mr. Ellner. Mr. Ellner confirmed, the Memorandum of Contract is no longer an encumbrance on the property.

The Letter of Credit provided an expiration date of October 1, 2006 and it was Beazer's obligation to continue extending the letter of credit until the closing or Beazer's default at which time the Deposit was required to be released to KG (¶¶2 and 21, Exhibit "A"; Exhibit "L").

Paragraph "4" of the Agreement entitled "Settlement" provided in part as follows;

> Settlement ("Settlement") shall be made at the offices of the Title Company or a mutually agreeable location forty five (45) days following final Site Plan approval for between one hundred ten (110) and one hundred twenty (120) age restricted active adult town house units …and the satisfaction of all of the conditions contained set forth in Section 15, upon at least five (5) business days notice from Buyer to Seller (Exhibit "G").

On August 11, 2006 Site Plan Approval was granted by the Town of New Windsor Planning Board for 120 age restricted units.

That shortly after Site Plan Approval was obtained Mr. Stout contacted Karger and Goldberger and advised them as a result of the downturn in the real estate market, Beazer was reevaluating all projects and that Beazer was not going to close unless KG renegotiated the Agreement and lowered the price.

That during the period of our discussions with Mr. Stout , KG was under the impression that Beazer extended the Letter of Credit, and was unaware that Beazer allowed the Letter of Credit to expire on October 1, 2006 (Exhibit "L").

3

That Stout has conceded that the Letter of Credit expired by its terms on October 1, 2006 (¶19, Stout Affidavit), and neither Beazer nor Stout has set forth an excuse and/or a reason why Beazer failed to extend the Letter of Credit as required (¶¶2 and 21, Exhibit "A").

That the failure to extend this letter of credit constituted an anticipatory breach of the contract provision to maintain the deposit and KG is entitled to $150,000 money judgment as a matter of law.

On January 15, 2007 notice in accordance with Paragraphs "4" and "17" of the Agreement was sent to both to Mr. Paul R. Schneier, Division President and Richard S. Israel as "Attorney for the Buyer", that 45 days have transpired since the grant of final site plan approval and that all conditions have been satisfied "…with the exception of Purchaser's obligations money in lieu of land, park land fees, guarantees and/or inspection escrows and boding requirements (copies of which are enclosed) that are required by ¶15(d) of the Contract of Sale to file site plan. Please make arrangements for the closing and to complete Purchaser's obligations pursuant to paragraph ¶15(d) of the Contract of Sale on or before February 5, 2007" (Exhibits "Q" and "A").

On January 23, 2007 Mr. Israel wrote "…in order to confirm the conditions of closing as provided in the Agreement of Sale have been satisfied, please provide the following documentation…" providing a list of documents (Exhibit "R"). That Mr. Israel made no request for the termination of the memorandum in his January 23rd letter. That Mr. Israel did not inform KG or its representatives that Beazer had allowed the Letter of Credit to lapse.

On January 30, 2007 KG's counsel sent the requested documents to Mr. Israel and concluded his letter by stating, "…your client's failure to pay the fees in accordance with the Contract is

4

delaying the closing and shall be deemed in default if not paid by February 5, 2007" (Exhibit "S").

On February 9, 2007, a notice was sent to Beazer that Beazer "defaulted in providing conditions set forth in" paragraph "15(d) of the Agreement in accordance with paragraphs "7" and "17" of the Agreement scheduling a "TIME OF THE ESSENCE" closing on February 21, 2007 at 11:00 am. That a copy of this notice was sent to Chase Manhattan Bank, due to the fact KG and its counsel believed that the Letter of Credit had been extended by Beazer.

That Mr. Goldberger appeared at the scheduled closing at 11:00 a.m., on February 21, 2007, and KG was ready, willing and able to close the sale of the property in accordance with the Agreement. That on February 21, 2007, KG's attorney attempted to contact Beazer by calling Mr. Israel, Beazer's counsel at the scheduled closing and Mr. Dorfman only received a voice mail message.

That Goldberger waited for a representative from Beazer to appear at the closing and unfortunately Beazer failed to attend the closing. Goldberger thereafter left the closing and instructed KG's Counsel to contact Chase Bank to obtain the letter of credit, after it became apparent that Beazer was neither responding to phone calls or appearing at the closing.

On February 21, 2007 Mr. Frank faxed a letter to KG's counsel at 11:49 A.M. (Exhibit "M"). Mr. Frank alleged without any basis that KG was in default under the Agreement that "…Seller was not and is not in a position to convey encumbrance-free title to the Property to Buyer as of the TOE time…" and thereafter made reference to the Memorandum that appears to

5

be on record based upon a "…*telephone message* from James Wood of Hill-n-Dale Abstractors, Inc./Goshen Searchers, Inc. just prior to 11:00 a.m. on February 21, 2007 (Exhibit "J").

Beazer nor its representatives provided a title report to KG or it's counsel title company "…that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located…" (paragraph "3", Exhibit "A") and clearly Mr./ Wood's "telephone message" was not in any manner in compliance with the requirements of Paragraph "3" of the Agreement regarding title (Exhibit "A").

As the affidavit of David Ellner, Esq., annexed hereto clearly sets forth there was absolutely no issue regarding the memorandum as Stewart Title Insurance Company issued KG fee title insurance policy (Exhibit "P"). In his letter Mr. Frank states that he relied on a telephone message from James Wood from Hill-n-Dale Abstractors, Inc. on February 21, 2007 as his only "proof" that the Memorandum is an" encumbrance on title". Mr. Ellner further stated that at no time did James Wood and/or Hill-n-Dale Abstractors, Inc. contact Fiduciary to verify whether the Memorandum was still valid, in light of the fact that Fiduciary insured subsequent to the recording of the Memorandum. Mr. Wood was aware from the recorded deed between Benedict and KG that Fiduciary was involved in the transaction.

Certainly, neither Mr. Frank left his office in Trenton, New Jersey, nor did Mr. Wood from Hill-n-Dale attend or have any intention to attend the closing in Nyack, New York, when Mr. Frank, received the alleged phone message coincidently "just prior to 11:00 a.m.". The simple fact is Beazer never intended to close due to the change in the market as Mr. Stout had indicated to both Mr. Karger and Mr. Goldberger and not with respect to the "pretense" of a title issue.

## II. FACTS RELEVANT TO THE DISQUALIFICATION MOTION

Mr. Dorfman is not being called as a witness by KG nor has Mr. Dorfman been named as a potential witness by either KG or Beazer (Exhibit "V"). Beazer has evidently sought summary judgment and KG has sought summary judgment, without the necessity of an affidavit from Mr. Dorfman.

Mr. Dorfman represented KG at closing as Seller's attorney and as escrow agent.

That the Contract of sale prepared by Beazer's counsel specifically provided in paragraph "21 (b)" as follows;

> Escrow Agent and its partners and employees are acting as agents only, and will no case be held liable wither jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).

Mr. Dorfman signed the Complaint on March 14, 2007 (Exhibit "A").

On June 11, 2007 your Mr. Dorfman submitted Rule 26 Disclosure Statement wherein he provided all documents pertaining to the underlying litigation.

The conclusory allegation set forth in paragraphs "14" that "…there is a possibility…" Mr. Dorfman breached his "fiduciary duty" (¶14, Hagemeir Dec.) is unfounded and to say the least inflammatory and without basis. This firm to this date holds in escrow the Letter of Credit that was not extended by Beazer and has not violated any fiduciary duty nor does the firm or Mr. Dorfman have "…a personal, financial and business interest…" in this case.

The series of letters submitted by counsel are without basis, Mr. Conway appeared before this Court on two separate occasions the most recent on December 7, 2007. That Beazer's counsel failed to raise this purported disqualification issue at said date and in fact a deposition timetable was set by the Court over Ms. Hagemeier's objections, none of which dealt with disqualification.

Subsequent to this Court hearing during a phone conference on December 14, 2007 when Mr. Conway contacted Ms. Hagemeier she once again addressed the claims of purported and non-existent conflict. Mr. Conway indicated to Ms. Hagemeier that there is no basis for the apparent requests disqualification but in order not to delay the Court proceedings, due to the fact that we did not want to request an adjournment from the Court as a result of this Court requested expedited scheduling of discovery.

Mr. Conway followed up my conversation with Mr. Sherman, with a letter on December 14, 2007 wherein I indicated that our firm would have "…no objection to withdrawal upon completion of remaining discovery so as to provide our client time to retain new counsel, despite there being **no** basis for your request…" (Exhibit " X").

8

On December 20, 2007 Beazer's served its list of witnesses of which Mr. Dorfman **was not** included (Exhibit "V"). Clearly, it became apparent that Beazer and its counsel were using the disqualification of our firm as a tactic to delay the litigation and for no other legitimate purpose . Due to the fact there was no basis for disqualification and Mr. Dorfman would not be called as a witness , there was no reason for the firm to withdraw its representation.