Exhibit "G"

# AGREEMENT OF SALE

THIS AGREEMENT ("Agreement") is made this 31st day of May, 2005 between KG CORNWALL, LLC., a New York Limited Liability Company, having as its principal place of business located at One Shinev Court, Monroe, New York 10950 and BEAZER HOMES CORP., 275 Phillips Boulevard, Trenton, New Jersey 08618, or their nominee ("Buyer").

## WITNESSETH:

In consideration of the covenants and provisions contained herein, and subject to the terms and conditions hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

1. **Sale.** Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase from Seller, all that certain tract of land, known as Town of New Windsor Tax Map Section 65, Block 1, Lots 51.11 and 56.1 located in the Town of New Windsor, County of Orange, State of New York more particularly described on Exhibit "A" attached hereto (the "Property"). The Property includes (i) all tenements, hereditament, appurtenances, easements, covenants, permits, approvals and other rights arising from or appertaining to the land; (ii) all structures, fixtures, systems, improvements, topsoil, trees, shrubbery and landscaping situated on, in or under or used in connection with the land; and (iii) all surveys, plans, specifications, reports and other engineering information to which the Seller has access regarding the Property (together, "Seller's Plans"). Buyer acknowledges that they have received copies of Seller's Plans on or before the date of this Agreement, as they may exist and Seller shall provide Buyer Plans as they are submitted to respective Boards.

2. **Purchase Price.** The purchase price (the "Purchase Price") for the Property shall be Ten Million Three Hundred Twenty Thousand and No/100 Dollars ($10,320,000.00), based on $86,000 per unit for 120 Age Restricted Active Adult Townhouse Units to be paid as follows:

   (a) Within ten (10) days of the date hereof, Buyer shall deliver to the Escrow Agent (hereinafter defined as escrow agent), a letter of credit in the sum of $150,000 (such amount shall hereinafter be referred to as the "Deposit"), to be held in escrow.

   (b) The sum of $10,170,000 shall be paid by Buyer to Seller on the Settlement Date as is defined in paragraph "4" of this contract of sale.

   (c) Notwithstanding anything set forth herein, if less than 120 Units are approved, the Purchase Price shall be reduced by $86,000 for each approved Unit under 120. It is specifically understood that the Seller shall proceed diligently to obtain the approval of at least 110 Units but that should Seller be unable to do so, either party shall have the right to terminate the Agreement in which event the Deposit shall be returned to the Buyer and the parties shall have no further obligations hereunder.

3. **Title.**

   (a) The Property is to be conveyed free and clear of all liens, encumbrances, restrictions, and easements excepting those covenants, restrictions and easements that exist and are reflected on the approved site plan so long as same do not prohibit the construction and use of at least 110 age restricted active adult town house units and further, EXCEPTING HOWEVER, the Following: any existing privileges or rights of public service companies, provided same will not adversely affect the Buyer's intended use of the Property; otherwise title to the Property shall be good and marketable and insurable without exception by such title company that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located (the "Title Company"), at such Title Company's regular rates. Seller shall provide to the Title Company such releases, documents, indemnities and affidavits (including an affidavit of title) as shall be necessary to permit Buyer to obtain affirmative title insurance against

1

filed and unfiled mechanics liens and shall also provide to the Title Company a form 1099B information return relating to the Property.

(b)     In the event Seller is unable to give good and marketable title such as will be insured by the Title Company as set forth above, Buyer shall have the option (a) of taking such title as Seller can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by Seller with the Title Company whereupon Seller shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if Seller's contest is unsuccessful, or (c) Buyer receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and void, except that Seller shall further reimburse Buyer for its reasonable and actual survey and title examination expenses, if any.

(c)     Seller shall execute and deliver to the Title Company such release, documents, indemnities and affidavits as shall be necessary for the elimination of any standard or printed exceptions in Buyer's final title policy, the exception for filed and unfiled mechanics' liens and the satisfaction of any Internal Revenue Service disclosure and reporting requirements.

4.     **Settlement**.     Settlement ("Settlement") shall be made at the offices of the Title Company or a mutually agreeable location forty five (45) days following final Site Plan approval for between one hundred ten (110) and one hundred twenty (120) age restricted active adult town house units pursuant to Article 16 of the New York Town Law and Town of New Windsor Zoning Code and Site Plan Regulations and the filing of the Final Site Plan with Town of New Windsor Town Clerk and the satisfaction of all of the conditions contained set forth in Section 15, upon at least five (5) business days notice from Buyer to Seller. If said conditions are not satisfied within two (2) years of the date of this Agreement, Buyer or Seller may, at any time thereafter, elect to cancel this Agreement in which event the Deposit shall be returned to the Buyer and the parties shall have no further obligations hereunder.

5.     **Possession**.     Possession is to be given at the time of Settlement, free of all leases and other occupancy, by bargain and sale deed with covenants against grantor's acts.

6.     **Apportionments**.     Taxes shall be apportioned pro rata as of the date of Settlement. Any transfer taxes and "rollback" taxes based on farmland assessment, including interest, shall be the responsibility of Buyer.

7.     **Buyer's Default**.     Should Buyer violate or fail to fulfill and perform any of the terms or conditions of this Agreement after thirty (30) days' written notice from Seller (or ten (10) days' written notice in the event of a monetary default), then the Deposit shall be retained by Seller as Seller's sole and exclusive remedy for such breach as liquidated damages.

8.     **Seller's Default**.     Should Seller violate or fail to fulfill and perform any of the terms or conditions of this Agreement at or prior to Settlement, then Buyer shall be entitled to the return of the down payment or as its sole remedy available to Buyer the right to specifically enforce this Agreement against Seller.

9.     **Condemnation; Casualty**.

(a)     All risk of loss or damage to the Property by casualty of any nature prior to Settlement shall be borne by Seller. Seller shall obtain and maintain casualty and general liability insurance at all times between the date hereof and Settlement.

(b)     If, prior to Settlement, any portion of the Property is condemned or destroyed, Buyer shall have the option of (i) terminating this Agreement, in which event this Agreement shall be null and void and Buyer shall be paid the Deposit, or (ii) proceeding

2

with the Settlement, in which event the entire condemnation or insurance proceeds shall be delivered to Buyer at Settlement hereunder (and, in connection with the foregoing, Seller expressly acknowledges and agrees that the foregoing insurance or condemnation proceeds shall not be applied to restoration of the Property without Buyer's prior written consent, given or withheld in Buyer's sole discretion), or, if they have not yet been paid, the right to receive such proceeds shall be assigned to Buyer at Settlement.

10. **Compliance with Notices, Ordinances.** Any notices or ordinances filed or enacted subsequent to the date of this Agreement by any governing authority for which lien could be filed against the Property are to be complied with at the expense of Buyer if Buyer purchases the Property at Settlement. Any such notices or ordinances filed prior to the date of this Agreement are to be complied with at the expense of Seller.

11. **Brokers.** Buyer and Seller mutually represent to each other that they have dealt with no real estate broker, investment banker, person, firm, or entity that would be able to claim a real estate brokerage fee. Seller and Buyer agree to defend and indemnify each other and hold each other (including any affiliates, subsidiaries and officers) harmless from and against any and all claims, liabilities, losses, damages and expenses (including court costs and attorney's fees) asserted by any and all brokers, salespersons or agents with whom either party has dealt in connection with the sale of the Premises.

12. **Due Diligence Period.** Between the time of execution of this Agreement and Settlement, Seller agrees that Buyer, its representatives and consultants shall, upon Two (2) days notice to the Seller, have the right to enter upon the Property to perform engineering, environmental and such other feasibility studies as Buyer determines in its sole discretion upon the condition that Buyer, its representatives and consultants shall provide Seller with a certificate of insurance naming the Owner and Seller as additional insured. Buyer and Seller further agree that Buyer will be allowed a ninety (90) day due diligence period commencing on the date of the execution of the contract by Buyer and Seller. The due diligence period shall be automatically tolled for any period during which litigation respecting the Property is pending. Should Buyer desire to proceed with this Agreement, Buyer will notify Seller in writing prior to the expiration of the Due Diligence Period. Absent notice by the Buyer to move forward, this Agreement shall be deemed to be cancelled by Buyer in which event the Deposit shall be returned to Buyer and the parties shall have no further obligations hereunder. If Buyer causes damage to the Property as a result of its studies performed pursuant to this section, and Buyer and elects not to purchase Property, Buyer shall reasonably repair such damage. That Buyer shall indemnify and hold the Seller and the Owner safe and harmless with respect to any personal injury or property damage caused by Buyer, its representatives and consultants entering upon the property.

13. **Seller's Representation, Warranties and Covenants.** Seller covenants, represents and warrants to Buyer as Follows:

(a)    Seller is the contract vendee to purchase the Property in fee simple and the Property is not subject to any lease, option, right of first refusal or agreement of sale other then Seller's Contract. Seller has the full power and authority to execute, deliver and perform this Agreement and all agreements and documents referred to in this Agreement. The person who has executed this Agreement on behalf of Seller has the authority to do so.

(b)    There is no action, suit or proceeding pending or threatened against or affecting Seller or the Property or relating to or arising out of the ownership of the Property, including without limitation, general or special assessment proceedings of any kind, or condemnation or eminent domain actions or proceedings of any kind.

(c)    Neither the entering into this Agreement, the consummation of the sale, nor the conveyance of the Property to Buyer, has or will constitute a violation or breach of any of the terms of any contract or other instrument to which Seller is a party or to which Seller is subject.

3

(d)     Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code (the "Code"). Seller shall provide Buyer with an affidavit to that effect in compliance with the Code at or prior to Settlement.

(e)     There are no commitments or agreements which would require Buyer to pay any money or perform any obligation or which would otherwise affect ownership or development of the Property of Buyer.

(f)     No notice by any government or other public authority has been served upon Seller, or anyone on Seller's behalf, relating to violations of any applicable housing, building, safety, fire ordinances or any other laws or ordinances that may be applicable to the subject property.

(g)     Seller's Plans have been provided to Buyer on or before the date of this Agreement, and will be provided, in accordance with Section 1 above and have been, or will be, paid for by Seller, in as much as such plans shall exist or shall hereafter be created.

(h)     To Seller's knowledge there is no environmental, fill or other subsurface condition that will hinder, delay or interfere with the Buyer's development of the Property as contemplated. Seller represents and warrants that it has done nothing to introduce any Hazardous Materials, as defined below, onto the Property. In addition, to the best of Seller's knowledge, no Hazardous Materials exist on the Property or affect the Property. The term "Hazardous Materials" means (A) hazardous wastes, hazardous substances, and toxic materials prohibited or regulated by federal, state or local law, regulation or order, (B) asbestos, (C) oil petroleum products and their byproducts, and (D) polychlorinated biphynls ("PCBs").

(j)     To the best of Seller's knowledge and belief, the plans, approvals and all support documentation including topographical and boundary surveys are accurate. Seller agrees to assign all rights in said plans, approvals and supporting documentation to Buyer.

(k)     Seller shall keep Buyer fully informed of the status of Seller's efforts to obtain the development approvals contemplated hereunder, including providing Buyer written reports bi-monthly (or as may be otherwise requested by Buyer). For the purpose of this Paragraph 13(k), Seller shall send information to the attention of Robert Stout, Operations Manager, 9 Whippany Road, Whippany, New Jersey 07981.

14.     **Operations Pending Settlement**.   Between the date of execution of this Agreement and the date of Settlement:

(a)     Seller represents that to the best of its knowledge the Property shall be maintained in its present state of repair and in substantially the same condition as on the date hereof. If Buyer notifies Seller prior to Settlement that the Property is not in substantially the same condition as of the date (*)

(b)     Seller shall not enter into any lease, agreement of sale, option, or any other agreement or contract affecting the Property, nor shall Seller grant any easements or further encumber the Property, without the prior written consent of Buyer.

(c)     Seller shall comply with all covenants, conditions, restrictions, laws, statutes, rules, laws and ordinances applicable to the Property.

(d)     Seller shall not remove or damage any structures, fixtures, systems, improvements, standing trees, shrubbery, plants, landscaping or topsoil now in or on the Property during the term of this Agreement.

(*) hereof, Seller shall cause the Property to be restored prior to Settlement.

4

15. **Conditions to Buyer's Obligations.**

(a) Buyer's obligation to complete Settlement under this Agreement is expressly conditioned upon the following:

(i) All representations and warranties of Seller herein being true and correct at the time of Settlement;

(ii) Seller having performed all of its covenants and obligations hereunder; and

(iii) The receipt by Seller at Seller's expense of final unappealable site plan approval of the Property for a development consisting of between one hundred ten (110) and one hundred twenty (120) age restricted active adult townhomes, with clubhouse, pool and other amenities common to such developments in the area, subject only to such terms, restrictions and conditions, including without limitation respecting off-tract/off-site improvements required by any Town, County, State and Federal Agency, Board, Statute, Regulation, Resolution and/or Decision as are acceptable to Buyer in its reasonable discretion; and

(iv) The receipt by Seller at Seller's expense of all written agreements, arrangements and other evidence reasonably satisfactory to Buyer to the effect that (a) public sewer treatment hookup and capacity is available on a permanent basis for the effluent from the Property as intended to be developed, (b) sufficient public water hookup and capacity is immediately available to the units intended to be developed on the Property, and (c) electric, gas and other utilities are available at the Property, all at connecting fees and expenses that are not greater than those which are customary and ordinary for similar developments in the County wherein the subject property is located that are in effect on the date of this Agreement; and

(v) The filing of the Site Plan and the receipt by Seller at Seller's expense of all governmental approvals, permits, licenses, variances, certificates, exceptions, authorizations, approvals and changes as may be required to permit the lawful construction, installation, maintenance and operation of the Property as intended by the Buyer.

(vi) The ability to obtain building permits for Buyer's intended use, subject only to the payment of application fees, the preparation of and approval of building plans and installation of roadways, curbs, and any all other requisite public improvements all of which shall be the responsibility of Buyer after the Closing.

(b) The final Site Plan for the Project pursuant to Article 16 of the New York Town Law and Town of New Windsor Zoning Code and Site Plan Regulations and the filing of the Final Site Plan with Town of New Windsor Town Clerk shall be unappealable at the time of Settlement.

(c) The effectiveness of any of the approvals, agreements, permits, licenses or other matters provided for in this Paragraph shall not be subject to any moratorium or litigation.

(d) In the event that any performance money in lieu of land or parkland fees, guarantees and/or inspection escrows are required in order to file the Site Plan, Seller shall do so provided that Buyer shall advance any costs or expenses (in which event Buyer shall promptly replace the guarantees and escrows after Closing) or Buyer

5

shall pay said expenses to Seller at the time of closing. In addition, the Buyer shall provide Seller at Buyer's sole cost and expense the required performance bond within 15 business days of the date of the unappealable final site plan approval

16. **Survival**. Seller shall remain liable after the Settlement for any breach or default of Paragraphs 6, 9, 10, 11, 13 and 14 which existed as of the date of the Settlement. Any covenant, promise or obligation in this paragraph, which is not by expressed language intended to be fulfilled or performed at Settlement, shall not merge into the deed of conveyance but shall remain in full force and effect and be binding on the parties hereto until fully performed or fulfilled.

[Deleted: up to]

17. **Notices**. Any notice required to be given hereunder shall be given in writing and shall be served in person, by nationally recognized express delivery service, by United States registered or certified mail, with postage prepaid, or by facsimile transmission with a hard copy sent the same day by a nationally recognized overnight express delivery service, properly addressed and directed to the party to receive the same at the following address or at such other address as may hereafter be substituted by notice in writing thereof.

Seller:
**KG CORNWALL, LLC.**
**One Shinev Court**
**Monroe, New York 10950**

With copy to
Attorney for the Seller:
**BURTON I. DORFMAN, ESQ.**
**DORFMAN, KNOEBEL & CONWAY, LLP.**
**51 North Broadway**
**Nyack, New York 10960**

Buyer:
Mr. Paul R. Schneier, Division President
Beazer Homes Corp.
275 Phillips Blvd
Trenton, New Jersey 08618
Phone: 609-538-0244   Fax: 609-538-1899

With copy to
Attorney for the Buyer:
Richard S. Israel, Division Counsel
Beazer Homes Corp.
275 Phillips Blvd
Trenton, New Jersey 08618
Phone: 609-538-0244   Fax: 609-858-7415

18. **Entire Agreement**. This Agreement contains the entire agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever. This Agreement may be amended only by a writing signed by both parties.

19. **Assignment**. Buyer may assign its rights under this contract to any party with the prior written approval of Seller, which shall not be unreasonably withheld or delayed. Notwithstanding the preceding sentence, Buyer may assign its rights under this contract to any affiliated entity, or land banking financial partner, without the prior written approval of Seller.

6

20. **Miscellaneous**.

(a) The effective date of the Agreement shall be the date the last party signs the Agreement.

(b) Subject to the Buyer's right to notice and opportunity to cure as provided in Paragraph 7, time shall be of the essence of this Agreement.

(c) This Agreement may be signed in one or more counterparts (or with counterpart signature pages) which, taken together, shall constitute a fully executed Agreement and shall be considered a single document.

(d) Buyer and Seller agree to cooperate with each other and to take such further actions as may be requested by the other in order to facilitate the timely purchase and sale of the Property.

(e) Copies of all municipal, county and state applications, filings with any and all governmental entities and all engineering studies shall also be filed with the attorney for Seller.

(f) The representatives and officers of the Buyer hereby represent, warrant and confirm that they have the authority to execute this Agreement.

(g) Buyer agrees to indemnify Seller from any claims relating to home building or site improvements constructed by the Buyer from the closing forward.

21. **Escrow of Deposit**

(a) The Deposit shall be deposited on or before the date of this Agreement with and shall be held in escrow by BURTON I. DORFMAN, ESQ., DORFMAN, KNOEBEL & CONWAY, LLP., ("Escrow Agent"). The parties and Escrow Agent agree that the deposit shall be applied as follows:

(i) If Settlement is held, the Deposit shall be paid over to Seller and credit to the Purchase Price.

(ii) If the Settlement is not held by reason of Buyer's default, the Deposit shall be paid over to Seller and be retained by Seller as provided in Section 7 above.

(iii) If Settlement is not held by reason of Seller's default, the Deposit shall be paid over to Buyer.

(iv) If Settlement is not held by reason of a failure of condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to Buyer, neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.

(b) Escrow Agent and its partners and employees are acting as agents only, and will in no case be held liable either jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for the non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).

(c) Escrow Agent shall be obligated to disburse the Deposit at Settlement or upon any cancellation or termination of this Agreement, only upon the written instructions of both parties, should Escrow Agent in its sole discretion request such instructions; and in the absence of such instructions or in the event of any dispute, Escrow Agent shall be and is hereby authorized, but not obligated, to pay the entire amount of the Deposit into court, and any expenses to Escrow Agent for so doing shall be payable out of the Deposit. Notwithstanding the foregoing, until the expiration of the Due Diligence Period, Escrow Agent shall be obligated to return the Deposit to Buyer upon unilateral instructions to Buyer.

IN WITNESS THEREOF, the parties hereto have hereunto set their hands and seals the day and first year above written

ATTEST:  BUYER:
       Beazer Homes Corp.

BY: _____  BY: _____
Robert W. Stout  Paul R. Schneier, Division President
Authorized Signatory  Beazer Homes Corp.

       DATE: 5/31/05

ATTEST:  SELLER: KG CORNWALL, LLC.

BY: _____  BY: _____
       JOHN KARGER,
       MANAGING MEMBER
       DATE: 5/26/05

8

## JOINDER BY AS ESCROW AGENT

BURTON I. DORFMAN, ESQ., DORFMAN, KNOEBEL & CONWAY, LLP., the Escrow Agent named in the foregoing Agreement of Sale, hereby joins in such Agreement to evidence its agreement to hold the Deposit, and otherwise to perform its obligations as escrow agent, all as provided for in Section 21.

By: _____
Name: Burton I. Dorfman, Esquire
Title: Partner
Date of Execution: 5/26/05

9

EXHIBIT "A"

DESCRIPTION OF PROPERTY

The proposed property is located in the township of New Windsor in Orange County, NY. The property is known as Lots 65-1-56.1 and 65-1.51.11 and is located between Mt. Airy Road and Dean Hill Road surrounding Benedict Pond.

10