# ARGUMENT

# I

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED IN ALL RESPECTS AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A. Summary Judgment Standard

The Affirmation of Abraham Goldberger dated January 9, 2007' the Affidavit of David Ellner, dated January 9, 2007 along with the admissions contained in the Stout Affidavit together with supporting exhibits together with this Memorandum clearly establishes "…there is no genuine issue as to any matter of fact.." and that KG is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (b) and (c); see also Celotex Corp. v. Catrett, 477 U.S.317, 323. Plaintiff's have set forth allegations supported by irrefutable documentation to warrant the denial of Defendant's motion for Summary Judgment. The Documents as well as the affidavits including Stout's affidavit and this Memorandum clearly establish that Defendant is not entitled to Summary Judgment as a matter of Law.

B. **Plaintiff should be granted Summary Judgment against Defendant in the sum of $150,000 on the First Count of Complaint**

The Contract required a "Deposit" in the form of a letter of credit in the sum of $150,000 or 1.5% of the Contract price to be held pending closing or a default of either party (¶¶2 and 21, Exh.G.). That immediately after Beazer waived due diligence (Exhibit "K") Beazer delivered to KG's attorney as escrow agent the Deposit (¶2, Exhibit "A") an irrevocable standby letter of credit dated September 30, 2005 issued by JP Morgan Chase in the sum of $150,000, listing the beneficiary as KG (Exhibit "L"). That Stout has conceded that the Letter of Credit expired by its terms on October 1, 2006 (¶19, Stout Affidavit), and neither Beazer nor Stout has set forth an excuse and/or a reason why Beazer failed to extend the Letter of Credit as required (¶¶2 and 21, Exhibit "A").

That the failure to extend this letter of credit constituted an anticipatory breach of the contract provision to maintain the deposit and KG is entitled to $150,000 money judgment as a matter of law.

In the leading case of <u>Maxton Builders, Inc. v. LoGalbo,</u> 68 N.Y.2d 373, 509 N.Y.S.2d 507, in a fact situation similar to the case at bar, where the defendants stopped payment on the check which was equivalent to allowing the letter of credit to lapse;

> The plaintiff contracted to sell a house to the defendants and accepted a check for the down payment. When the defendants canceled the contract and stopped payment on the check, the plaintiff sued for a breach claiming a right to the down payment-a right traditionally allowed in this State under the rule set forth in <u>Lawrence v. Miller, 86 N.Y. 131.</u> The trial court denied plaintiff's motion for summary judgment holding that a fact question was presented as to whether recovery of the down payment would constitute a penalty under the circumstances. The Appellate

11

      Division modified and granted summary judgment to the plaintiff for the amount of the down payment

And, in reliance on Maxton the New Yorks have consistently held "It is well-settled law "that a vendee who defaults on a real estate contract without lawful excuse[ ] cannot recover the down payment" especially where as in the case at bar, "...defendants breached the purchase contract and proffered no legally cognizable excuse for doing so ..." <u>Gillette v. Meyers</u>, 42 A.D.3d 654, 655, 839 N.Y.S. 2d 584, 585 (see also, <u>New Colony Homes, Inc. v. Long Island Property Group, LLC,</u> 21 A.D.3d 1072, 803 N.Y.S.2d 615, <u>Verrolla v. Beechwood Carmen Building Corp.,</u> 43 A.D.3d 913, 841 N.Y.S.2d 610; <u>Uzan v. 845 UN Ltd. Partnership</u>, 10 A.D.3d 230, 778 N.Y.S.2d 171).

    More importantly, it is quite clear that the failure of Beazer to extend the Letter of Credit on October 1, 2006, constituted an anticipatory breach of the contract of sale. As a result of same KG is entitled to summary judgment on the first count in the amount of $150,000 the amount of the required down payment and any purported non-existent "failure to perform" by KG "...was **excused** by buyer's anticipatory breach..." <u>Old Orchard Development, LLC v. Marrano/Marc Equity Corp.,</u>45 A.D.3d 1497, 846 N.Y.S.2d 529 (see also, <u>Sutton v. Santora,</u> 87 A.D.2d 796, 449 N.Y.S.2d 503).

### C. Plaintiff should be granted a liability verdict on the Second, Third and Fourth Counts and a hearing should be scheduled to determine damages in excess of $150,000 set forth in Liquidated Damages Clause

KG cannot use the liquidated damages clause as both a sword and a shield when it is willfully violated the terms of the contract and unlawfully converted the proceeds of the letter of credit and fraudulently removed the proceeds from escrow.

Initially in the recent decision of Collar City Partnership I v. Redemption Church of Christ of the Apostolic Faith, 235 A.D.2d 665, 667, 651 N.Y.S.2d 729, the Court found that the Seller as Plaintiff in the case at bar was entitled to far in excess of the liquidated damages where as in the 1.5% deposit in the case at bar, the down payment was clearly inadequate, "In any event, we also agree with Supreme Court's conclusion that this liquidated damages clause is unconscionable as being unreasonably disproportionate to probable loss in the event of a **breach** ... and, therefore, unenforceable"

Defendants' argument that "...a misrepresentation of an intention to perform a contractual obligation is an insufficient basis for a fraud claim " (p.9, Defendant's Mem.), is simply correct. In Richmond Shop Smart, Inc. v. Kenbar Development Center, LLC., 32 A.D.3d 423, 424, 820 N.Y.S.2d 124, 126 in a case strikingly similar to the case at bar, the Appellate Division held,

> Contrary to the defendant's contention, the complaint and supporting material also stated a cause of action to recover damages for fraud. "In an action to recover damages for fraud, the plaintiff must prove a representation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury"... The plaintiff

adequately alleged these elements by setting forth factually-based claims that the defendant engaged in a scheme to induce the plaintiff to terminate its lease and surrender possession of the leasehold premises prematurely in reliance upon fraudulent misrepresentations and omissions by the defendant. Accordingly, the fraud cause of action is not duplicative of the breach of contract claim and is not subject to dismissal on that basis

## II. DEFENDANT'S MOTION FOR DISQUALIFICATION SHOULD BE DENIED

Defendants' motion to disqualify Mr. Dorfman and the Dorfman firm should be denied in its entirety. Mr. Dorfman never represented Defendants. The Contract is clear with respect to Mr. Dorfman's role as Escrow Agent. Mr. Dorfman retains the useless letter of credit in escrow that by Mr. Stout's admission Beazer allowed to lapse.

Although Beazer's counsel alleges Mr. Dorfman "ought" to be the attorney, Mr. Dorfman is not being called as a witness by KG nor has Mr. Dorfman been named as a potential witness by Beazer (Exhibit "V"). Beazer has evidently sought summary judgment and KG has sought summary judgment, without the necessity of an affidavit from Mr. Dorfman.

Mr. Dorfman represented KG at closing as Seller's attorney and as escrow agent.

That the Contract of sale prepared by Beazer's counsel specifically provided in paragraph "21 (b)" as follows;

> Escrow Agent and its partners and employees are acting as agents only, and will no case be held liable wither jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for non-performance hereof, nor shall Escrow Agent be required or obligated to provide any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21).

14

Mr. Dorfman signed the Complaint on March 14, 2007 (Exhibit "A"). On June 11, 2007 your Mr. Dorfman submitted Rule 26 Disclosure Statement wherein he provided all documents pertaining to the underlying litigation. Mr. Dorfman, participated in numerous mediation sessions.

In the recent decision of <u>Solow v. Conseco, Inc.</u>, 2007 WL 1599151 (S.D.N.Y), the Court denied a motion to disqualify Defendants' counsel in a case with claims of fraud as in the case at bar and the claims of disqualification were based on representation that counsel made on behalf of Defendants in prior actions.

In <u>Solow, supra.</u>, the legal standard to disqualify counsel;

> A federal court's decision of whether to disqualify counsel "must ultimately be guided by the goal of a trial process that lacks any hint of a taint." <u>Skidmore, 2001 WL 504876, at *2</u>. With rare exceptions, disqualification is generally ordered in two kinds of cases. See<u>Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.1979)</u>. First, where an attorney's conflict of interest in violation of Code of Professional Responsibility Canons 5 and 9 undermines the court's confidence in the attorney's representation of his client. [FN3]See*id.* Second, where the attorney is, at least potentially, in a position to use privileged information gained from the other side through prior representation, giving the present client an unfair advantage. See*id.* "[U]nless an attorney's conduct tends to taint the underlying trial by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney." <u>Nyquist, 590 F.2d at 1246</u> (internal quotation marks and citation omitted).

The movant in <u>Solow, supra.</u>, made claims that under "the advocate-witness" rule disqualification was required due to the fact that it was alleged that Defendant's counsel "…will give testimony adverse to Defendants…". In case at bar neither Plaintiffs nor defendants have listed Mr. Dorfman as a witness but claim he "ought" to be a witness (Exh. V).

15

in Solow, supra., the Court set forth the legal standard with respect to "the advocate-witness" rule;

> "To succeed on a motion to disqualify an attorney under Disciplinary Rule 5-102(b), a movant must show that the adverse attorney's testimony is both necessary and substantially likely to be prejudicial to the attorney's client." Cabble v. Rollieson, No. 04 Civ. 9413(LTS)(FM), 2006 WL 464078, at *4 (S.D.N.Y. Feb. 27, 2006); see also April Broadcasting, Inc. v. Smith, No. 95 Civ. 7664(LMM), 1996 WL 137487, at *5 (S.D.N.Y. Mar. 27, 1996). In assessing necessity, courts consider such factors as "the significance of the matters as to which the attorney's testimony is sought, the weight of the testimony, and the availability of other evidence." Cabble, 2006 WL 464078, at *4. The rule requires that a "lawyer's testimony be necessary, not simply that it be the best evidence," and to that end, "courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue." Id. at *5 (internal citations omitted).

More importantly, in Solow, supra., as in the case at bar found as this Court should in the case at bar that the movant has not and cannot meet the 'high standard of proof' in disqualifying the Dorfman firm. More importantly, it should be quite evident that in the event Mr. Dorfman testified, although no one at this point has disclosed that they intend to call him as witness will certainly not be prejudicial to his client. Moreover, the documentary evidence coupled with the affidavits submitted by both Plaintiff and Defendant make it evident that "other witnesses" can supply the same testimony (see Goldberger Affirm; Ellner Affid; Stout Affid; Exhibits).

Finally what is evident that it appears that the instant application is made for tactical reasons to delay litigation and not as a result of an inducement to delay as indicated in the moving papers. It is highly unusual that Defendant's move for partial summary judgment requiring a response from the same attorneys they seek to disqualify. Clearly, one must review the definition of "prejudicial" set forth in Solow, supra.;

16

For testimony to be prejudicial, "the 'projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." ' *Occidental Homes Mgmt. B.V. v. Westbrook Allegro, LLC*, 440 F.Supp.2d 303, 314 (S.D.N.Y.2006) (quoting *Lamborn*, 873 F.2d at 531). "[T]he moving party bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." *Id.*

"[A] party moving for disqualification carries a 'heavy burden,' and must satisfy a 'high standard of proof.' " *Cabble*, 2006 WL 464078, at *3 (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983); *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978)). "Disqualification motions are often brought for tactical reasons, and even when made in good faith, delay litigation." *See Occidental Hotels*, 440 F.Supp.2d at 309 (internal citations omitted). In evaluating motions to disqualify counsel, a federal court balances a client's right to freely choose his counsel against the need to maintain the standards of the legal profession. *See id.* at 791 (quoting *Gov't of India*, 569 F.2d at 739).

*5 Moreover, "[d]isqualification motions premised upon the advocate-witness rule are subjected to strict scrutiny because of the strong potential for abuse when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel." *Paramount Comm., Inc. v. Donaghy*, 858 F.Supp. 391, 394 (S.D.N.Y.1994) (internal citations and quotations omitted); *see also Lamborn*, 873 F.2d at 531 ("Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under subdivision (B)." (internal citations omitted)).

## CONCLUSION

Therefore, it is respectfully requested that this Court (i) grant KG's Cross-Motion for summary judgment on KG's Complaint (Exhibit "A") and (ii) deny Defendant BEAZER HOMES CORP.'s ("Beazer") motion for partial summary judgment of the second, third and fourth count contained in KG's Complaint (Exhibit "A") and for disqualification of KG's counsel.

17

Dated: Nyack, New York
January 9, 2008

DORFMAN, KNOEBEL, CONWAY,
FURY & GRIFFIN, LLP.

By_____
KEVIN CONWAY ( KG3347 )

k.conway@dkcllp.com

51 North Broadway

Nyack, New York 10960

(845)353-3500

Attorneys for Plaintiff

TO:

ERIC D. SHERMAN, ESQ.
LUISA K. HAGEMEIER

PRYOR CASHMAN LLP

410 Park Avenue

New York, New York 10022

(212) 421-4100

Attorneys for Defendant