UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KG CORNWALL, LLC : Index No. 07 Civ. 2881 (CLB)
:
                Plaintiff, : **AFFIDAVIT OF ROBERT**
: **STOUT IN FURTHER**
    -against- : **SUPPORT OF DEFEN-**
: **DANT'S MOTION FOR**
: **PARTIAL SUMMARY**
: **JUDGMENT AND DIS-**
BEAZER HOMES CORP. : **QUALIFICATION AND IN**
: **OPPOSITION TO PLAIN-**
                Defendant. : **TIFF'S CROSS-MOTION**
------------------------------------------------------------X **FOR SUMMARY JUDGMENT**

STATE OF NEW JERSEY  )
                          ) ss.:
COUNTY OF MERCER    )

ROBERT STOUT, being duly sworn, deposes and says:

1. I am, and was at all times during the events at issue in this litigation, the Executive Vice President/Operations Manager of defendant Beazer Homes Corporation (Beazer). I worked directly on the matters at issue in this litigation, specifically, the contemplated purchase by Beazer of a tract of land from KG Cornwall, LLC (KG) in New Windsor, New York (the Property). As such, I am fully familiar with the facts and circumstances addressed herein, except where I indicate that a statement is made upon information and belief. Where a statement is made upon information and belief, it is based upon my personal knowledge of the books and records of Beazer.

2. I respectfully submit this affidavit in further support of Beazer's motion for partial summary judgment dismissing KG's conversion and misrepresentation claims and its demand for damages of $5 million, and in opposition to KG's cross-motion for summary judgment on all causes of action in its Complaint. My statements herein respond, among other things, to

allegations made in the Affirmation of Abraham Goldberger, affirmed Jan. 9, 2008 (Goldberger Aff.) and the Declarations of David Ellner and Kevin Conway, dated January 9, 2008 (Ellner Decl. and Conway Decl.).

3. Abraham Goldberger has alleged that he, his "attorney" (unnamed) and John Karger advised me and other unnamed "representatives" of Beazer, that "the Benedict Pond Agreement was assigned to me [Goldberger] and that Benedict Pond consented to the Assignment to my company and more importantly that I [Goldberger] would execute a termination of the Memorandum at the time the Property was conveyed by Benedict Pond." Goldberger Aff. ¶ 16.

4. I *deny* that *anyone*, including without limitation Goldberger, Karger, Dorfman or anyone else from his firm, so advised me or had any discussion of any kind with me about the contract between Benedict Pond and Sungold Holding, Inc., dated March 7, 2003 (referred to herein, as in all of Beazer's papers, as the Sungold Contract) or the memorandum of contract relating thereto, or the recorded Memorandum of Contract in Orange County. As far as I know, no one at or on behalf of KG every explained what the Sungold Contract was or why it remained on record if had no meaning, as KG now claims.

5. Goldberg also alleges in his Affirmation that, shortly after the Site Plan Approval was obtained for the Property, I told him and Karger that Beazer was reevaluating all of its projects and would not close on the Property unless KG renegotiated the Agreement and lowered the price. Goldberger Aff. ¶ 30. Again, I *deny* the allegation that I ever made such a statement or any other comment that could possibly have been interpreted to have that meaning.

2

PAGE 3/5 * RCVD AT 1/14/2008 4:15:41 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6354 * CSID: * DURATION (mm-ss):01-44

6. The *only* time the subject of renegotiating the price of the Property arose was at some point *after* Beazer terminated the Agreement on February 21, 2007, and before KG brought this lawsuit. Notably, it was KG that initiated this discussion.

7. Goldberger states at several points throughout his Affirmation that he and others at KG always believed that the letter of credit being held in escrow had been "extended." While I cannot comment on what they believed, I can state that I never made any representations to anyone at KG about the letter of credit. Furthermore, no one at or on behalf of KG, including the Escrow Agent, Mr. Dorfman, ever even asked me about the status of the letter of credit.

8. Goldberger alleges that Beazer "waived" any objection to the Sungold Contract when it stated that it had completed due diligence and intended to go forward with the purchase of the Property. This allegation is false and preposterous. The inquiry was still outstanding, and Beazer was still waiting for an explanation when Beazer indicated it had completed due diligence. The Agreement expressly provided that KG was required to convey title consistent with the Agreement's requirements, that delivery of such title was a condition of Beazer's obligation to close, and that Beazer had the option of terminating the Agreement if KG was "unable to give good and marketable title." KG represented that it had such title and would convey such title at closing. The requirement that all title defects be cleared by the closing was absolute and continuing, and Beazer never waived it by words, deeds or otherwise.

9. KG claims that Allen Frank, Jr., Esq. was Beazer's attorney "for the sole purpose of due diligence review." Though it is unclear why KG finds it relevant to state that Mr. Frank's representation was so limited, I must note that it was not. Mr. Frank was retained not only for due diligence, but to represent Beazer in all aspects of the transaction with KG with respect to the Property.

3

DATED:   New York, New York
January 16, 2008

_____
ROBERT STOUT

Sworn to before me this
14th day of January 2008

_____
Notary Public

CHRISTINE MARIE PAYNE
Notary Public
State of New Jersey
My Commission Expires Oct 5, 2012

4

PAGE 5/5 * RCVD AT 1/14/2008 4:15:41 PM [Eastern Standard Time] * SVR:NY21/7 * DNIS:6354 * CSID: * DURATION (mm-ss):01-44