UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KG CORNWALL, LLC                                    :
                                                    :       Index No. 07 Civ. 2881 (CLB)
                            Plaintiff,              :
                                                    :
            -against-                               :
                                                    :
                                                    :
                                                    :
BEAZER HOMES CORP.                                  :
                                                    :
                            Defendant.              :
--------------------------------------------------------------------X

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISQUALIFICATION OF COUNSEL AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022

*Attorneys for Defendant Beazer
Homes Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

I.  THE COURT SHOULD GRANT BEAZER'S MOTION TO DISMISS KG'S CLAIMS FOR CONVERSION, "MISREPRESENTATION" AND $5 MILLION DAMAGES ................................................................................................... 2

    A.  Conversion ............................................................................................. 2

    B.  Misrepresentation .................................................................................. 3

    C.  Demand for Damages in Excess of Contractual Limitation ................... 4

II.  KG'S CROSS-MOTION SHOULD BE DENIED IN ITS ENTIRETY ........... 4

    A.  Beazer Fulfilled its Obligations with Respect to the Deposit ................ 5

        1.  Beazer Was Not Obligated to "Maintain" the LOC ........................ 5

        2.  KG May Not Declare an Anticipatory Breach Based on the LOC .. 7

    B.  Beazer Rightfully Terminated the Agreement ....................................... 8

        1.  Sungold Did Not Assign Its Rights Under the Sungold Contract .... 9

        2.  The Fiduciary Title Insurance Policy Proves Nothing ................... 11

        3.  Beazer Was Not Obligated to Submit a Title Report to KG ......... 12

        4.  Beazer Was Entitled to Terminate Immediately .......................... 13

III.  BEAZER'S MOTION FOR DISQUALIFICATION SHOULD BE GRANTED .......... 13

    A.  Dorfman and the Firm Should Be Disqualified Under DR 5-102 ........... 13

    B.  Disqualification Is Warranted Under DR 5-101 ................................... 14

CONLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(s)**

Automobile Coverage, Inc. v. American International Group,
    42 A.D.3d 405, 839 N.Y.S.2d 916 (1st Dep't 2007)............................................................2

Blue Cross & Blue Shield v. Philip Morris, Inc.,
    53 F. Supp. 2d 338 (E.D.N.Y. 1999) ............................................................13

Colavito v. N.Y. Organ Donor Network, Inc.,
    8 N.Y.3d 43 (2006) ............................................................2

Dunkin' Donuts, Inc. v. Barr Donut, LLC,
    242 F. Supp. 2d 296 (S.D.N.Y.2003)............................................................2

Felix v. Balkin,
    49 F. Supp. 2d 260 (S.D.N.Y. 1999)............................................................13

Gadsden v. Jones Lang Lasalle Americas, Inc.,
    210 F. Supp. 2d 430 (S.D.N.Y.2002)............................................................3

Henrich v. Phazar Antenna Corp.,
    33 A.D.3d 864, 827 N.Y.S.2d 58 (2d Dep't 2006)............................................................7

Maxton Builders, Inc. v. LoGalbo,
    68 N.Y.2d 373, 509 N.Y.S.2d 507 ( ), cited by KG............................................................8

Mendelovitz v. Cohen,
    37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2004)............................................................4

Millus v. D'Angelo, 224 F.3d 137 (2d Cir.2000)............................................................3

National Union Fire Insurance Co. Pittsburgh v. Proskauer Rose Goetz & Mendelsohn,
    165 Misc. 2d 539, 634 N.Y.S.2d 609 (Sup. Ct. N.Y. Co. 1994) ............................................................14

RM 14 FK Corp. v. Bank One Trust Co., N.A.,
    37 A.D.3d 272, 831 N.Y.S.2d 120 (1st Dep't 2007)............................................................7

Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.,
    1 N.Y.3d 470, 775 N.Y.S.2d 765 (2004) ............................................................7

W.W.W. Associates v. Giancontieri,
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ............................................................6

Defendant Beazer Homes Corporation (Beazer), by its attorneys, Pryor Cashman LLP, respectfully submits this memorandum of law in further support of its motion for partial summary judgment dismissing plaintiff KG Cornwall, LLC's (KG) claims for conversion, misrepresentation and damages of $5 million and in opposition to KG's cross-motion for summary judgment on all claims.

## PRELIMINARY STATEMENT

KG cannot point to a single fact sufficient to defeat Beazer's motion for partial summary judgment dismissing KG's claims for conversion, "misrepresentation" and damages of $5 million, yet it has seen fit to cross-move for summary judgment in its favor on these claims. Because the claims have no factual or legal basis whatsoever, Beazer's motion for summary judgment dismissing these claims should be granted and KG's cross-motion should be denied.

KG's cross-motion should also be denied to the extent it relates to KG's claims for breach of contract. Although Beazer believes that this Court should, upon searching the record, actually conclude that the undisputed facts warrant summary judgment dismissing those claims, at the very least, there are factual disputes precluding summary judgment in KG's favor.

Finally, KG has not presented reasons sufficient to defeat Beazer's motion for disqualification of Dorfman and the Firm as litigation counsel to KG in this matter. KG's contentions to the contrary, for the reasons stated in Beazer's moving papers and in these reply papers, disqualification is warranted pursuant to the advocate-witness rule codified in DR 5-102 of the New York Lawyer's Code of Professional Responsibility (Code) as well as the conflict of interest rule codified in DR 5-101.

## I.

### THE COURT SHOULD GRANT BEAZER'S MOTION TO DISMISS KG'S CLAIMS FOR CONVERSION, "MISREPRESENTATION" AND $5 MILLION DAMAGES

KG has failed to controvert the undisputed facts establishing Beazer's entitlement to summary judgment dismissing KG's claims for conversion, misrepresentation and damages of $5 million, and has also failed to identify any material facts presenting a genuine dispute for trial regarding these claims. Accordingly, these claims should be dismissed.

### A.    Conversion

KG does not dispute the proposition that the breach of a contractual provision, including a provision concerning deposits held in escrow, does not give rise to a cause of action for conversion. See, e.g., Automobile Coverage, Inc. v. American Int'l Group, 42 A.D.3d 405, 407, 839 N.Y.S.2d 916, 917 (1st Dep't 2007) (wrongfully directing escrow agent to withhold deposit from plaintiff was breach of contractual obligation to return money, not conversion), cited in Memorandum of Law in Support of Beazer's Motion for Partial Summary Judgment (Beazer Mem.), at 8. Indeed, KG's claim for anticipatory breach of contract is based on the same conduct alleged to constitute a conversion. KG's conversion claim fails on this basis alone.

Moreover, even if it were legally possible to plead a conversion claim based on an alleged breach of contract, which it is not, KG has failed to identify any facts that could satisfy the elements of conversion. Specifically, there are no facts in the record from which it could be inferred that Beazer intentionally assumed or exercised control over property belonging to KG. See Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43 (2006) (elements of conversion).

2

Here, the property allegedly "converted," the Deposit, was not KG's property. The Deposit was being held in escrow, and was not anyone's property until and unless contractually-delineated conditions occurred or did not occur. Furthermore, it is impossible to infer from any facts that Beazer "intentionally assumed or exercised control" over the Deposit: it is undisputed that the letter of credit (LOC) expired by its terms, which were apparent on the face of the instrument. <u>See</u> Affidavit of Robert Stout, sworn to Dec. 27, 2007 (Stout Aff.) Ex. C. Contrary to KG's erroneous allegations, moreover, the Agreement neither provided for nor did KG demand its extension, renewal or replacement at any time prior to the termination of the Agreement.

**B.    <u>Misrepresentation</u>**

Not only has KG failed affirmatively to identify a single "misrepresentation" by Beazer in support of its "misrepresentation" claim, it also has failed to controvert, and has therefore admitted, Beazer's factually-based assertion that "[B]eazer has never made any misrepresentations to KG or wrongfully took any property or funds rightfully belonging to KG." <u>See</u> Beazer 56.1 Statement ¶ 24; KG Rule 56.1 Counterstatement ¶ 24. <u>See</u> <u>Gadsden v. Jones Lang Lasalle Ams., Inc.</u>, 210 F. Supp. 2d 430, 438 (S.D.N.Y.2002) ("[c]ourts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party."); <u>Millus v. D'Angelo</u>, 224 F.3d 137, 138 (2d Cir.2000) (summary judgment appropriate in light of non-moving party's failure to comply with Local Rule 56.1(b)); <u>Dunkin' Donuts Inc.</u>, 242 F. Supp. 2d at 298 (facts deemed admitted because non-moving party did not submit proper counter-statement of facts and did not include citations to evidence in statement it did submit).

Furthermore, as argued in Beazer's moving papers, the allegation that Beazer misrepresented its intent to perform its obligations under the Agreement is an insufficient basis for a claim sound in fraud. See e.g., Mendelovitz v. Cohen, 37 A.D.3d 670, 830 N.Y.S.2d 577 (2d Dep't 2004); Beazer Mem., at 9 (citing additional cases).

### C.    Demand for Damages in Excess of Express Contractual Limitation

KG has provided no basis whatsoever for its demand for $5 million in damages, or for overriding the Agreement's express limitation of remedies. See Stout Aff. Ex. B, Agreement § 7 ("Deposit shall be retained by Seller as Seller's sole and exclusive remedy for [Buyer's] breach"). KG actually endorses the existence and validity of this provision, singling it out for inclusion in its Statement of Undisputed Facts (KG 56.1 Statement). See KG 56.1 Statement ¶ 8.

## II.

### KG'S CROSS-MOTION SHOULD BE DENIED IN ITS ENTIRETY

KG'S cross-motion for summary judgment on all claims should be denied in its entirety. As an initial matter, far from establishing its entitlement to summary judgment on its claims for conversion, misrepresentation or damages of $5 million, as shown in Beazer's moving papers and as further discussed above, KG has not pointed to a single issue of disputed fact that would even warrant sending these claims to trial.

In addition, KG has not established that it is entitled to summary judgment on its claims for breach of contract, which appear to be two-fold. First, it contends that Beazer's failure to spontaneously replace, renew or extend the LOC after its expiration date constituted an anticipatory breach of the Agreement. Second, KG contends that Beazer breached the Agreement by refusing to close on the Property at the Time of the Essence Closing set by KG,

because, according to KG, there was no defect in title entitling Beazer to terminate the

Agreement.  KG's motion for summary judgment should be denied as to both claims.

**A.**      **Beazer Fulfilled its Obligations with Respect to the Deposit**

KG's claim that Beazer's failure to spontaneously and voluntarily replace, renew or

extend the LOC when it expired constituted an anticipatory breach of contract is without merit

and is not supported by the record.  Contrary to KG's allegation – which it actually attempts to

pass off as an undisputed fact -- Beazer was *not* obligated under the Agreement to "maintain" the

LOC until the closing or any other date.  Moreover, even if it had such an obligation, which it did

not, KG cannot assert a default or breach on this ground, because KG never gave Beazer written

notice that it considered it to be in default and an opportunity to cure, as required by the

Agreement.  See Stout Aff. Ex. B, Agreement § 7.   Finally, Beazer's failure to replace, renew or

extend the LOC could not be interpreted as an anticipatory breach under any circumstances,

because it was not the clear, definite statement of an intent not to perform that is required to

declare an anticipatory breach.

**1.**      **Beazer Was Not Obligated to "Maintain" the LOC**

KG erroneously alleges, and disingenuously asserts as an "undisputed fact," that Beazer

was obligated under the Agreement "to continue extending the [LOC] until the closing or

Beazer's default at which time the Deposit was required to be released to KG."  KG Rule 56.1

Statement ¶ 15; see also KG Rule 56.1 Counterstatement ¶¶ 2, 21; Goldberger Aff. ¶ 23.   Far

from "undisputed," this fact is belied by the Agreement itself.

***The Agreement does not require Beazer to replace, renew or extend the LOC***.  Stout

Aff. Ex. B, Agreement § 2 (a).  Beazer's *sole* obligation with respect to the Deposit was to

"deliver to the Escrow Agent . . . a letter of credit in the sum of $150,000 (such amount shall

hereinafter be referred to as the 'Deposit'), to be held in escrow." Stout Aff. Ex. B, Agreement §

2(a).

Beazer undisputedly performed this obligation. See Beazer 56.1 Statement ¶¶ 2-3; Stout

Aff. Ex. B, Agreement §§ 2, 21; KG 56.1 Counterstatement ¶ 2; KG 56.1 Statement ¶ 14. The

LOC's expiration date was apparent on the face of the instrument. Stout Aff. Ex. C, LOC, at 1;

KG 56.1 Counterstatement ¶ 20; KG 56.1 Statement ¶ 15. KG does not allege that it ever

objected to the terms of the LOC, demanded an instrument with a longer duration or requested

that the Agreement be amended to require Beazer to replace, renew or extend the LOC if it

expired prior to the completion of the transaction or the termination of the Agreement. KG has

not disputed the fact that it never asked Beazer to replace, renew or extend the LOC at any time

prior to Beazer's February 21, 2007 termination of the Agreement. See Beazer Rule 56.1

Statement ¶ 21; KG Rule 56.1 Counterstatement ¶ 21.

Beazer does not cite, and research has not uncovered, any authority for the proposition

that a court will or should imply a requirement to replace, renew or extend a financial instrument

that expires by its terms, where the contract does not expressly state such a requirement, but only

requires a party to make its deposit in the form of that financial instrument.

The well-accepted principles of contract construction dictate exactly the opposite

conclusion. It is a "familiar and eminently sensible proposition of law [] that, when parties set

down their agreement in a clear, complete document, their writing should . . . be enforced

according to its terms." W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d

440 (1990) (citation omitted). This is especially true in the context of real estate transactions,

"where commercial certainty is a paramount concern, and where . . . the instrument was

negotiated between sophisticated, counseled business people negotiating at arms length." See

<u>Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.</u>, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767 (2004) (citations omitted). In such circumstances, "the court should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include," and "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." <u>Id.</u> (citations omitted); <u>see</u> <u>RM 14 FK Corp. v. Bank One Trust Co., N.A.</u>, 37 A.D.3d 272, 274, 831 N.Y.S.2d 120, 123 (1st Dep't 2007); <u>Henrich v. Phazar Antenna Corp.</u>, 33 A.D.3d 864, 866, 827 N.Y.S.2d 58, 60 (2d Dep't 2006).

It is no mystery that letters of credit are generally issued for a closed duration and thus, almost by definition, have an expiration date. If the parties had intended to impose an ongoing obligation on Beazer to maintain the LOC, they would have made this a term of the Agreement. This is easily done, requiring little more than the insertion of a single word, such as "evergreen," or a phrase such as, "which Beazer shall maintain in full force and effect pending consummation of the transaction or termination of the Agreement." The parties, both sophisticated in real estate matters and advised by counsel, chose not to include such a term. Accordingly, the Court should enforce the Agreement as written and should not imply terms that the parties did not see fit to include.

### 2. <u>KG May Not Declare an Anticipatory Breach Based on the LOC</u>

In any event, even if Beazer had an obligation under the Agreement to "maintain" the LOC after its expiration date, which it did not, KG may not assert anticipatory breach based on its failure to do so, because KG did not comply with the contractual notice and cure requirements prior to declaring a default. In the event of a "monetary default" by Beazer, KG was expressly required to give Beazer ten days' written notice and an opportunity to cure before declaring a

breach entitling it to the Deposit.  Stout Aff. Ex. A, Agreement § 7; KG Rule 56.1 Statement ¶ 8.[1]    KG has not even alleged that it ever did so, and therefore, even if Beazer had the obligation to replace, renew or extend the LOC, KG would barred under the Agreement from declaring a default on this basis.

### B.    <u>Beazer Rightfully Terminated the Agreement</u>

Under the Agreement, KG was required to convey "good and marketable" title to the Property "free and clear of all liens, encumbrances, restrictions, and easements" and insurable without exception by a title company selected by Buyer.  Beazer 56.1 Statement ¶ 6; Stout Aff. Ex. B, Agreement § 3 (a). To prevail on its claim that Beazer breached the Agreement by refusing to close at the Time of the Essence Closing scheduled by KG, KG would have to prove that it was able to convey title consistent with the requirements of the Agreement at that time. The evidence establishes that KG could not do that, or , at the very least, creates a genuine dispute as to whether it could.  At that time of the closing, the Memorandum of Contract of Sale and the Contract of Sale between Benedict Pond of New Windsor, LLC (Benedict Pond) and Sungold Holding, Inc. (Sungold and the Sungold Contract) still existed and remained on record in Orange County, New York.  Beazer had notified KG of the existence of the Sungold Contract in September 2005, Stout Aff. ¶ 13, yet despite ample time to do so,  KG never discharged or terminated the contract, removed the Memorandum of Contract from the Orange County Clerk's records or even gave Beazer the requested explanation.[2]

---

[1] Furthermore, the facts here are completely distinguishable from those in <u>Maxton Builders, Inc. v. LoGalbo</u>, 68 N.Y.2d 373, 509 N.Y.S.2d 507, cited by KG in support of its anticipatory breach claim, <u>see</u> KG Mem., at 11.  In Maxton, the defendant actively and intentionally stopped payment on its deposit check, whereas here the LOC expired by its own terms, and not by virtue of any act or omission by Beazer in contravention of its obligations under the Agreement.

[2] Stout categorically denies KG's allegation that Goldberger, Dorfman and Karger advised Stout and some unnamed individuals at Beazer that the Sungold Contract had been assigned to Goldberger, that Benedict Pond had consented to the Assignment and that Goldberger and KG would execute a termination of the Memorandum of Contract at the

### 1.    Sungold Did Not Assign Its Rights Under the Sungold Contract

In support of its summary judgment motion, KG submits a series of documents by which it contends Sungold assigned its rights under the Sungold Contract to KG and terminated the Sungold Contract. It has also proffered an affidavit from the title closer who issued KG title insurance on the Property, alleging that this policy constitutes proof that KG was able to convey title satisfying the terms of the Agreement.

KG's submissions and the undisputed facts actually give rise to exactly the *opposite* conclusion – that Beazer *rightfully* terminated the Agreement based on the continued existence of the Sungold Contract and the continued recordation of the Memorandum of Contract in Orange County. Even if the Court chooses not to search the record and award judgment to Beazer *dismissing* this claim, there are, at the very least, factual disputes precluding the award of summary judgment in KG's favor on this claim.

KG admits to the existence of the Sungold Contract, pursuant to which Sungold was entitled to purchase the Property from Benedict Pond. Affirmation of Abraham Goldberger, affirmed Jan. 6, 2008 (Goldberger Aff.), ¶¶ 6-7. It claims, however, that Sungold assigned its rights under the contract to KG. As "proof" of this allegation, KG submits a document entitled "Assignment of Contract of Sale for Benedict Pond" (the "Assignment"), in which a "Chaim Dresdner" assigns to "Abe Goldberger" "all rights and interests to the Benedict Pond Contract. . . . These rights and interests include, but are not limited to, any and all monies paid on account toward the final purchase price, the right to purchase the property for $25,000 per approved unit, the right to all monies held in escrow towards the purchase price." Plaintiff's Exhibit E. As an

---

closing of the sale of the Property from Benedict Pond to KG. Reply Affidavit of Robert Stout, sworn to January 18, 2008 (Stout Reply Aff.) ¶¶ 3-4.

aside, it seems, the "Assignment" recites that "[t]he actual contract is between Sungold Holding Corp. (which Chaim Dresdner is the owner) and Benedict Pond of New Windsor LLC." Id.

This is not a valid assignment of Sungold's rights under the Sungold Contract. At the same time as the "Assignment" acknowledges that those rights belong to Sungold, "Chaim" purports to assign them away.  There is no indication that "Chaim" has any right in or to Sungold's interest in the Sungold Contract or any right to assign them.  Furthermore, this document does not even purport to assign rights under the Sungold Contract to KG.  Rather, rights are purportedly assigned to "Abe," who purports to be KG's manager and sole member. See Goldberger Aff. ¶ 1.  Not only is there no evidence to establish "Abe's" status, but there is no evidence that property or rights assigned to him would automatically become the property of KG.  Furthermore, nowhere in KG's submissions, or in the documents produced by KG to Beazer, is there an assignment of the Sungold Contract from "Abe" to KG.

KG next points to a "consent" by Benedict Pond to the assignment of the Sungold Contract from Sungold to KG.  Plaintiff's Ex. F.  This consent, even if valid (its date appears to have been redacted), stands in a vacuum, because no assignment was ever made by Sungold to KG.

Finally, KG proffers a document, bearing Notary stamps dated May 1, 2006, purporting to terminate the Memorandum of Contract on record in Orange County.  Plaintiff's Ex. J.  This "agreement" is also of no effect whatsoever.  The parties to the "Termination" are KG and Benedict Pond, who "hereby agree to terminate a Memorandum of Contract of Sale of Real Property dated the 7th day of March, 2003, recorded April 23, 2003 in the Orange County Clerk's office." Id.  However, KG, who was not a party to the Sungold Contract, has no right to agree to terminate the Sungold Contract, nor has KG suggested any reason for thinking that it might.

10

In support of KG's motion, title closer David Ellner has submitted an affidavit, sworn to January 9, 2008 (Ellner Aff.), stating that he issued title insurance on behalf of Fiduciary Title Agency, Inc. based on these "proofs" that the Sungold Contract no longer constituted an encumbrance on title.  Ellner Aff. ¶¶ 2, 5-6.   With due respect to Mr. Ellner, these documents prove no such thing.

### 2.    The Fiduciary Title Insurance Policy Proves Nothing

The Agreement provided that, if KG was "unable to give good and marketable title such as will be insured by the Insurance Company [selected by Beazer], [Beazer] shall have the option (a) of taking such title as [KG] can convey, with abatement of the Purchase Price in the amount (fixed or ascertainable) of any lien on the Property, or (b) requiring any monies needed to remove any lien be escrowed by [KG] with the Title Company whereupon [KG] shall have the right to contest the lien with the understanding that the money escrowed shall be paid to satisfy the lien if [KG's] contest is unsuccessful, *or (c) [Beazer] receiving an immediate return of the Deposit and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this Agreement shall become null and v*oid."  56.1 Statement ¶ 7; Stout Aff. Ex. B § 3(b) (emphasis added).

KG contends that the fact that it was able to obtain title insurance when it purchased the Property from Benedict Pond, is proof that it was able to convey title to Beazer in accordance with the requirements of the Agreement.  However, the Fiduciary policy proves no such thing, and is not even particularly relevant to the question of KG's ability title satisfying the Agreement's requirements as to title.

The title requirements of the Agreement are stringent.  Title must be "good and marketable," "free and clear of all liens, encumbrances, restrictions, and easements" and

insurable by a title insurance company of Beazer's choosing. Stout Aff. Ex. B, Agreement § 3. The purchaser under the Sungold Contract (which KG claims to be) was entitled to far less, as the Sungold Contract merely required that "Seller shall give and Purchaser shall accept such title as *any reputable title insurance company licensed in the State of New York shall be willing to approve and insure*." Plaintiff's Ex. P, § 10 (emphasis added).

Furthermore, Beazer was entitled to title insured "without exception," and claims based on the Sungold Contract fall within the "Exceptions from Coverage" under the Fiduciary policy issued by Ellner. Specifically, among the exceptions from coverage "[d]efects, liens, encumbrances, adverse claims or other matters created, suffered, assumed or agreed to by the insured claimant." Plaintiff's Ex. P § 3(a). KG had, indeed, "assumed, suffered and agreed" to adverse claims based on the Sungold Contract. The Rider to the Sungold Contract expressly provided that objections to title not made within one month of execution were waived. Plaintiff's Ex. D, § 4. Having not made such an objection based on the Sungold Contract, KG waived it by operation of the Rider. Accordingly, because the continued existence and recordation of the Sungold Contract was a defect "assumed, suffered and agreed to" by KG, a claim against it on that basis would be excepted from coverage under the Fiduciary policy.

### 3. <u>Beazer Was Not Obligated to Submit a Title Report to KG</u>

KG also makes much of the fact that Beazer never produced a title report evidencing the existence of recordation of the Sungold Contract as an encumbrance on title. This is a red herring, because KG does not even dispute the contract's existence and continued recordation. In any event, the Agreement does not require Beazer to produce a title report. In this regard, the Agreement should be contrasted with the Sungold Contract, which does obligate the Purchaser to provide the Seller with such a report. Plaintiff's Ex. C, § 18.

### 4.    Beazer Was Entitled to Terminate Immediately

Beazer was entitled to terminate the Agreement immediately based on the admitted existence and continued recordation of the Sungold Contract on the date set by KG for the Time of the Essence Closing. This was an expressly bargained for right, set forth in § 3(b) of the Agreement. Notably, by contrast, the Sungold Contract vested the Purchaser with no such right, but rather obligated the Purchaser to allow the Seller to take actions to "remove, remedy, discharge or comply with such Defects" prior to electing to terminate. Plaintiff's Ex. C, § 18 (i) and (ii).

### III.

### BEAZER'S MOTION FOR DISQUALIFICATION SHOULD BE GRANTED

Whether to disqualify counsel is a matter within the Court's sound discretion, and doubts should be resolved in favor of disqualification. See Blue Cross & Blue Shield v. Philip Morris, Inc., 53 F. Supp. 2d 338, 342 (E.D.N.Y. 1999) (citations omitted); Felix v. Balkin, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999). In this case, the Court should disqualify both Dorfman and the Firm from representing KG in this action.

### A.    Dorfman and the Firm Should Be Disqualified under DR 5-102

KG's main argument in opposition to Beazer's motion to disqualify under DR 5-102, is that the ability of both parties to move for summary judgment without a factual submission from Dorfman, and the absence of his name in either party's Rule 26(a) disclosures is proof that there is no need to call him as a witness. See, e.g., Conway Decl. ¶ 12.

Except to point out that KG has violated its disclosure obligations, this argument is not effective. Dorfman is KG's witness, and Beazer was not obligated to identify him in its Rule 26(a) disclosures. KG cannot possibly argue that it was not on notice or that it was somehow

taken by surprise by Dorfman's status as a witness. Indeed, Beazer noticed his deposition on August 1, 2007.

Unless KG is totally successful on its summary judgment motion, which it will not be, the fact that KG made a motion for summary judgment without Dorfman's factual support is proof of nothing. This is not to say that it could prevail at trial with Dorfman's testimony, but, to the extent that Dorfman's knowledge does not already inform the factual submissions KG has already made, he is the single most knowledgeable witness regarding the events in question in this case. For the reasons already stated in Beazer's moving memorandum, Dorfman "ought" to be called as a witness and his testimony very well may be "prejudicial" to KG within the meaning of DR 5-102. See Beazer Mem. at 11-15.

### B.     Disqualification Is Warranted Under DR 5-101

KG insists that it cannot see any possible interest Dorfman and the Firm might have that would justify disqualification pursuant to DR 5-101. Thus, although Beazer hoped to avoid the unseemly exercise of spelling out KG's potential claim for breach of fiduciary duty against Dorfman and the Firm, KG has now forced its hand. In the interest of professionalism, explanation of that claim is kept to a minimum here. It is emphasized that Beazer has no interest or wish to prove the claim it outlines, but merely in showing that Dorfman and the firm do have a "financial, business, property or personal interest" that will or may affect the exercise of their professional judgment on behalf of KG, warranting their disqualification under DR 5-101.

As KG's fiduciaries, Dorfman and the Firm were "obligated to exercise the degree of care which a prudent person of discretion and intelligence would employ in their like affairs." National Union Fire Ins. Co. Pittsburgh v. Proskauer Rose Goetz & Mendelsohn, 165 Misc. 2d 539, 550, 634 N.Y.S.2d 609, 618 (Sup. Ct. N.Y. Co. 1994). The Agreement expressly charged

Dorfman and the Firm with "the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section (21)." Stout Aff. Ex. B, § 21(b).  An escrow agent who breaches this duty, resulting in a loss to its principal, "becomes liable to [the principal] for damage proximately resulting from the breach of trust . . . .  As trustee the escrow agent must make whole the party to which he or she owes a fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been had the wrong not occurred.  Id. at 545-46, 634 N.Y.S.2d at 614-15  (citations omitted).  The escrow agent must do whatever is necessary to fulfill his or her duties properly, including disclosure to its principal of  "any information he or she receives whose disclosure is necessary to prevent a loss to the party."  28 Am. Jur. 2d Escrow § 27.

Once Dorfman realized that the transaction would not be fully consummated by October 1, 2006, when the  LOC expired by its terms, a "prudent person of discretion and intelligence" charged with the safekeeping of the Deposit would have contacted Beazer to demand a replacement, extension or renewal of the LOC.  Furthermore, once the LOC expired and was not replaced, renewed or extended, Dorfman and the Firm had a duty to disclose this information to KG to prevent a loss of the value of the Deposit.

Dorfman and the Firm did not take any of these actions, however.  KG has not presented evidence rebutting the undisputed fact that, prior to Beazer's termination of the Agreement, KG never asked Beazer to replace, extend or renew the LOC.  Goldberger has stated that he was "shocked" to learn for the first time on February 21, 2007 that Beazer had not extended the LOC, having been under the impression until then that it had done so.  Goldberger Aff. ¶ 22.  The only inference that can be drawn from these statements is that Dorfman and the Firm did not inform KG that the LOC had not been replaced, renewed or extended.

Accordingly, if KG is entitled to the Deposit, which it is not, and if it cannot recover

from KG, it may be entitled to assert a claim against Dorfman and the Firm to make it whole.

The scepter of this liability gives Dorfman and the Firm an interest that will or may affect the

exercise of its professional judgment on behalf of KG in the action, specifically, in rendering

counsel as to whether and for how much to settle.  It is contrary to the interests of Dorfman and

the Firm for KG to settle for less than the amount of the full deposit, though it may be decidedly

in KG's interest to take less, and though a disinterested attorney may advise it to do so.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in its moving papers, defendant

Beazer respectfully requests that the Court grant (i) its motion for summary judgment dismissing

the Second, Third and Fourth Counts of the Complaint and the demand for $5 million in

damages and (ii) its motion to disqualify Dorfman and the Firm from representing KG in this

action and that it deny KG's motion for summary judgment on all claims in its entirety.

Dated:  New York, New York
       January 16, 2008

                         Respectfully submitted,

                         PRYOR CASHMAN LLP

                         By:_____

                            Eric D. Sherman
                            Luisa K. Hagemeier
                            lhagemeier@pryorcashman.com
                         410 Park Avenue
                         New York, New York 10022
                         (212) 326-0862