UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

KG CORNWALL, LLC.                                    Index No. 07 Civ. 2881 (CLB)

        Plaintiff,

        -against-

BEAZER HOMES CORP.

        Defendant

-------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

        Dorfman, Knoebel, Conway,

        Fury & Griffin, LLP.

        51 North Broadway

        Nyack, New York 10960

        *Attorneys for Plaintiff KG Cornwall, LLC.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... i

PRELIMINARY STATEMENT                                                       1


ARGUMENT

    I. THE COURT SHOULD GRANT KG'S MOTION
       FOR SUMMARY JUDGMENT ON THE FIRST,
       SECOND AND THIRD COUNTS OF KG'S COMPLAINT     1

       A. Plainitiff KG Cornwall, LLC. should be
          granted Summary Judgment on First Count
          of Complaint for breach of contract          1

          1. Beazer violated its contractual obligation by
             failing to maintain $150,000 deposit        3

       B. KG should be granted summary judgment on the Fraud Claim    9

CONCLUSION                                                                 11

## TABLE OF AUTHORITIES

| | |
|---|---|
| Fed. R. Civ. P. 56 (b) and (c) | 1 |
| Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767 | 3 |
| W.W.W. Associates v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 | 3 |
| Gillette v. Meyers, 42 A.D.3d 654, 655, 839 N.Y.S. 2d 584, 585 | 5 |
| Hegner v. Reed, 2 A.D.3d 683, 685 770 N.Y S 2d 87 | 6,8 |
| Maxton Builders, Inc. v. LoGalbo, 68 N Y 2d 373, 509 N.Y S 2d 507 | 5 |
| Old Orchard Development, LLC v. Marrano/Marc Equity Corp., 45 A.D.3d 1497, 846 N.Y.S.2d 529 | 6 |
| Richmond Shop Smart, Inc. v. Kenbar Development Center, LLC., 32 A.D.3d 423, 424, 820 N.Y.S.2d 124, 126 | 10 |
| Sutton v. Santora, 87 A.D.2d 796, 449 N.Y.S.2d 503 | 6 |

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff KG Cornwall, LLLC ("KG"), by its attorneys Dorfman, Knoebel, Conway, Fury and Griffin, LLP., respectfully submits this reply memorandum of law

## PRELIMINARY STATEMENT

Beazer has failed to set forth a single "genuine issue of fact" to warrant the denial of KG's motion for summary judgment on the breach of contract claim set forth in first count of KG's Complaint (¶¶1-27, Exhibit "A"[1]) and on the separate and distinct second, third and fourth causes of action based upon fraud and conversion Fed. R. Civ. P 56 (b) and (c). The affidavit and reply affidavit of Mr Stout, Beazer's rule 56.1 responses and the statements made in B's Memorandum in Opposition to Plaintiff's Cross-Motion for summary judgment support Plaintiff's request for summary judgment on all counts of KG's Complaint. Therefore, KG's Motion for Summary Judgment on the first, second, third and fourth counts should be granted in all respects.

## I.
## THE COURT SHOULD GRANT KG'S MOTION FOR SUMMARY JUDGMENT ON THE FIRST, SECOND AND THIRD COUNTS OF KG'S COMPLAINT

### A. Plainitiff KG Cornwall, LLC. should be granted Summary Judgment on First Count of Complaint for breach of contract

Beazer has failed to set forth a single "... genuine issue of material fact. " to warrant denial of Beazer's Motion for Summary Judgment on the first count of KG's Complaint (¶¶1-27, Exhibit "A"). In fact, KG's responses to Rule 56.1 Statement, the affidavits of Robert Stout, and

---

[1] Reference to Exhibits pertain to Exhibits submitted with KG's cross-motion.

1

KG's Memorandum in Opposition together with the prior submissions to this Court clearly support, KG's Motion for Summary Judgment on the First Count.

The arguments set forth by Beazer in opposition to KG's Motion for Summary Judgment on the first Count constitute a futile attempt to rewrite the law regarding basic construction of real estate contracts of sale and real estate closings

Beazer initially claims a contract deposit in the form of a letter of credit ("LOC") is not a deposit required to be maintained by Beazer and thereafter, the failure to maintain a deposit by extending the letter of credit (Exh "L") does not constitute a breach of the contract, despite the unequivocal language of the contract (¶¶2, 21,7 and 8, Exh C). Thereafter, Beazer argues, a "telephone message" (Exhibit "M"[2]) relating to a non-existent title report is a basis for termination of a $10,350,000 contract of sale ( Exh C) Finally, Beazer argues a real estate closing does not require attendance, but simply a letter (Exhibit "M") sent after the scheduled closing attended by KG and counsel in Nyack, New York, purporting to terminate this $10,350,000 contract (Exh C) from a lawyer sitting his office in Trenton, New Jersey who together with his client never intended to close the transaction in accordance with the Contract, but instead chose to rely upon a "telephone message" from an alleged title agent who also never appeared at the closing

Real Estate Law by Beazer's arguments is being abused to its core. Beazer's Memorandum in opposition, flies in the face of the basic principles of real estate law, contract

---

[2] Annexed is a copy of Exhibit "M", the incorrect letter was inadvertently submitted with cross-motion.

2

construction and Real Estate Closing Procedures and should be summarily disregarded as a matter of law, and summary judgment should be granted to KG on the First Count.

**1. Beazer violated its contractual obligation by failing to maintain $150,000 deposit**

Beazer's outrageous defense to KG's first count is that Beazer's performed its obligation in accordance with the contract by delivering a $150,000 letter of credit as the contract deposit to the escrow agent and in Counsel's words "***The Agreement does not require Beazer to replace, renew or extend the LOC***" (p 5, Mem. Opp.). The failure of Beazer to extend this letter of credit constituted a breach of the contract that required Beazer to maintain the deposit and KG is entitled to $150,000 money judgment as a matter of law (¶¶2, 21,7 and 8, Exh C; Exh L).

Beazer attempts to rewrite basic contract construction by stating a "deposit" is not a "deposit" when a Letter of Credit is involved, but simply a suggestion to make a "deposit" which is not required to be maintained past the time of the LOC's expiration date, despite the clear and unequivocal language of the contract (¶¶2, 21,7 and 8, Exh. C). Counsel's claims that Beazer performed its obligation by delivering the LOC and that Beazer's failure to maintain the letter of credit did not constitute a Breach Beazer's argument, KG never objected to the form of the LOC or requested Beazer to replace, renew or extend the LOC is ludicrous (p 6, Mem. Opp.). Beazer expects this Court to condone its failure to maintain the deposit because there was no request to extend is to say the least insulting

The cases relating to contract construction cited by Beazer's counsel (W.W.W. Associates v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440; Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767) clearly support KG's Motion for Summary Judgment based upon the unequivocal language of the contract (pp

6-7, Opp Mem.) Beazer's counsel failed to rely on any provisions of the contract when making its argument due to the fact that the unequivocal language of the Contract supports KG's motion for summary judgment on the first and second count, relating to Beazer's breach of contract for failure to maintain deposit and extend $150,000 letter of credit.

Paragraph "2" of the Contract of Sale provides for a purchase price of $10,320,000.00 and a Deposit in form of a letter of credit in the sum of $150,000 approximately 1.5% of the purchase price "to be held in escrow" (¶2(a), Exh. C) More importantly, Paragraph 2(b) sets forth the balance due at closing by Beazer was the sum of $10,170,000. Clearly, Beazer was required to maintain the deposit by extending the letter of credit until the closing[i] If Beazer allegedly was required only to deliver the LOC and not maintain the LOC as argued by Beazer, Beazer would receive a winfall by paying only $10,170,000 at closing and Beazer having no obligation to maintain and/or pay over to KG the $150,000 deposit. Therefore, after the LOC expired and was not extended KG at the closing would have received $150,000 less than required under the contract and upon default KG would receive nothing as in the case at bar. Clearly this alleged "contract construction" as argued by Beazer's counsel cannot be sustained.

Paragraph "21" of the Contract, clearly puts an end to Beazer's baseless argument that there was no obligation to maintain the deposit. Paragraph "21" provided that the "the parties" referring to KG and Beazer " agree that the deposit shall be applied as follows...";

- (i) If Settlement is held, the Deposit shall be paid over to Seller and credit to the purchase price.
- (ii) If the Settlement is not held by reason of the Buyer's default, the Deposit shall be paid over to Seller and be retained by Seller as provided by Section 7 above
- (iii) If Settlement is not held by reason of Seller's default, the Deposit shall be paid over to Buyer,
- (iv) If Settlement is not held by reason of a failure of condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid

4

over to Buyer...... (Exhibit "C").

Beazer clearly was required to maintain the deposit for the entire term of the contract or until the time of closing or in the event of default in accordance with Paragraphs "2" and "21" of the Contract (Exh. C) and Beazer did not fulfill its obligation simply by delivering the LOC and admittedly allowing same to expire and in the words of Counsel, "...*is of no further force and/or effect*" (Exhibit "M", ¶19, Stout Affidavit).

Furthermore, the unequivocal language of paragraphs "7" and "8" of the Contract (Exh. C) referred to the return of the Deposit in the event of the Buyer's or Seller's Default. Beazer therefore, was required to maintain the deposit for the entire term of the contract in accordance with Paragraphs "7" and "8" of the Contract and Beazer did not fulfill its obligation simply by delivering the LOC.

Clearly, as in the case at bar " a vendee who defaults on a real estate contract without lawful excuse[ ] cannot recover the down payment" especially where as in the case at bar, " . defendants breached the purchase contract and proffered no legally cognizable excuse for doing so " Gillette v. Meyers, 42 A.D.3d 654, 655, 839 N.Y.S. 2d 584, 585 (Maxton Builders, Inc. v. LoGalbo, 68 N.Y.2d 373, 509 N.Y.S.2d 507).

Therefore, KG should be granted summary judgment on the first count.

## 2  Beazer's failure to maintain Letter of Credit constituted an "anticipatory breach of contract"

The failure of Beazer to extend the $150,000 deposit in the form of a letter of credit constituted an anticipatory breach of the contract that required Beazer to maintain the deposit and KG is entitled to $150,000 money judgment as a matter of law (¶¶2, 21,7 and 8, Exh C; Exh L)

5

That Stout conceded that the Letter of Credit expired by its terms on October 1, 2006 (¶19, Stout Affidavit) and counsel has admitted that the LOC " has expired by its terms and *is of no further force and/or effect,...*" (Exhibit "M") and neither Beazer nor Stout has set forth an excuse and/or a reason why Beazer failed to extend the Letter of Credit as required (¶¶2 and 21, Exhibit "A"). Clearly, Beazer by allowing the LOC to expire and by not extending the LOC and maintain the deposit as required by the Contract, "evinced an intent[ion] to abandon the contract" Hegner v. Reed, 2 A.D.3d 683, 685 770 N.Y.S.2d 87.

Beazer's counsel as an alternative defense on page 7 of its Opposition memorandum, that if Beazer had an obligation to maintain the LOC, KG was required to give notice an opportunity to cure.

Beazer ignored the case law relied upon in KG's Brief in support of summary judgment regarding anticipatory breach of contracts and any purported non-existent "failure to perform" by KG "...was **excused** by buyer's anticipatory breach " Old Orchard Development, LLC v. Marrano/Marc Equity Corp., 45 A.D.3d 1497, 846 N.Y.S.2d 529 (see also, Sutton v. Santora, 87 A.D.2d 796, 449 N.Y.S.2d 503).

In any event the aforementioned notice requesting the $150,000 down payment was given to Beazer by KG and KG is still waiting for the replacement of the letter of credit (Exhibit "N"; Beazer Res. 17, Rule 56 1 Statement).

### 3. Beazer had no grounds to terminate the Contract

Beazer not only anticipatorily breached the contract of sale by allowing the LOC to expire but Beazer failed to attend the closing after admittedly receiving requisite notices by KG (Beazer's response to Paragraphs "25", "27" and "30" of KG's Rule 56 1 Statement; Exhibits

6

"Q", "S" and "T"). Mr. Frank on February 24, 2007 sent a letter (Exhibit "M") after the scheduled closing attended by KG and counsel in Nyack, New York had concluded, purporting to terminate this $10,350,000 contract (Exh C) from a lawyer sitting his office in Trenton, New Jersey who together with his client never intended to close the transaction in accordance with the Contract, but instead chose to rely upon a "telephone message" from an alleged title agent who also never appeared at the closing

Beazer claims that it "rightfully terminated the contract" (pp 8-13, Opp Mem.) are all without merit and do not raise a genuine issue of fact. More importantly these meritless claims are refuted by the documentary evidence, the affidavit of David Ellner, the affirmation of Abraham Goldberger, as well as Beazer's responses to Rule 56 1 Statement

Beazer nor its representatives provided a title report to KG or its counsel from a title company "...that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located" (paragraph "3", Exhibit "C") and clearly Mr / Wood's "telephone message" was not in any manner in compliance with the requirements of Paragraph "3" of the Agreement regarding title (Exhibits "C" and "M").

More importantly, Beazer has not produced a title report or a copy of the alleged "message" from Mr. Wood to Mr Frank (Exh. M) during discovery regarding this alleged title defect in response to discovery demands. In addition, neither Mr Woods the alleged title agent nor Mr. Frank are listed as witnesses having knowledge of these facts (Exhibit "V")

Beazer arguments regarding title are to say the least improper and frivolous, Counsel argues citing paragraph "3" of the Contract (Exhibit "C") that KG was required to convey "good and marketable" title by a title company selected by Buyer (p 8, Mem. Opp.) and thereafter argues

7

that Beazer was not " obligated to submit a title report to KG..." (p.12, Mem. Opp.; see response to paragraph "33" of Rule 56.1 Statement)

In addition to not providing a title report there was no identification of the alleged title agent prior to the scheduled closing. Mr. Ellner stated in his affidavit that notwithstanding the fact Fiduciary Title as agent for Stuart Title Insurance Company issued a title report, KG and its title insurance company were ready willing and able to supply if contacted " deliver to the Title Company such releases, documents, indemnitees and affidavits as shall be necessary for the elimination of any staid or printed exceptions in Buyer's final title policy." (Par.3(c), Exhibit "C").

Beazer's conclusory claims that "the Fiduciary Title Insurance policy proves nothing" (p.11-12, Mem.Opp.) and that "Sungold did not assign its rights under the Sungold Contract" (p 9-10) without a title report as required by paragraph "3" or an affidavit must be summarily disregarded by this Court.

More importantly as in the most recent decision of Hegner v. Reed, 2 A.D.3d 683, 685 770 N.Y.S.2d 87, where there was an anticipatory breach by the Purchaser as in the case at bar who allowed the LOC to lapse and the Seller proceeded to close, the Court found for the Seller where as in the case at bar Beazer was "...obligated to tender performance and permit the sellers the opportunity to cure ". In Hegner, supra., as in the case at bar, the Purchaser failed to tender performance and judgment as a matter of law should be granted to KG on the first count.

Clearly the allegation that due diligence was not waived as to alleged title issue is incredible (response to par. 14, Rule 56.1; par. 8, Stout Affid.). On September 26, 2005, Robert Stout of

8

Beazer Homes wrote to Mr. Karger, my attorney and Mr. Danza the principal of Benedict Pond

clearly after Mr. Stout and counsel were satisfied with information provided in response to Mr.

Frank's September 8, 2005 letter (Exh. I);

> Beazer has now completed due diligence on the Benedict Pond property.
> Beazer Homes intends to go forward with our Agreement of Sale and
> close on the property as soon as all approvals are in place as outlined in
> the Agreement of Sale dated May 31, 2005 (Exhibit "K")(par 18,
> Goldberger Affirm.)

That at no time during the sixteen months from Mr. Frank's September 8, 2005 letter during

due diligence (Exh. I) and the September 26, 2005 waiver of due diligence by Mr. Stout (Exh K)

until after the closing was scheduled did Beazer send a title report or a letter from the alleged

title company.

In fact, to the contrary, the only letter written by Beazer in anticipation of closing within a

month of closing was from Mr. Israel who set forth documents required to close that did not

mention the non-existent title defect (Exh. R).

## B. KG should be granted summary judgment on the Fraud Claim-Fourth Count

Clearly, KG motion for summary judgment on the Fourth Count based upon fraud should

be granted in all respects. The Fourth Count simply states that "…Beazer knowingly

misrepresented its intention to maintain the letter of credit"; KG "…relied on Beazer's

misrepresentation" and that KG has been damaged (¶¶39-41, Exh A).

Clearly, the affidavit of Mr. Stout and the documentary evidence as confirmed in

Beazer's memorandum that notwithstanding the fact Beazer waived due diligence, provided a

$150,000 deposit in the form of a LOC, Beazer never intended to maintain the deposit despite the unequivocal language contained in the Contract. Beazer was well aware that KG was a contract vendee. That in reliance on the Beazer's representation contained in the Contract, Beazer acquired the Property in May of 2006. Therefore, Beazer lured KG as a contract vendee who had not yet acquired the property into believing the deposit would be maintained and Beazer would close the transaction. Furthermore, even after the LOC expired, Mr. Israel clearly indicated that Beazer would close and Mr. Israel concealed from KG or its representatives that Beazer had allowed the Letter of Credit to lapse. (par. 33, Goldberger affirm) (Exhibit "R").

Finally, did not refute case law submitted by KG that a separate and distinct cause of action for fraud could be maintained (<u>Richmond Shop Smart, Inc. v. Kenbar Development Center, LLC.,</u> 32 A.D.3d 423, 424, 820 N.Y.S.2d 124, 126).

---

2. **Purchase Price** The purchase price (the "Purchase Price") for the Property shall be Ten Million Three Hundred Twenty Thousand and No/100 Dollars ($10,320,000.00), based upon $86,000 per unit of 120 Age Restricted Active Adult Townhouse Units to be paid as follows:

   (a) Within ten (10) days of the date hereof, Buyer shall deliver to Escrow Agent (hereinafter defined as escrow agent), a letter of credit in the sum of $150,000 (such amount shall hereinafter be referred to as the "Deposit"), to be held in escrow.

   (b) The sum of $10,170,000 shall be paid by Buyer to Seller on Settlement Date as is defined in paragraph "4" of this contract of sale.....

## CONCLUSION

Therefore, it is respectfully requested that this Court (i) grant KG's Cross-Motion for summary judgment on KG's Complaint (Exhibit "A") and (ii) deny Defendant BEAZER HOMES CORP.'s ("Beazer") motion for partial summary judgment of the second, third and fourth count contained in KG's Complaint (Exhibit "A") and for disqualification of KG's counsel

DORFMAN, KNOEBEL, CONWAY,
FURY & GRIFFIN, LLP

By _____

KEVIN CONWAY ( KG3347 )

k.conway@dkcllp.com

51 North Broadway

Nyack, New York 10960

(845)353-3500

Attorneys for Plaintiff

TO:

ERIC D. SHERMAN, ESQ
LUISA K. HAGEMEIER

PRYOR CASHMAN LLP

410 Park Avenue

New York, New York 10022

(212) 421-4100

Attorneys for Defendant

11

# Exhibit M

## TEICH GROH
AN ASSOCIATION OF
PROFESSIONAL CORPORATIONS & LIMITED LIABILITY COMPANIES
COUNSELLORS AT LAW
691 STATE HIGHWAY 33
MERCERVILLE
TRENTON NEW JERSEY 08619-4492

ARTHUR TEICH (1915-1997)
WILLIAM C. GROH, Retired
BARRY W. FROST*
MICHAEL A. ZINDLER
CAROL OSWALD
CAROL L. KNOWLTON†
ALLEN I. GORSKI†
DEAN S NALBONE†
ALAN G. FRANK, JR.
GARY R. BACKINOFF†
BRIAN W. HOFMEISTER

(609) 890-1500

FAX NO. (609) 890-5961

JENNIFER ZOSCHAK
CINZIA CIOFFI
RICHARD J. ALPHONSE

NJ AND NY BAR
† NJ AND PA BAR

BRANCH OFFICE:

109 FRANKLIN CORNER ROAD
LAWRENCEVILLE, NJ 08648
(609) 844-0488
FAX (609) 844-0784

123 FRANKLIN CORNER ROAD
SUITE 206
LAWRENCEVILLE, NJ 08648
(609) 896-2900
FAX (609) 896-3115

February 21, 2007

VIA FAX AND OVERNIGHT MAIL

KG Cornwall, LLC
c/o Dorfman, Knoebel & Conway, LLP
51 North Broadway
Nyack, New York 10960
Attention: Burton I. Dorfman, Esquire

and

VIA OVERNIGHT MAIL

KG Cornwall, LLC
One Shinev Court
Monroe, New York 10950

RE: **AGREEMENT OF SALE OF MAY 31, 2005 BETWEEN KG CORNWALL, LLC ("SELLER") AND BEAZER HOMES CORP. ("BUYER") – NOTICE OF TERMINATION**

Gentlemen:

Please accept this letter as notice from our client, the Buyer in the referenced Agreement, that Seller is in default of said Agreement and that by reason of such default, Buyer is exercising its right under Paragraph 8 of the Agreement to terminate same and receive a return of the down payment, demand for which is hereby made.

The substance of Seller's default is that despite (i) Seller's obligation under Paragraph 3(a) of the Agreement to convey to Buyer encumbrance-free title to the property described in the Agreement (the "Property") and (ii) Seller's written notice to Buyer that a Time of Essence Closing had been scheduled for 11:00 a.m. at your office on February 21, 2007 (the "TOE Time"), Seller was not and is not in a position to convey encumbrance-free title to the Property to Buyer as of the TOE Time.

Specifically, a certain Memorandum of a Contract of Sale between Seller's predecessor in title to the Property, Benedict Pond of New Windsor, LLC (formerly Sarjon, LLC), and Sungold Holding, Inc. with respect to real property which included the Property was recorded in the Orange County Clerk's Office on April 23, 2003 in Liber 11026 at page 1725 (the "Memorandum"). Said Memorandum still appears of record in the Orange County Clerk's Office as of the TOE Time. The non-discharge of the

KG Cornwall, LLC
Page Two
February 21, 2007

Memorandum in the records of the Orange County Clerk's Office as of the TOE Time of 11:00 a.m. on February 21, 2007 was confirmed to Buyer by a telephone message from James Wood of Hill-n-Dale Abstractors, Inc./Goshen Searchers, Inc. just prior to 11:00 a.m. on February 21, 2007.

Please note that Buyer first made Seller aware of the existence of the encumbrance embodied in the Memorandum and its implications in September, 2005. (See attached letter to Seller's attorney). Despite that letter – to which no response was ever forthcoming – and despite Seller's May, 2006 purchase of the Property from Benedict Pond of New Windsor, LLC (formerly Sarjon, LLC), the contract vendor under the Memorandum, Seller has failed as of the TOE Time to cause the contractual right of Sungold Holdings, Inc. in the Property to be discharged or terminated of record. The continuing existence of the encumbrance embodied in the Memorandum of record as of the TOE Time clearly places Seller in default of the Agreement as of the TOE Time and such circumstance entitles Buyer to lawfully terminate the Agreement and receive the return of its down payment. This letter constitutes such notice of termination. The Agreement is now null and void and of no further force and effect.

Notwithstanding that the down payment in the form of a $150,000.00 Letter of Credit being held by your attorney, Burton I. Dorfman, Esquire, as Escrow Agent under the Agreement, has expired by its terms and is of no further force and/or effect, demand is nonetheless hereby made that you immediately authorize the Escrow Agent to return such Letter of Credit to Buyer at the address for Buyer provided in the Agreement.

Very truly yours,

Alan G. Frank, Jr.

AGF/cla
CC:   Beazer Homes/Attn: Paul Schneier, Division President
      Beazer Homes/Attn: Richard S. Israel, Esquire, Division Counsel
      Burton I. Dorfman, Esquire (via Fax and Overnight Delivery)