UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
K.G. CORNWALL, LLC,

                      Plaintiff,

            - against -

BEAZER HOMES CORP.,

                      Defendant.
--------------------------------------------------------x

07 Civ. 2881 (CLB)

*Memorandum and Order*

Brieant, J.

      Before this Court for resolution is a Motion for Partial Summary Judgment (Doc. 9) in its favor filed by Defendant Beazer Homes Corp. and for the disqualification of Burton I. Dorfman, Esq. and Dorfman Knoebel and Conway LLP as attorneys and escrow agent in the case. Also pending decision before this Court is Plaintiff's Motion for Summary Judgment (Doc. 50) in its favor dated January 9, 2008. Both motions were heard and fully submitted for decision on January 25, 2008.

      The following facts appear to be undisputed except where indicated. This is a diversity suit regulated by New York Law, arising out of a real estate contract which did not close.

      Familiarity on the part of the reader with the Agreement of Sale dated May 31, 2005 between K.G. Cornwall LLC, Plaintiff and the Seller, and Beazer Homes Corp., Defendant and the Buyer, is presumed. Without summarizing the entire agreement, it is to be noted that ¶ 18 provides a standard integration clause, to the effect that the document contains the entire Agreement between Seller and Buyer and there are no other terms, obligations, covenants,

representations, statements or conditions or otherwise of any kind whatsoever, and also that the Agreement may be amended only in writing signed by both parties.

The Agreement sets forth a total price of $10,320,000.00 based on $86,000.00 per unit to build 120 approved Age Restricted Adult Townhouse Units.  Payment is to be made by delivery to the Escrow Agent Dorfman, within ten days of a Letter of Credit (the "L/C") in the sum of $150,000.00, referred to in the Agreement as a "Deposit" and to be held in escrow subject to payment as defined in the Agreement.

The quality of the title to be conveyed is agreed to be "good and marketable and insurable without exception" by such title company that is selected by the Buyer and fully licensed to do business in the State wherein the subject property is located (the "Title Company") at such Title Company's regular rates" (see ¶ 3).  The Agreement in ¶ 4 calls for title closing (referred to as "Settlement") forty-five days following final site plan approval and of satisfaction of all conditions contained in § 15, and to take place upon five business days notice from Buyer to Seller.  The Agreement contains a cutoff of two years from its date, following which either party may elect to cancel the Agreement.  It is  provided in ¶ 7 that the Deposit may be retained by Seller as Seller's  exclusive remedy as liquidated damages for such breach in the event of Buyer's default and that should the Seller default, Buyer is entitled to the return of the down payment as its sole available remedy.  In ¶ 13 of the document, the Plaintiff Seller is identified as a contract vendee of the premises to be sold.

We look in vain in this detailed Agreement, drafted by experienced real estate practitioners, for any expressed provision requiring the Buyer to renew the Letter of Credit, which as delivered contained, as most do, an expiration date.  Indeed, the Letter of Credit is not described and the only reference thereto is in that portion of the Agreement pertaining to the Escrow of the Deposit, found in ¶ 21.  This provision appears to impose no obligation on Attorney Dorfman or his law firm as escrow agent to do anything except for safekeeping of the deposit and payment to the entitled party.

There is no suggestion in the Agreement that it was the duty of Attorney Dorfman to remind the parties that the Letter of Credit as delivered contained an expiration date.  The Court perceives no way in which it could, at this late date, alter the Agreement in order to impose that obligation.  In light of the Integration Clause in the Agreement, previously quoted, we cannot imply the existence of an oral understanding that the Buyer would renew the Letter of Credit when it expired.  It must have been readily apparent to these sophisticated real estate investors and their experienced real estate lawyers that the Letter of Credit might well expire by its terms before the conditions precedent to title closing had been satisfied.  They should have made provision in their Agreement for this likely foreseeable event, and simply failed to do so.  The facts do not support a finding of mutual mistake or fraud or overreaching, which would allow this Court to reform the documents by imposing a duty to renew the Letter of Credit or alternatively, to pay the Deposit, in cash, and Buyer is not found to be in default for failing to do so.

As discussed below, Buyer may still have a right to purchase the property at this late date (with adjustments and interest on the purchase price as of two years after the date of the Agreement).

*The Objection to Title*

Apparently, the Buyer rejected Title in this case simply by refusing to show up at a time of the essence closing schedule by Seller, and did so because of the existing outstanding Contract of Sale, of Record in the Office of the Orange County Clerk, by the Record Title Owner, Benedict Pond to Sungold. This does not seem to be a valid excuse in the context of this case. The Seller had disclosed its interest was that of a Contract vendee and had until the closing date to obtain satisfaction or merger of the outstanding interests of Sungold, which it apparently did. With exceptions not material, there is no practical way to eliminate the Sungold Contract from the Orange County land records. The ordinary practice in such a situation would be for Plaintiff to produce and deliver at the closing a quitclaim deed of the premises, running either to the Seller (Plaintiff here) or the Buyer. An assignment of the contract would serve as well.

Mr. Abraham Goldberger represents himself to have been at all relevant times the "manager and sole member" of K.G. Cornwall LLC (Seller and Plaintiff) as well as, after July 10, 2003, the assignee of Sungold's right in the Benedict Pond Agreement. Chaim Dresdner, said to be Mr. Goldberger's brother-in-law, is represented to have been, at all relevant times, the sole shareholder of Sungold. These facts, undisputedly, support an inference that Plaintiff would have no difficulty in clearing the title objection if it set its mind to do so.

We look in vain in the mass of paper submitted on this motion for any evidence that the Buyer designated a title company or furnished its exception sheet to Seller prior to the date set for closing of the title. Ordinarily, time is not of the essence in the sale of vacant land in New York.

*Disqualification of Attorney Dorfman and his Law Firm*

Ordinarily disqualification of counsel is to be avoided, because it increases the delay and cost of litigation. Should it appear that Attorney Dorfman actually "ought" to testify (beyond the mere authentication of documents) this issue may be revisited with the Court. Because everything relevant, as in most real estate matters, appears to be documented, or easily established through other witnesses not disqualified, this branch of the motion is denied, with leave to renew.

Conclusion

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The motion to disqualify the attorney is denied with leave to renew if it later appeared that the attorney ought to testify as to a relevant fact. Defendant if so advised, may within twenty (20) days file an amended answer or pleading seeking specific performance of the real estate transaction. Upon failure to amend with the time allowed, the Clerk shall file a final judgment. For the present, the Court declines to make the finding contemplated by Rule 54(b) Fed.R.Civ.P.

SO ORDERED.

Dated: White Plains, New York
       February 28, 2008

*Charles Brieant* (signature)
_____
Charles L. Brieant, U.S.D.J.