1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
K.G. CORNWALL, L.L.C.,

                Plaintiff,

        v.                          07 CV. 2881 (CLB)

BEAZER HOMES CORP.,

                Defendant.
---------------------------------x
                    U.S. Courthouse
                    White Plains, N.Y.
                    March 26, 2008
                    9:30 a.m.


Before:      HON. CHARLES L. BRIEANT,
                United States District Judge


APPEARANCES

DORFMAN KNOEBEL & CONWAY
BY:  KEVIN CONWAY, Esq.
     BURTON DORFMAN, Esq.
51 North Broadway
Nyack, N.Y.  10960
Attorneys for Plaintiff

PRYOR CASHMAN, LLP
BY:  LUISA K. HAGEMEIER, Esq.
410 Park Avenue
New York, N.Y.  10022

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter
```

2

```
1              THE CLERK:  K.G. Cornwall, L.L.C. against Beazer

2    Homes Corp..

3              THE COURT:  Okay.  Good morning, everybody.

4              MR. CONWAY:  Good morning, Your Honor.

5              MR. DORFMAN:  Good morning, Your Honor.

6              MS. HAGEMEIER:  Good morning, Your Honor.

7              THE COURT:  The Court has a letter from the Dorfman

8    office, which is dated March 18th.

9              And you have a copy of the Court's opinion and

10   decision, Memorandum and Order, dated February 28th.

11             And the Court would like to hear counsel and then

12   ascertain exactly what you really want to do.

13             Maybe I should stop right there and allow counsel

14   to be heard.

15             I think we have an indication that the defendant

16   does not seek specific performance, and I don't know whether

17   the plaintiff wishes to perform.  And if you don't, then --

18   if you are not seeking equitable relief, we have other things

19   we ought to discuss to see what needs to be done to conclude

20   the matter, at least, in this court.

21             Anyone wishes to respond?

22             MR. DORFMAN:  Yes, Your Honor.

23             THE COURT:  Please take the lectern, and state your

24   name and tell me what you want to do.

25             MR. DORFMAN:  Your Honor, at all, at all -- at all
```

Sue Ghorayeb,  Official Court Reporter

3

1    times -- my name is Burt Dorfman.

2              At all times, the plaintiff was ready, willing and

3    able and was capable of performing, and we did schedule a

4    closing, no one showed up.  But we are still willing to close

5    with the --

6              THE COURT:  You are the seller?

7              MR. DORFMAN:  The seller.

8              THE COURT:  Yes.

9              MR. DORFMAN:  Still willing to close with Beazer.

10             The -- Beazer had moved for partial summary

11   judgment and did not move for summary judgment on the first

12   cause of action.

13             So, my reading of the decision had indicated that

14   they moved for partial summary judgment, and you never made a

15   decision on the first cause of action.  So that appears to

16   remain open, if I'm incorrect, and the Court is --

17             THE COURT:  The first cause of action was for

18   breach of contract?

19             MR. DORFMAN:  Correct.

20             THE COURT:  And for an order from this Court that

21   they revise the Letter of Credit.

22             MR. DORFMAN:  I think that was the second.

23             THE COURT:  That's the second?

24             MR. DORFMAN:  I think that was the second.

25             THE COURT:  Your first cause of action was for?

                 Sue Ghorayeb,  Official Court Reporter

                                                            4

1              MR. DORFMAN:  Breach of contract and monetary

2    damages.

3              THE COURT:  What?

4              MR. DORFMAN:  Breach of contract and monetary

5    damages.

6              THE COURT:  Now, it seems to me you have a rather

7    serious problem with that, because your damages I believe

8    would be the difference between the selling price and the

9    price at which you could resell it to somebody else.  Because

10   you still have the land, right?

11             MR. DORFMAN:  Correct.

12             THE COURT:  It's vacant land?

13             MR. DORFMAN:  Correct.

14             THE COURT:  And vacant land, as I understand it, in

15   New York, time is not of the essence, because a seller would

16   be compensated by payment of legal interest on the purchase

17   price between the date when it should have been closed and

18   the date that it was actually closed.

19             So, there is no evidence anywhere that I have seen

20   here that this property is worth more than the selling

21   price -- I'm sorry, less than the selling price.  I misspoke,

22   I meant to say less.

23             MR. DORFMAN:  Your Honor, the property is worth far

24   less than the selling price today.  It's a known fact.

25             THE COURT:  It's not known to me.


              Sue Ghorayeb,  Official Court Reporter
                                                        5



1              MR. DORFMAN:  I believe there was --

2              THE COURT:  I find that hard to believe.  When was

3    the price agreed to?

```
4              MS. HAGEMEIER:  Your Honor, may I just interject.

5              THE COURT:  Oh, I suppose you can.

6              MS. HAGEMEIER:  Okay.

7              THE COURT:  But he really ought to be allowed to

8    finish.

9              MS. HAGEMEIER:  The discussion can really be

10   shortcut because the --

11             THE COURT:  You represent the --

12             MS. HAGEMEIER:  I represent Beazer Homes.  My name

13   is Luisa Hagemeier.

14             The contract expressly limits damages to the

15   deposit, which was a $50,000 Letter of Credit --

16             THE COURT:  Yes.

17             MS. HAGEMEIER:  -- that expired on October 31st.

18             THE COURT:  I think that's true.

19             MS. HAGEMEIER:  So, they are really without a

20   remedy.

21             MR. DORFMAN:  Your Honor.

22             THE COURT:  Yes.

23             MR. DORFMAN:  I respect --

24             THE COURT:  They have a remedy, but you don't want

25   to mention it.
```

            Sue Ghorayeb,  Official Court Reporter
                                                        6


```
1              MR. DORFMAN:  Correct.  Correct.

2              We didn't request specific performance and we could

3    also seek damages.

4              THE COURT:  Well, if you -- the claim is going to

5    be that those, that those words exempt the defendants from
```

```
6    specific performance.

7              Defendants didn't seek specific performance --

8              MR. DORFMAN:  Correct, they did not.

9              THE COURT:  -- and they now have stated on the

10   record that they don't.

11             MR. DORFMAN:  Correct.

12             THE COURT:  So --

13             MR. DORFMAN:  Your Honor, I believe I'm -- I was

14   waiting for a judgment.  I was going to request --

15             THE COURT:  I think they are wrong downstairs that

16   you can get a judgment on the present state of the record.

17             Now, if you leave here today, maybe you can reach

18   some agreement, or the Court can make a further direction.

19   But right now the case is not available for an entry of a

20   judgment.

21             We have just, very recently, formalized a statement

22   of intention on the part of a defendant if they don't wish to

23   amend --

24             MR. DORFMAN:  Correct.

25             THE COURT:  -- to seek specific performance.
```

Sue Ghorayeb,  Official Court Reporter

```
1              MR. DORFMAN:  Correct.

2              THE COURT:  Plaintiff, I don't think, wishes to

3    seek specific performance --

4              MR. DORFMAN:  No.

5              THE COURT:  -- of the closing, so.

6              MR. DORFMAN:  No.  Your Honor, we would love --
```

7    today, we would love for the -- we would love it if the

8    defendants paid us the $10,370,000.

9         We would love that, Your Honor.  Your Honor, just

10   two things.

11        MS. HAGEMEIER:  That remedy is not available under

12   the contract.

13        MR. DORFMAN:  Well, Your Honor, I just want to make

14   a statement --

15        THE COURT:  Yes.

16        MR. DORFMAN:  -- with respect to --

17        THE COURT:  I will let you finish.  I don't mean to

18   interrupt you.

19        MR. DORFMAN:  Right.  With respect to her

20   statements and with respect to the decision, I think there is

21   one -- that's why I was wondering whether there was going to

22   be a partial judgment or what type of judgment, because I was

23   going --

24        THE COURT:  You will have no partial judgment

25   unless the Court authorizes it specifically --

            Sue Ghorayeb,  Official Court Reporter
                                                    8

1         MR. DORFMAN:  Right.

2         THE COURT:  -- with reference to Rule 54(b).

3         MR. DORFMAN:  Right.

4         THE COURT:  That you can get in the State Court,

5    not from me.

6         MR. DORFMAN:  Okay.  Fine.  Fine.

7         Judge, I was always under the impression and I

8    thought a way to resolve this would be for the, for the

```
 9   defendant to pay the $150,000.

10          I think the -- well, it's a $150,000 Letter of

11   Credit.  It's a $150,000 Letter of Credit.

12          MS. HAGEMEIER:  Okay.

13          THE COURT:  Your Letter of Credit that wasn't

14   renewed.

15          MR. DORFMAN:  Right, but that's really not the

16   issue, Judge.  I think that would be a ground, if there was a

17   judgment, whatever.

18          There was one issue that I have with the decision,

19   and that is that, as escrow agent, at the time of closing, if

20   this was to close yesterday --

21          THE COURT:  Yes.

22          MR. DORFMAN:  -- I will be responsible as escrow

23   agent for disbursing $150,000.

24          THE COURT:  No.  Because you received an LC, you

25   didn't receive $150,000.  You had a contract.
```

Sue Ghorayeb,  Official Court Reporter

9

```
 1          MR. DORFMAN:  Yeah.

 2          THE COURT:  I don't mean to --

 3          MR. DORFMAN:  No.  I understand.

 4          THE COURT:  What?

 5          MR. DORFMAN:  I understand what you are going to

 6   say.

 7          THE COURT:  I don't mean to criticize anybody, but

 8   the contract does not provide any obligation to renew the

 9   Letter of Credit, and it says it can't be modified except by
```

10    an agreement in writing.

11            MR. DORFMAN:  Mm-hmm.

12            THE COURT:  And that it's got an integration clause

13    where they covered everything.

14            MR. DORFMAN:  Correct.

15            THE COURT:  Experienced people, covered everything,

16    and you are where you are.

17            MR. DORFMAN:  Mm-hmm.

18            THE COURT:  So there may be an action.  I don't

19    think there is, because the contract limits the damages to

20    the downpayment.

21            MR. DORFMAN:  Well, the downpayment has to be -- it

22    has to be a sum of money.

23            Just because it said a Letter of Credit, it's

24    understood that the price is the price.  So, at the time of

25    closing, the price would have had --

              Sue Ghorayeb,  Official Court Reporter
                                                      10


1             THE COURT:  Well, assume I accept that -- and I

2     don't necessarily agree with that, but assume I do.  Then

3     your damages are your common law damages; the difference

4     between the price of the contract and the value of the

5     consideration of the contract.

6             MR. DORFMAN:  Correct.

7             THE COURT:  And it's pretty hard to prove that at

8     the time this contract was entered into, at arm's length, by

9     experienced people, that it wasn't worth it; it wasn't worth

10    the selling price.

11            MR. DORFMAN:  At the time we entered --

12            THE COURT:  This is --

13            MR. DORFMAN:  At the time we entered into the

14    contract, there was no approvals at the time the contract was

15    executed.

16            THE COURT:  But the contract called for the

17    approvals to be obtained.

18            MR. DORFMAN:  Correct, and thereafter the approvals

19    were obtained.

20            THE COURT:  And they were, so.

21            MR. DORFMAN:  At the time the approvals were

22    obtained, and I believe that as part of the affidavits of my

23    client submitted to the Court, the purchaser at that time was

24    looking to pay less money, because the value at the time it

25    was approved was less than the contract price.


            Sue Ghorayeb,  Official Court Reporter
                                                          11



1             THE COURT:  Yes, but that's not the measuring date.

2             MR. DORFMAN:  Well, Your Honor --

3             THE COURT:  The measuring date is the date of the

4     contract.

5             MR. DORFMAN:  Well, on the day of the contract, it

6     wasn't approved.  It was just raw land.

7             THE COURT:  Well, I think they both thought it

8     would be approved.

9             What do you really want to do?

10            Let me ask everybody and we will do something.

11            MR. DORFMAN:  I would like to resolve this case,

12    Your Honor.

13          THE COURT:  Well, that's always nice to do.  I

14     don't have a lot of time this morning, and I could give you

15     some time to talk to each other and resolve it.

16          I think the only way you are going to resolve it is

17     to close the title.

18          MR. DORFMAN:  Mm-hmm.

19          THE COURT:  I think that would resolve it.  But I

20     don't think they are going to reach in their pocket and pay

21     you any money, any big money, on the present state of the

22     record.

23          MR. DORFMAN:  I understand that.

24          THE COURT:  Because if we can't reach some

25     accommodation of that sort, the Court is going to get from


               Sue Ghorayeb,  Official Court Reporter
                                                        12


1     you, on the record, that you don't want to buy it; get from

2     them on the record, which we already have, that they don't

3     want to cram it down your client, and --

4          MR. DORFMAN:  I will put on the record that --

5          THE COURT:  -- go to the Circuit.

6          MR. DORFMAN:  I will put on the record my client

7     wants to sell it.

8          THE COURT:  He wants to sell it for the selling

9     price.

10          MR. DORFMAN:  Well, my client would discuss a

11     different price.

12          THE COURT:  Do you want to take a recess and

13     discuss, or is this a total wasted effort?

14          MS. HAGEMEIER:  Your Honor, that may be Mr.

15    Dorfman's position as a settlement proposition, but specific

16    performance is not an available remedy to him under the

17    contract.

18          THE COURT:  It's not an available remedy to him

19    what?

20          MS. HAGEMEIER:  Under the contract.  The contract

21    expressly limits K.G.'s relief to the deposit, which was a

22    50,000 or $150,000 Letter of Credit.

23          They are not entitled to claim specific

24    performance.

25          THE COURT:  I don't know how clear that is.  I


          Sue Ghorayeb,  Official Court Reporter
                                                        13


1    don't know that.

2          MS. HAGEMEIER:  It's very, it's very clear.

3          THE COURT:  Yes, but I don't know if you can

4    deprive -- it's a New York State law question, but I don't

5    know if you can deprive the State Court of the right to

6    compel equitable conduct or equitable performance.

7          MS. HAGEMEIER:  It's not --

8          THE COURT:  If you get your money, why do you care?

9          MS. HAGEMEIER:  Specific performance is not an

10    available claim.

11          There is only one possible claim and that is that

12    they are entitled to the deposit.

13          MR. DORFMAN:  Your Honor, I also --

14          THE COURT:  I don't necessarily agree with that.

15          If you want to test that out, I will give you an

16    opinion.

17             MS. HAGEMEIER:  I would just direct the Court to --

18             THE COURT:  You can't take away from the Chancellor

19    the right to do justice between the parties.  You can't do

20    that.

21             MS. HAGEMEIER:  They made a contract and they

22    agreed to an express limitation of relief in the contract.

23             THE COURT:  That's a public policy.

24             If you want to test me out on that, I will give you

25    an opinion that says so.


              Sue Ghorayeb,  Official Court Reporter
                                                     14



1              MS. HAGEMEIER:  Your Honor --

2              THE COURT:  Seriously, I don't think you can do

3    that.

4              MS. HAGEMEIER:  The parties are entitled to agree

5    to whatever they agree to.

6              These are two sophisticated commercial real estate

7    entities and they agreed to an express limitation of

8    remedies.

9              THE COURT:  That's a "heads I win and tails you

10   lose" argument.  Let's assume, let's assume that they found

11   gold on this piece here.

12             I think both of us are getting off the point and

13   that's probably a bad thing to do.  Let me find out what you

14   really want to do.

15             Do you want to take a brief recess and see if you

16   can cut a deal?

17             Are you in a situation where you can't do that,

18    because you don't have principals here and you want to come

19    back and tell me?

20              Let me find out what you really want to do.

21              MR. DORFMAN:  Your Honor, I contacted my principal.

22              We had -- with the help of the Court, we did have

23    mediation.

24              THE COURT:  Yes.  What did the mediator tell you to

25    do?

                Sue Ghorayeb,  Official Court Reporter
                                                          15


1              MR. DORFMAN:  It was my understanding the mediator

2     told them to pay us $150,000 and call it a day.

3              THE COURT:  And you are not going to do that,

4     because if you did that -- you think you have a better chance

5     of upholding the present state of the decision law, right?

6              MR. DORFMAN:  Well, I'm the seller, Your Honor.

7     I'm the seller and --

8              THE COURT:  They want you to pay?

9              MR. DORFMAN:  No.  They wanted us, they wanted us

10    to settle the case, take a 150 --

11             THE COURT:  Accept.

12             MR. DORFMAN:  Accept 150,000.

13             THE COURT:  Oh, I'm sorry.  I misunderstood you.

14             MR. DORFMAN:  Accept a 150,000.

15             THE COURT:  And you said you would?

16             MR. DORFMAN:  I told my client "go along with the

17    mediator."

18             THE COURT:  And they won't do it?

Page 15 of 25

19          MR. DORFMAN:  They came up with a lower number.

20          THE COURT:  Okay.

21          MS. HAGEMEIER:  That was, that was the seller's

22  demand.  The mediator did not suggest paying the demand,

23  which is the full amount of the contract.

24          THE COURT:  You gave them a counter-offer?

25          MS. HAGEMEIER:  We did.


          Sue Ghorayeb,  Official Court Reporter
                                                          16


1          THE COURT:  Yes.  And that wasn't enough to --

2          MR. DORFMAN:  Your Honor -- well, Your Honor, I

3  think we should talk out in the hallway.

4          THE COURT:  I think you should.  But I think,

5  eventually, I would like to resolve it, so whoever is

6  dissatisfied can go to the Court of Appeals.

7          MR. DORFMAN:  Right.

8          THE COURT:  We have to get a final judgment

9  entered.

10          MR. DORFMAN:  Correct.

11          THE COURT:  You are not presently in a position to

12  do it.

13          MR. DORFMAN:  Right.

14          THE COURT:  The defendants say that they don't want

15  to seek specific performance.

16          MR. DORFMAN:  Correct.

17          THE COURT:  I'm not clear exactly where you are.

18          MR. DORFMAN:  I might have to amend the pleadings.

19  I might have to --

20          THE COURT:  You do want to seek specific

21    performance?

22            MR. DORFMAN:  Right.  That's correct, in the

23    alternative, Your Honor.

24            And, and also, there is the issue of the first

25    cause of action.

                Sue Ghorayeb,  Official Court Reporter

                                                        17


1             THE COURT:  I'm sorry.

2             MR. DORFMAN:  The issue of the first cause -- this

3     was only a motion for partial summary judgment.  They did not

4     seek on the -- if you are saying you decided that, then

5     that's one thing, but they did not seek summary judgment on

6     the first cause of action.

7             And if I have to put in evidence regarding what the

8     value was on the date that the contract was signed, I have no

9     problem doing that, Your Honor.

10            THE COURT:  Well, maybe it isn't the date of the

11    contract.  Maybe that's different.

12            I think if you want to buy it, the Court would let

13    you buy it.  If you want to sell it, the Court would let you

14    sell it.

15            MR. DORFMAN:  We are willing to sell it, Your

16    Honor.  We are willing to sell it.

17            THE COURT:  Well, apparently, they don't want to do

18    that.

19            MS. HAGEMEIER:  Your Honor, note my objection.

20    Again, that remedy is not available under the contract.

21            If, if I could borrow their papers, I will read you

22    the clause in the contract.

23           THE COURT:  I don't agree with you.  I'm not the

24    last word.  The Circuit might very well consider that they

25    ought to issue a certified question to the New York Court of

                Sue Ghorayeb,  Official Court Reporter

                                                        18

1    Appeals.  That's their latest practice in connection with

2    these issues, which arise under State law and which are a

3    little bit questionable.

4           MS. HAGEMEIER:  It's, it's --

5           THE COURT:  It's a common fact.

6           MS. HAGEMEIER:  If you allow me to read the clause

7    of the contract, I think it would be instructive.

8           THE COURT:  I'm sorry.

9           MS. HAGEMEIER:  I think if you would allow me to

10   read you the clause of the contract, it would be helpful.

11          THE COURT:  I don't think you can do that.  I don't

12   think you can deprive the -- of course, this is -- they are

13   not being realistic, because they don't really want to.

14          But I don't -- you know, it's ridiculous.

15   Supposing gold were discovered there.  And, you know, this

16   real estate market is going to come back to square one very

17   soon, it always has.

18          And you say, "no, we are not going to close, and

19   their damages are limited to return of the downpayment."

20          I don't think any court of equity will let you do

21   that.  I will be willing to take a chance on the correctness

22   of that view, if we really had a genuine desire to buy it.

23          MS. HAGEMEIER:  We don't want to buy it.

24          THE COURT:  What?

25          MS. HAGEMEIER:  We do not want to buy it.


          Sue Ghorayeb,  Official Court Reporter
                                                    19



1          THE COURT:  All right.  Do you want to talk with

2    each other about what you want the Court to do and about

3    whether you can settle the thing?

4          MR. DORFMAN:  Yes, Your Honor.

5          THE COURT:  That's your privilege.  You don't have

6    to do that if you don't want to.

7          MR. DORFMAN:  Unless they don't want to talk

8    settlement.

9          MS. HAGEMEIER:  I, I -- as far as I know, the, the

10   offer is not on the table anymore based on the decision, but

11   I can call my client.

12         THE COURT:  If he wants to pay the full contract

13   price, plus the legal interest from the day he should have

14   closed.  What do you mean it's not on the table?

15         MS. HAGEMEIER:  Your Honor, he is the seller.

16         THE COURT:  I know.

17         MS. HAGEMEIER:  So, I don't understand what you

18   mean by if he wants to pay the contract price.

19         THE COURT:  The buyer, if the buyer wants to pay

20   the contract price, he can do it.

21         MS. HAGEMEIER:  We don't.  We do not want to pay

22   the contract price.

23         THE COURT:  All right.  Fine.

24         All right.  That's clear in the letter, and I'm

25    sorry I overlooked that.

Sue Ghorayeb,  Official Court Reporter

20

1         So, what do you really want to do?

2         MR. DORFMAN:  What I came to do is, I came to

3    schedule a discovery on the remaining cause of action.

4         THE COURT:  What are you going to discover?

5         MR. DORFMAN:  Well, there's -- there is the issue

6    of damages and I would seek to amend --

7         THE COURT:  But the damages are precluded by the

8    contract language.

9         And the damages are also precluded I think by the

10   fact that there is no, no loss, because they still got the

11   land.  Your clients have still got the land.

12        MR. DORFMAN:  Your Honor, my clients have lost

13   substantial amounts of money.

14        In addition, it was the responsibility of the

15   buyer, in preparation for closing, to pay extraordinary

16   expenses in connection with bonding, fees and other things.

17        And my client, in reliance of them not indicating

18   they weren't going to close, they indicated they were going

19   to close, because there is documents, my clients kept laying

20   out hundred thousands -- hundreds of thousands of dollars to

21   the Town in order to close.

22        MS. HAGEMEIER:  That was their obligation under the

23   contract, but it's not in reliance on anything.

24        THE COURT:  Yes, but you still have the land.

25        MR. DORFMAN:  The land is worthless, Your Honor.

Sue Ghorayeb,  Official Court Reporter

21

1           THE COURT:  Oh, come on.

2           MR. DORFMAN:  The land, today, it's not even worth

3    putting a shovel in the ground.  Because in order, in order

4    to even be able to sell it now, you would have to, you would

5    have to spend money.

6           You don't spend money on things that aren't going

7    to be sold.

8           THE COURT:  This is for single family residents?

9           MR. DORFMAN:  Senior housing in Newburgh, New York.

10          THE COURT:  Well, maybe.  Well, why don't you take

11   10 or 15 minutes and talk with each other.  Then I have to

12   leave anyway, because I have to be out of the building for

13   something else.

14          MR. DORFMAN:  Okay, Your Honor.

15          THE COURT:  And we will try to find a way to enter

16   a judgment for you.

17          MR. DORFMAN:  Okay.

18          THE COURT:  And then you can go to the Court of

19   Appeals.

20          But I think where it presently is, it will probably

21   be a judgment for nothing, probably just dismiss it.

22          Why don't you go talk with each other and --

23          MR. DORFMAN:  Well, Your Honor, you won't grant new

24   leave to amend the Complaint?

25          THE COURT:  What do you want to amend the Complaint

Sue Ghorayeb,  Official Court Reporter

1    to do?

2              MR. DORFMAN:  Seek specific performance or in the

3    alternative damages in the amount of the contract price.

4              MS. HAGEMEIER:  I would make a Rule 11 motion if he

5    did that.

6              THE COURT:  I'm sorry.

7              MS. HAGEMEIER:  I would make a motion under Rule 11

8    if he added that claim.

9              THE COURT:  Well, I will let him make the motion,

10   because then that will -- that puts it in the hands of the

11   Court of Appeals.

12             Why don't I just tell you that anybody can file any

13   motion he or she feels is appropriate for any additional or

14   different relief.

15             How soon could you do it?

16             MR. DORFMAN:  I'm going away for two -- I'm going

17   away.  I will be back on the -- by the 15th.

18             The 15th is what day of the week, April 15th?

19             THE COURT:  Of March you are talking about?

20             No, April.

21             MR. DORFMAN:  April.

22             THE COURT:  April.  It's a Tuesday.

23             Suppose we did this.  Suppose we gave you until the

24   end of April to either settle it --

25             And that means you are going to stay in

               Sue Ghorayeb,  Official Court Reporter

http://mail.google.com/mail/?ui=1&attid=0.1&disp=inline&view=att&th=119859e20b24f...    4/29/2008

```
1    communication with each other.  You are not going to just let

2    the time go by.

3              MR. DORFMAN:  Mm-hmm.

4              THE COURT:  -- or file whatever amended pleadings

5    you want to, or write the Court a letter saying "we are not

6    filing anything."

7              MR. DORFMAN:  Okay.

8              THE COURT:  How about those three choices, would

9    that suit?

10             MR. DORFMAN:  I have no problem.

11             THE COURT:  I wouldn't give up on this property,

12   you know.  Times will come back.  I wouldn't give up on it.

13             MR. DORFMAN:  But the problem with -- the problem

14   with this transaction is, Judge, my client was a contract

15   vendee.

16             If they knew this was going to happen, they might

17   not have bought the property.

18             THE COURT:  Isn't there a relationship between the

19   contract vendee and the --

20             MR. DORFMAN:  No.  The original contract, there was

21   an owner, there was a contract vendee, and they took an

22   assignment of the contract, so they bought directly from the

23   owner.

24             THE COURT:  Yes.

25             MR. DORFMAN:  So they were in contract at the time
```

                    Sue Ghorayeb,  Official Court Reporter

                                                        24

```
1    they signed this.  They were a contract vendee at the time

2    they signed this contract.  They would have gone ahead with
```

3    the deal.  They would have lost their, whatever, $250,000 or

4    $300,000 and not closed.

5           THE COURT:  Well, it's an unusual case.  But I

6    think the only thing I can do for you is to get you into a

7    position of a final judgment, where you can all go to the

8    Circuit and see what they think.

9           MR. DORFMAN:  Mm-hmm.

10          THE COURT:  And it's kind of a strange relationship

11   to get into like this, where you limit your -- the buyer

12   limits his exposure to downpayment and there is no

13   downpayment.

14          MR. DORFMAN:  Right.

15          THE COURT:  That's really where it is, isn't it?

16          MS. HAGEMEIER:  That's where it is, Your Honor.

17          THE COURT:  What?

18          MS. HAGEMEIER:  That is where it is and that's how

19   we have the Court's decision.

20          THE COURT:  Well, all right.  The Court will be in

21   possession of either an amended pleading or a letter saying

22   you don't wish to amend, and that applies to both sides of

23   the case.

24          And if you feel you don't have to amend because you

25   have a viable cause of action, which is still on the record

              Sue Ghorayeb,  Official Court Reporter

                                                      25


1    and which the Court hasn't disposed of, you can tell me that,

2    and I may modify the decision to rule on that and give you a

3    final judgment.

4             Would that be satisfactory?

5             Is there something else or different that you want

6    me to do?

7             MR. DORFMAN:  No.  Those are the alternatives I

8    have.

9             THE COURT:  Do you have anything to add to this?

10            MR. DORFMAN:  No, Your Honor.

11            THE COURT:  All right.  How about you?

12            MS. HAGEMEIER:  No.  No, Your Honor.

13            THE COURT:  All right.

14            MR. DORFMAN:  So wait until the end of -- so, we

15   will have until the end of the month to make a motion or to

16   write to the Court?

17            THE COURT:  Yes, to make a motion or to write a

18   letter.

19            MR. DORFMAN:  Thank you, Your Honor.

20            THE COURT:  Or better yet, settle the case.

21            MR. DORFMAN:  I would love to, Your Honor.

22            THE COURT:  And maybe you will go back to think

23   about what the -- mediators do very well.  You know, they are

24   very practical.

25            MR. DORFMAN:  I have no problem, Your Honor.


          Sue Ghorayeb,  Official Court Reporter
                                              26



1             THE COURT:  All right.  Thank you for your

2    attendance here today.

3             It's an interesting issue and I don't know any way

4    to satisfy everybody on it.

5             MR. DORFMAN:  Thank you for the Court's time.

```
6              MS. HAGEMEIER:  Thank you, Your Honor.

7              THE COURT:  So, we are going to hear from you by

8      the end of the month?

9              MR. DORFMAN:  The end of March or end of April?

10             THE COURT:  End of April.

11             MR. DORFMAN:  Okay.  Thank you, Your Honor.

12             THE COURT:  Okay.

13             MR. CONWAY:  Thank you, Your Honor.

14             (Case adjourned)

15

16

17

18

19

20

21

22

23

24

25

               Sue Ghorayeb,  Official Court Reporter
```